

Exhibit A

LEGAL NOTICE

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

IN RE PFIZER INC. SECURITIES LITIGATION

No. 04-CV-9866 (LTS)
ECF CASE

# SUMMARY NOTICE OF PENDENCY OF CLASS ACTION

**To: All persons and entities who purchased and/or otherwise acquired Pfizer Inc. ("Pfizer" or "PFE") common stock between and including October 31, 2000 and October 19, 2005 ("Class Period") (the "Main Class").[1]**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York, that the above-captioned litigation (the "Action") has been certified as a class action.

IF YOU ARE A MEMBER OF THE CLASS, YOUR RIGHTS WILL BE AFFECTED BY THIS ACTION. A full printed Notice of Pendency of Class Action is currently being mailed to known Class Members. If you have not yet received the full printed Notice, you may obtain copies of this document by contacting the Notice Administrator at: Pfizer Securities Litigation, Notice Administrator, P.O. Box 3410, Portland, OR 97208-3410, **(888) 236-0464**, www.PfizerSecuritiesLitigation.com. Inquiries, other than requests for the Notice, may be made to Class Counsel: Jay W. Eisenhofer, Esquire, **GRANT & EISENHOFER P.A.**, 485 Lexington Avenue, 29th Floor, New York, NY 10017, (646) 722-8500 or Mary S. Thomas, Esquire, **GRANT & EISENHOFER P.A.**, 123 Justison Street, Wilmington, DE 19801, (302) 622-7000.

If you are within the Class definition and are not otherwise excluded, you have the right to decide whether to remain a member of the Class. ***If you choose to remain a member of the Class, you do not need to do anything at this time other than to retain your documentation reflecting your transactions in Pfizer common stock.*** You will automatically be included in the Class. If you are a Class Member and do not exclude yourself from the Class, you will be bound by the proceedings in this Action, including all past, present and future orders and judgments of the Court, whether favorable or unfavorable.

If you ask to be excluded from the Class, you will not be bound by any order or judgment of this Court, and you will not be eligible to receive a share of any money that might be recovered for the benefit of the Class. To exclude yourself from the Class, you must submit a written request for exclusion postmarked no later than September 9, 2012 in accordance with the instructions set forth in the full printed Notice. Pursuant to Rule 23(e)(4) of the Federal Rules of Civil Procedure, it is within the Court's discretion as to whether a second opportunity to request exclusion from the Class will be allowed if there is a settlement or judgment in the Action. A final Pre-Trial Conference has been scheduled for September 14, 2012. At this time, the Court has not set a date for the trial to begin.

Further information may be obtained by directing your inquiry in writing to the Notice Administrator.

Dated: July 5, 2012
BY ORDER OF THE COURT:
United States District Court
For the Southern District of New York

[1] Excluded from the Main Class are: (a) any persons or entities who both purchased and sold all of their shares of Pfizer common stock between and including October 31, 2000 and October 6, 2004; (b) Pfizer and Individual Defendants Henry A. McKinnell, John L. LaMattina, Karen L. Katen, Joseph M. Feczko and Gail Cawkwell; (c) members of the immediate family of each of the Individual Defendants; (d) subsidiaries or affiliates of Pfizer or any of the Individual Defendants; (e) any person or entity who is, or was during the Class Period, a partner, officer, director, employee or controlling person of Pfizer or any of the Individual Defendants; (f) any entity in which any of the Individual Defendants has a controlling interest; (g) the legal representatives, heirs, successors or assigns of any of the excluded persons or entities specified in this paragraph; and (h) the insurance carriers or their affiliates who insure the Defendants. The Court also certified a sub-class consisting of all members of the Main Class, not otherwise excluded, who purchased Pfizer common stock contemporaneously with sales of Pfizer common stock by Individual Defendants Henry A. McKinnell, Karen L. Katen and John L. LaMattina on any of the following dates: October 26, 2000, November 6, 2000, October 19, 2001, October 23, 2001, February 21, 2002, February 25, 2002, February 27, 2003, November 18, 2003, February 24, 2005, May 6, 2005, May 10, 2005 and/or August 16, 2005 (the "20A Subclass" and together with the Main Class, the "Class").

# AFFIDAVIT OF PUBLICATION

**IN THE MATTER OF: In re: Pfizer Inc. Securities**

**STATE OF OREGON**

**ss:**

**COUNTY OF WASHINGTON**

**I, Breona Lantz, being duly sworn, hereby certify that (a) I am the Media Coordinator at Epiq Systems Class Action & Claims Solutions,** an noticing administrator and (b) that the Notice of which the annexed is a copy was **published in the following publications:**

***7.30.12 – Wall Street Journal***
***7.30.12 – New York Times***

**X** Bre Lantz
**(Signature)**

Media Coordinator
**(Title)**

**Sworn to before me this:** 9th **day of** August **, 2012**

**Notary Public**

OFFICIAL SEAL
BRANDON SCHWARTZ
NOTARY PUBLIC-OREGON
COMMISSION NO. 431449
MY COMMISSION EXPIRES AUGUST 10, 2012

**Thurin, Stephanie**

**Subject:** FW: PR Newswire: Press Release Clear Time Confirmation for UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK. ID#716153-1-1

---

**From:** sfhubs@prnewswire.com [mailto:sfhubs@prnewswire.com]
**Sent:** Monday, July 30, 2012 4:59 AM
**To:** Lantz, Breona
**Subject:** PR Newswire: Press Release Clear Time Confirmation for UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK. ID#716153-1-1

## PR NEWSWIRE EDITORIAL

Hello

Here's the clear time* confirmation for your news release:

Release headline: Summary Notice Of Pendency Of Class Action
Word Count: 774
Product Summary:
US1
ReleaseWatch
Complimentary Press Release Optimization
IRW
PR Newswire's Editorial Order Number: 716153-1-1

Release clear time: 30-Jul-2012 07:59:00 AM

*Clear time represents the time your news release was distributed to the newsline you selected. Releases distributed publicly in the US can be located online in order of release time at: http://www.prnewswire.com/news-releases-list/

Thank you for choosing PR Newswire!

*********************************************************************
Engage opportunity everywhere it exists. Learn how content is currency in today's communications landscape. Download our FREE white papers:
http://promotions.prnewswire.com/Clear-Time-Confirmation-Email-WP.html

For more information on how PR Newswire can help support your communications initiatives, please visit:
http://www.prnewswire.com/products-services/

To contact PR Newswire directly, please call 888-776-0942 or e-mail information@prnewswire.com.

B 6

NYT The New York Times

620 8TH AVENUE • NEW YORK, NY 10018

LEGAL NOTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PFIZER INC. SECURITIES LITIGATION | No. 04-CV-9866 (LTS)
ECF CASE

## SUMMARY NOTICE OF PENDENCY OF CLASS ACTION

**To: All persons and entities who purchased and/or otherwise acquired Pfizer Inc. ("Pfizer" or "PFE") common stock between and including October 31, 2000 and October 19, 2005 ("Class Period") (the "Main Class").[1]**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York, that the above-captioned litigation (the "Action") has been certified as a class action.

IF YOU ARE A MEMBER OF THE CLASS, YOUR RIGHTS WILL BE AFFECTED BY THIS ACTION. A full printed Notice of Pendency of Class Action is currently being mailed to known Class Members. If you have not yet received the full printed Notice, you may obtain copies of this document by contacting the Notice Administrator at: Pfizer Securities Litigation, Notice Administrator, P.O. Box 3410, Portland, OR 97208-3410, **(888) 236-0464**, www.PfizerSecuritiesLitigation.com. Inquiries, other than requests for the Notice, may be made to Class Counsel: Jay W. Eisenhofer, Esquire, **GRANT & EISENHOFER P.A.**, 485 Lexington Avenue, 29th Floor, New York, NY 10017, (646) 722-8500 or Mary S. Thomas, Esquire, **GRANT & EISENHOFER P.A.**, 123 Justison Street, Wilmington, DE 19801, (302) 622-7000.

If you are within the Class definition and are not otherwise excluded, you have the right to decide whether to remain a member of the Class. ***If you choose to remain a member of the Class, you do not need to do anything at this time other than to retain your documentation reflecting your transactions in Pfizer common stock.*** You will automatically be included in the Class. If you are a Class Member and do not exclude yourself from the Class, you will be bound by the proceedings in this Action, including all past, present and future orders and judgments of the Court, whether favorable or unfavorable.

If you ask to be excluded from the Class, you will not be bound by any order or judgment of this Court, and you will not be eligible to receive a share of any money that might be recovered for the benefit of the Class. To exclude yourself from the Class, you must submit a written request for exclusion postmarked no later than September 9, 2012 in accordance with the instructions set forth in the full printed Notice. Pursuant to Rule 23(e)(4) of the Federal Rules of Civil Procedure, it is within the Court's discretion as to whether a second opportunity to request exclusion from the Class will be allowed if there is a settlement or judgment in the Action. A final Pre-Trial Conference has been scheduled for September 14, 2012. At this time, the Court has not set a date for the trial to begin.

Further information may be obtained by directing your inquiry in writing to the Notice Administrator.

Dated: July 5, 2012
BY ORDER OF THE COURT:
United States District Court
For the Southern District of New York

[1] Excluded from the Main Class are: (a) any persons or entities who both purchased and sold all of their shares of Pfizer common stock between and including October 31, 2000 and October 6, 2004; (b) Pfizer and Individual Defendants Henry A. McKinnell, John L. LaMattina, Karen L. Katen, Joseph M. Feczko and Gail Cawkwell; (c) members of the immediate family of each of the Individual Defendants; (d) subsidiaries or affiliates of Pfizer or any of the Individual Defendants; (e) any person or entity who is, or was during the Class Period, a partner, officer, director, employee or controlling person of Pfizer or any of the Individual Defendants; (f) any entity in which any of the Individual Defendants has a controlling interest; (g) the legal representatives, heirs, successors or assigns of any of the excluded persons or entities specified in this paragraph; and (h) the insurance carriers or their affiliates who insure the Defendants. The Court also certified a sub-class consisting of all members of the Main Class, not otherwise excluded, who purchased Pfizer common stock contemporaneously with sales of Pfizer common stock by Individual Defendants Henry A. McKinnell, Karen L. Katen and John L. LaMattina on any of the following dates: October 26, 2000, November 6, 2000, October 19, 2001, October 23, 2001, February 21, 2002, February 25, 2002, February 27, 2003, November 18, 2003, February 24, 2005, May 6, 2005, May 10, 2005 and/or August 16, 2005 (the "20A Subclass" and together with the Main Class, the "Class").

## CERTIFICATION OF PUBLICATION

JUL 30 2012 20

I, Alice Weber, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

JUL 30 2012 20

Alice Weber

Approved:

Maria Pannullo

THIS CERTIFICATION NOT VALID WITHOUT NYT RAISED SEAL

# Bits

## Microsoft Sees The Risk in Plans For a Tablet

Sometimes the only way to get a straight answer from a company on a thorny topic is through its government filings.

In an annual report that it submitted to the Securities and Exchange Commission last week, Microsoft finally conceded something that has been rather obvious to anyone with a rudimentary understanding of the personal computer industry and Microsoft's role in it. On Page 14 of the document, Microsoft acknowledges that its Surface family of tablet computers could weaken support for Windows among Microsoft's partners in the PC industry, known as original equipment manufacturers, or O.E.M.'s.

The company says in the document that "our Surface devices will compete with products made by our O.E.M. partners, which may affect their commitment to our platform."

It's a short, clinical comment buried in a document more than 100 pages long. But it comes closer to describing one of the big risks Microsoft faces with Surface than anything the company has said publicly before.

When Microsoft introduced Surface at an event in Los Angeles last month, I badgered every executive I could find to get one to at least address the fact that with Surface, Microsoft will start competing with its hardware partners. When I asked Steven Sinofsky, the president of Microsoft's Windows division, whether Surface would hurt Microsoft's relationship with those partners, he gave me a little push in the direction of some Surface tablets and told me to "go learn something."

NICK WINGFIELD

*Bits, updated all day at* **nytimes.com/bits**

KEVORK DJANSEZIAN/GETTY IMAGES

Microsoft's chief, Steven Ballmer. In an S.E.C. filing, the company said its Surface tablet might hurt the future of Windows.

## App Makers Court Celebrity Users

These days, if you want to stand out among the hundreds of mobile-social-local-global applications and services competing for users' attention, it is no longer enough to get tech types to champion your service. You need someone with star power — someone like Justin Bieber.

On Thursday, Stamped, a mobile application and Web site that lets people share reviews of anything they like — songs, books, places, movies, television shows, even other applications — announced a revamped version of its service, along with a roster of new celebrity investors (and users) that includes Mr. Bieber, Ryan Seacrest and Ellen DeGeneres.

The trend of the celebrity entrepreneur and investor is not new; stars like Ashton Kutcher, Lady Gaga and Leonardo DiCaprio have been dipping into their bank accounts to help finance start-ups. And cultivating the sheen of celebrity has become increasingly popular among start-ups that want to take off beyond the largely coastal crowds of tech early adopters.

For Stamped, the celebrity tie-ins mean that in its shiny new ratings application, available both through the iPhone and the Web, people can scroll through Mr. Bieber's guide to the things he likes, including his favorite sushi restaurant in Los Angeles and diners in his hometown, Stratford, Ontario. This might be enough of a draw for Mr. Bieber's legions of fans to download the application and play around with it, a demographic that could be difficult to tap otherwise.

"You can see Justin's collection of favorite things," said Robby Stein, one of the founders of Stamped. "It's a way to check out his recommendations and also see what your friends and tastemakers are into."

Part of the early frenzy around Turntable.fm, a social D.J.-ing service, involved the sightings of well-known figures in the music world, including Diplo, a producer, and Talib Kweli, a rapper, lurking and listening to music. Some of Instagram's most interesting accounts include those of celebrities, musicians, authors and chief executives.

Other start-ups, including the social video sharing services SocialCam and Viddy, as well as Cinemagr.am, which offers a tool for making and sharing GIF animations, boast about celebrities that are fans of their services, which include Rihanna, Shakira and Tyra Banks, respectively. Recently, Foursquare turned to a Hollywood talent agency to coax more big-name entertainers to use the service.

JENNA WORTHAM

## Twitter Embraces Changing Identity

If it looks like a duck, quacks like a duck and walks like a duck, then it's a duck — right?

One question many seem to be have about Twitter: is this duck a media or technology company?

Dick Costolo, the chief executive of Twitter, said that Twitter is some variation of both.

"I think of the company as a technology company that is in the media business," Mr. Costolo said. "Our business is an advertising business, we don't sell technology."

It is certain that the Twitter bird is evolving into something different than it once was. Lately, the company has been experimenting with media products.

Last month Twitter announced a one-stop shop for Nascar fans that corralled Twitter messages from drivers and teams at the Pocono 400 race. The Nascar page that Twitter highlighted in television ads was incredibly visceral, with pictures from inside driver's cars. Fans could practically smell the fuel from the pit.

Last week, Twitter continued this media experiment, announcing a Twitter-branded destination page for the Olympics.

"I think of us as a technology company because I think the future of the company is in building on an extensible platform that allows third-party developers and companies to add value to Twitter in a way that is accretive to Twitter and is accretive to our users," Mr. Costolo said. "I don't need to be or want to be in the content business."

Instead of competing in the content business, Twitter is trying to train influential creators to use the service more effectively. For example, Mr. Costolo said, there are Twitter employees who work with celebrities, politicians, athletes and media outlets to hone the best use of the service.

"We call them V.I.T.'s internally, Very Important Tweeters. It's cute; we're all about being adorable and cute," he said.

"Our vision for the company is simple: Twitter brings you closer," Mr. Costolo said. "You can say something now and broadcast and everyone around the world sees it immediately."

Which sure sounds just like a media company to me.

NICK BILTON

## The Innovations Craigslist Snuffed Out

*From First Business Page*

for good measure.

But, according to Mr. DeMenthon, he isn't stealing anything.

"I was kind of disappointed. I was always a great admirer of what Craigslist was doing," he said by phone from his two-bedroom apartment in Mountain View, Calif., where he works on the site from noon until 3 a.m. daily as the only full-time employee. "I'm just trying to help people save time."

This isn't the first time Craigslist has claimed such violations. The Internet is littered with digital carcasses that once built on top of the listings site. Their pixelated tombstones are inscribed with one-liners that Craigslist killed access without any notice, or they were sent a cease-and-desist letter by Perkins Coie, a top corporate law firm that frequently represents Craigslist.

One, a site called Craigs Little Buddy, could search multiple Craigslist cities at once — a simple feature that Craigslist doesn't offer. Another site, Craigsly, helped people set up e-mail alerts when a certain type of listing, like a specific car or apartment for sale, was posted in their area. Another, Ziink Craigslist Helper, which offered a free browser plug-in that made navigating listings easier, was also shut down by Craigslist lawyers.

Most of the sites that Craigslist killed began as hobby projects, making little to no money — just programmers trying to improve a product they loved.

Craigslist and its chief executive, Jim Buckmaster, did not return repeated requests for comment.

Yet something doesn't add up in all this. In July 2010, on the question-and-answer site Quora, Mr. Newmark defended the company's actions in a similar situation to Padmapper's, saying he did not take issue with sites that do not affect Craigslist's servers. "Actually, we take issue with only services which consume a lot of bandwidth, it's that simple," Mr. Newmark wrote.

But Padmapper does not siphon off a bit of bandwidth from Craigslist. Instead, it uses a company called 3Taps, which collects listings from Craigslist by looking for them on search engines, including Google and Bing, then organizing them and wrapping them up in an application programming interface so developers can build sites that point to Craigslist's listings.

"The listings are already out there. We're finding them already on the Web and organizing them so other people don't have to do the same thing twice," said Greg Kidd, the chief executive of 3Taps. "And we're not breaking any laws because we are pulling in the facts from the listing; everyone knows you can't copyright facts." Craigslist also named 3Taps in the lawsuit filed last week.

As intellectual property lawyers will tell you, Mr. Kidd is not off base: facts, like those in classified listings, cannot be copyrighted.

So why hasn't anyone managed to unseat Craigslist, a site that has barely changed in close to two decades?

***A lawsuit aims to silence a site that sorts apartment postings on a map.***

It has dug an effective moat by cultivating an exaggerated image of "doing good" that keeps its customers loyal, while behind the scenes, it bullies any rivals that come near and it stifles innovation.

Mr. Kidd explained: "Where there is dominance in an exchange place, like a classified platform such as Craigslist, the importance is not in the listings posted on the site — those are just facts — but rather the critical mass of connecting people."

As for Mr. DeMenthon of Padmapper, even in the face of legal action, he feels he has a moral obligation to keep the site running. "I don't have a lawyer," he said. "I don't know what I'm going to do, but I definitely know I have a chance to do more good with this site."

*E-mail: bilton@nytimes.com*

## Apple's Patent Fight With Samsung Shifts to Jury Trial

*From First Business Page*

marketplace, Mr. Rivette added, one side must have "strong patents, not incremental ones."

That issue is much debated, and litigated, in the smartphone arena.

Apple scored some points in June. Judge Lucy H. Koh, who will also preside over the jury trial that begins this week, issued a preliminary injunction against Samsung, ordering it to stop selling its Galaxy Nexus smartphone in the United States.

Judge Koh found that Samsung had infringed on an Apple patent for a "universal interface," which broadly describes crucial ingredients found in Siri, Apple's question-answering application (though the patent itself was filed by Apple before it acquired Siri in 2010).

But the power of smartphone patents in general suffered a blow in another federal court in June.

Richard A. Posner, a prominent federal appeals court judge in Chicago, dismissed a case involving Apple and Google's Motorola Mobility subsidiary. In his "pox on both of your houses" ruling, Judge Posner ridiculed Apple's broad claims for its user-experience patents and Motorola's claim that Apple should pay it a rich royalty on its basic communications patents. Both companies are appealing that ruling.

Fierce patent battles in new industries have been the rule for more than a century, from the steam engine to semiconductors. The lessons of history are decidedly mixed.

Sometimes, patent warriors can hold off rivals for years, as the Wright brothers did in the airplane business — though the cost in time, money and innovative energy diverted was daunting even then. In 1912, Wilbur Wright wrote, "When we think what we might have accomplished if we had been able to devote this time to experiments, we are very sad."

In smartphones, some analysts say, the sheer number of patents and the speed of innovation in product development undermine the power of patents. Because a smartphone combines many communications and computing technologies, as many as 250,000 patents may touch the device, according to estimates by RPX, a patent licensing company.

"You necessarily litigate individual patents, but there are thousands of patents behind the ones in court," said Mark A. Lemley, a patent expert at the Stanford Law School. "That complexity and the speed of innovation may well make it easier to invent around the patent system in smartphones."

Indeed, for its new Galaxy models, Samsung developed an alternative to one of the Apple-patented features cited in this week's trial.

One of Apple's many patents on user-experience programming covers its "rubberbanding" or "bounce" feature — when a user pulls a finger from the top of the touch screen to the bottom, the digital page bounces. On the new Samsung phone, the same finger stroke brings a blue glow at the bottom of the screen, not a bounce.

"There is no single killer patent in this lawsuit," said Florian Mueller, a patent analyst and blogger. "Apple cannot deal a knockout blow to Samsung."

Trial briefs filed last week lay out the narrative and some of the details that Apple and Samsung plan to present in court.

Apple asserts that Samsung made "a deliberate decision to copy" the iPhone and iPad, in both product design and software that creates the user experience. The unredacted version of Apple's filing quotes internal Samsung documents saying that its smartphone design "looked like it copied the iPhone too much" and that "innovation is needed." Another analysis done for Samsung concluded that the icons on its phone were "too iPhone-like" and were "strongly associated with the iPhone UI," or user interface.

In its brief, Samsung contends Apple is using patents to try to "stifle legitimate competition and limit consumer choice to maintain its historically exorbitant profits."

Samsung cites internal Apple documents and deposition testimony to conclude that Apple borrowed its ideas from others, especially Sony. Apple, according to Samsung, was clearly innovative in refining the ideas of others, but it was not the original inventor.

Samsung, quoting its own documents, said it had touch-screen phones in development before the iPhone was introduced in January 2007, pointing to the Samsung F700 model. (The F700 had a touch screen, but also a pullout keyboard underneath.)

According to Samsung, the corporate documents Apple quotes in its brief come from "benchmarking" sessions conducted by Samsung, a standard industry practice.

"Apple," the Samsung brief observed, citing deposition testimony, "also assembled an 'Android war room,' where its employees can study Android products."

LEFT, APPLE, VIA REUTERS; RIGHT, SAMSUNG, VIA ASSOCIATED PRESS

The original iPhone that Apple introduced in January 2007, left, and Samsung's F700 smartphone, also from early 2007.

## NOTICE OF HEARING
### AUGUST 21, 2012

Notice is hereby given of a public hearing regarding the proposed acquisition of control of Reassure America Life Insurance Company (the "Domestic Insurer"), an Indiana domiciled insurance company and a wholly owned subsidiary of SRLC America Holding Corp., by Jackson National Life Insurance Company whose direct controlling person is Brooke Life Insurance Company whose direct controlling person is Brooke Holdings LLC whose direct controlling person is Nicole Finance Inc. whose direct controlling person is Brooke UK LLC whose direct controlling person is Brooke (Holdco 1) Inc. whose direct controlling person is Prudential (US Holdco 1) Limited whose direct controlling person is Prudential US Limited whose direct controlling person is Prudential plc (the "Applicants"). The principal office of the Domestic Insurer is 175 King Street, Armonk, New York 10504. The principal office of each of Prudential plc, Prudential US Limited and Prudential (US Holdco 1) Limited is Laurence Pountney Hill, London EC4R 0HH, England, United Kingdom. The principal office of each of Brooke (Holdco 1) Inc., Brooke UK LLC and Nicole Finance Inc. is 1105 N. Market Street, Suite 1300, P.O. Box 8985, Wilmington, Delaware 19899-8985. The principal office of each of Brooke Holdings LLC, Brooke Life Insurance Company and Jackson National Life Insurance Company is 1 Corporate Way, Lansing, Michigan 48951.

Date: August 21, 2012
Time: 1:30 p.m. (Indianapolis time)
Place: Indiana Department of Insurance
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204-2787

The hearing will be held pursuant to Indiana Code § 27-1-23-2 and conducted as required by the statute as supplemented by the Indiana Administrative Orders and Procedures Act, Indiana Code § 4-21.5-1 *et seq*. The hearing and subsequent determination shall be subject to Indiana Code §§ 27-1-23-2 and 4-21.5-3.

Stephen Robertson, Insurance Commissioner of the Indiana Department of Insurance, or the Commissioner's duly appointed designee, will preside as the administrative law judge at the hearing.

Issues to be addressed at the hearing include:

(1) whether the acquisition of control would tend to affect adversely the contractual obligations of the Domestic Insurer or its ability and tendency to render service in the future to its policyholders and the public;

(2) whether the effect of the acquisition of control would be substantially to lessen competition in any line of insurance business in any section of this state or tend to create a monopoly therein;

(3) whether the financial condition of any acquiring party is such as might jeopardize the financial stability of the Domestic Insurer or of any corporation controlling such insurer, or prejudice the interest of its policyholders;

(4) whether the plans or proposals for the Domestic Insurer are fair and reasonable to policyholders of the Domestic Insurer and in the public interest; and

(5) whether the competence, experience, and integrity of those persons who would control the operation of the Domestic Insurer are such that the acquisition of control would tend to affect adversely the general capacity or intention of the Domestic Insurer to transact the business of insurance in a safe and prudent manner.

Cynthia D. Donovan, Chief Financial Examiner of the Indiana Department of Insurance, 311 West Washington Street, Suite 300, Indianapolis, Indiana 46204-2787, has been designated to provide information regarding this transaction to all interested persons upon request. A copy of the Form A Statement, the supplements and amendments thereto, and other related materials filed with the Commissioner by the acquiring party and that are part of the public record are available at the office of the Indiana Department of Insurance for all interested persons to examine. Information concerning the hearing, schedule and procedures may be obtained by telephoning Ms. Donovan at (317) 232-2408.

Any member of the public interested in the proposed acquisition of control may attend the hearing. Any parties, policyholders of Reassure America Life Insurance Company or other persons whose interests may be affected by the proposed acquisition of control shall have the right to appear and become a party to the proceeding. In accordance with Indiana Code § 4-21.5-3-21, any such person wishing to appear and become a party must submit to the Indiana Insurance Commissioner "Attention Stephen Robertson" at the above address, a petition for intervention setting forth facts demonstrating the person's standing to become a party under Indiana Code § 27-1-23-2(j). Any petition for intervention must be submitted to the Indiana Insurance Commissioner, with copies sent via mail to all parties named in the record of proceeding. Each party shall have the right pursuant to Indiana Code § 27-1-23-2(j) to present evidence, examine and cross-examine witnesses, and offer oral and written arguments and, in connection therewith shall be entitled to conduct discovery proceedings in the same manner as provided in the Indiana Rules of Trial Procedure. A party who fails to attend or participate in the hearing, or other later stage of this proceeding may be held in default or have a proceeding dismissed under Indiana Code § 4-21.5-3-24.

By Order of the Indiana Department of Insurance

Stephen Robertson, Indiana Insurance Commissioner

Indianapolis, Indiana
July 26, 2012

LEGAL NOTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PFIZER INC. SECURITIES LITIGATION | No. 04-CV-9866 (LTS) ECF CASE

## SUMMARY NOTICE OF PENDENCY OF CLASS ACTION

**To: All persons and entities who purchased and/or otherwise acquired Pfizer Inc. ("Pfizer" or "PFE") common stock between and including October 31, 2000 and October 19, 2005 ("Class Period") (the "Main Class").[1]**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York, that the above-captioned litigation (the "Action") has been certified as a class action.

IF YOU ARE A MEMBER OF THE CLASS, YOUR RIGHTS WILL BE AFFECTED BY THIS ACTION. A full printed Notice of Pendency of Class Action is currently being mailed to known Class Members. If you have not yet received the full printed Notice, you may obtain copies of this document by contacting the Notice Administrator at: Pfizer Securities Litigation, Notice Administrator, P.O. Box 3410, Portland, OR 97208-3410, **(888) 236-0464**, www.PfizerSecuritiesLitigation.com. Inquiries, other than requests for the Notice, may be made to Class Counsel: Jay W. Eisenhofer, Esquire, **GRANT & EISENHOFER P.A.**, 485 Lexington Avenue, 29th Floor, New York, NY 10017, (646) 722-8500 or Mary S. Thomas, Esquire, **GRANT & EISENHOFER P.A.**, 123 Justison Street, Wilmington, DE 19801, (302) 622-7000.

If you are within the Class definition and are not otherwise excluded, you have the right to decide whether to remain a member of the Class. ***If you choose to remain a member of the Class, you do not need to do anything at this time other than to retain your documentation reflecting your transactions in Pfizer common stock.*** You will automatically be included in the Class. If you are a Class Member and do not exclude yourself from the Class, you will be bound by the proceedings in this Action, including all past, present and future orders and judgments of the Court, whether favorable or unfavorable.

If you ask to be excluded from the Class, you will not be bound by any order or judgment of this Court, and you will not be eligible to receive a share of any money that might be recovered for the benefit of the Class. To exclude yourself from the Class, you must submit a written request for exclusion postmarked no later than September 9, 2012 in accordance with the instructions set forth in the full printed Notice. Pursuant to Rule 23(e)(4) of the Federal Rules of Civil Procedure, it is within the Court's discretion as to whether a second opportunity to request exclusion from the Class will be allowed if there is a settlement or judgment in the Action. A final Pre-Trial Conference has been scheduled for September 14, 2012. At this time, the Court has not set a date for the trial to begin.

Further information may be obtained by directing your inquiry in writing to the Notice Administrator.

Dated: July 5, 2012
BY ORDER OF THE COURT:
United States District Court
For the Southern District of New York

[1] Excluded from the Main Class are: (a) any persons or entities who both purchased and sold all of their shares of Pfizer common stock between and including October 31, 2000 and October 6, 2004; (b) Pfizer and Individual Defendants Henry A. McKinnell, John L. LaMattina, Karen L. Katen, Joseph M. Feczko and Gail Cawkwell; (c) members of the immediate family of each of the Individual Defendants; (d) subsidiaries or affiliates of Pfizer or any of the Individual Defendants; (e) any person or entity who is, or was during the Class Period, a partner, officer, director, employee or controlling person of Pfizer or any of the Individual Defendants; (f) any entity in which any of the Individual Defendants has a controlling interest; (g) the legal representatives, heirs, successors or assigns of any of the excluded persons or entities specified in this paragraph; and (h) the insurance carriers or their affiliates who insure the Defendants. The Court also certified a sub-class consisting of all members of the Main Class, not otherwise excluded, who purchased Pfizer common stock contemporaneously with sales of Pfizer common stock by Individual Defendants Henry A. McKinnell, Karen L. Katen and John L. LaMattina on any of the following dates: October 26, 2000, November 6, 2000, October 19, 2001, October 23, 2001, February 21, 2002, February 25, 2002, February 27, 2002, November 18, 2003, February 24, 2005, May 6, 2005, May 10, 2005 and/or August 16, 2005 (the "20A Subclass" and together with the Main Class, the "Class").

**AFFIDAVIT**

**STATE OF TEXAS )**
**) ss:**
**CITY AND COUNTY OF DALLAS)**

I, Ken Long, being duly sworn, depose and say that I am the Advertising Clerk of the Publisher of THE WALL STREET JOURNAL, a daily national newspaper of general circulation throughout the United States, and that the Notice attached to this Affidavit has been regularly published in THE WALL STREET JOURNAL for national distribution for one insertion(s) on the following date(s): July 30, 2012; advertiser: Pfizer Inc..; and that the foregoing statements are true and correct to the best of my knowledge.

Sworn to before me this
30th day of July, 2012.

Notary Public

ALBERT MARTIN FOX
Notary Public, State of Texas
My Commission Expires
February 15, 2016

ADVERTISEMENT

# Legal Notices

To advertise: 800-366-3975 or WSJ.com/classifieds

## PUBLIC NOTICES

### DEA LEGAL NOTICE CONTINUED

[The property listed above is NOT for sale. The DEA DOES NOT sell forfeited property and the DEA DOES NOT have information on property for sale.]

THE WALL STREET JOURNAL.
LEGAL NOTICES
ADVERTISE TODAY
(800) 366-3975
sales.legalnotices@wsj.com
Place an ad at: wsj.com/classifieds
© 2012 Dow Jones & Company, Inc. All Rights Reserved.
DOWJONES

## CLASS ACTIONS

LEGAL NOTICE

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

IN RE PFIZER INC. SECURITIES LITIGATION | No. 04-CV-9866 (LTS) ECF CASE

### SUMMARY NOTICE OF PENDENCY OF CLASS ACTION

**To: All persons and entities who purchased and/or otherwise acquired Pfizer Inc. ("Pfizer" or "PFE") common stock between and including October 31, 2000 and October 19, 2005 ("Class Period") (the "Main Class").[1]**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York, that the above-captioned litigation (the "Action") has been certified as a class action.

IF YOU ARE A MEMBER OF THE CLASS, YOUR RIGHTS WILL BE AFFECTED BY THIS ACTION. A full printed Notice of Pendency of Class Action is currently being mailed to known Class Members. If you have not yet received the full printed Notice, you may obtain copies of this document by contacting the Notice Administrator at: Pfizer Securities Litigation, Notice Administrator, P.O. Box 3410, Portland, OR 97208-3410, **(888) 236-0464**, www.PfizerSecuritiesLitigation.com. Inquiries, other than requests for the Notice, may be made to Class Counsel: Jay W. Eisenhofer, Esquire, **GRANT & EISENHOFER P.A.**, 485 Lexington Avenue, 29th Floor, New York, NY 10017, (646) 722-8500 or Mary S. Thomas, Esquire, **GRANT & EISENHOFER P.A.**, 123 Justison Street, Wilmington, DE 19801, (302) 622-7000.

If you are within the Class definition and are not otherwise excluded, you have the right to decide whether to remain a member of the Class. ***If you choose to remain a member of the Class, you do not need to do anything at this time other than to retain your documentation reflecting your transactions in Pfizer common stock.*** You will automatically be included in the Class. If you are a Class Member and do not exclude yourself from the Class, you will be bound by the proceedings in this Action, including all past, present and future orders and judgments of the Court, whether favorable or unfavorable.

If you ask to be excluded from the Class, you will not be bound by any order or judgment of this Court, and you will not be eligible to receive a share of any money that might be recovered for the benefit of the Class. To exclude yourself from the Class, you must submit a written request for exclusion postmarked no later than September 9, 2012 in accordance with the instructions set forth in the full printed Notice. Pursuant to Rule 23(e)(4) of the Federal Rules of Civil Procedure, it is within the Court's discretion as to whether a second opportunity to request exclusion from the Class will be allowed if there is a settlement or judgment in the Action. A final Pre-Trial Conference has been scheduled for September 14, 2012. At this time, the Court has not set a date for the trial to begin.

Further information may be obtained by directing your inquiry in writing to the Notice Administrator.

Dated: July 5, 2012
BY ORDER OF THE COURT:
United States District Court
For the Southern District of New York

[1] Excluded from the Main Class are: (a) any persons or entities who both purchased and sold all of their shares of Pfizer common stock between and including October 31, 2000 and October 6, 2004; (b) Pfizer and Individual Defendants Henry A. McKinnell, John L. LaMattina, Karen L. Katen, Joseph M. Feczko and Gail Cawkwell; (c) members of the immediate family of each of the Individual Defendants; (d) subsidiaries or affiliates of Pfizer or any of the Individual Defendants; (e) any person or entity who is, or was during the Class Period, a partner, officer, director, employee or controlling person of Pfizer or any of the Individual Defendants; (f) any entity in which any of the Individual Defendants has a controlling interest; (g) the legal representatives, heirs, successors or assigns of any of the excluded persons or entities specified in this paragraph; and (h) the insurance carriers or their affiliates who insure the Defendants. The Court also certified a sub-class consisting of all members of the Main Class, not otherwise excluded, who purchased Pfizer common stock contemporaneously with sales of Pfizer common stock by Individual Defendants Henry A. McKinnell, Karen L. Katen and John L. LaMattina on any of the following dates: October 26, 2000, November 6, 2000, October 19, 2001, October 23, 2001, February 21, 2002, February 25, 2002, February 27, 2003, November 18, 2003, February 24, 2005, May 6, 2005, May 10, 2005 and/or August 16, 2005 (the "20A Subclass" and together with the Main Class, the "Class").

"Downloaded from WSJ.com — Proof of Print Only"