# Exhibit I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PFIZER INC. SECURITIES LITIGATION

No. 04-cv-9866 (LTS)(HBP)

ECF CASE

**DECLARATION OF MARY S. THOMAS IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
FILED ON BEHALF OF GRANT & EISENHOFER, P.A.**

I, Mary S. Thomas, declare as follows:

1.      I am a Director in the law firm of Grant & Eisenhofer, P.A. ("G&E"). I submit
this declaration in support of Lead Counsel's application for an award of attorneys' fees in
connection with services rendered in the above-captioned action ("Action") from inception
through September 16, 2016 (the "Time Period"), as well as for payment of expenses incurred in
connection therewith. I have personal knowledge of the matters set forth in this declaration and,
if called upon, I could and would testify competently thereto.

2.      As described more fully in the accompanying Declaration of Charles T. Caliendo,
my firm led this case as Lead Counsel, managed and coordinated the discovery efforts of other
Plaintiffs' Counsel to ensure that the case was prosecuted as effectively and efficiently as
practicable under the circumstances from the case's inception through the Settlement, and
continues to do so in connection with seeking final approval of the Settlement. Among other
things, during the twelve-year duration of this case, G&E led Plaintiffs' Counsel's efforts in:
(i) preparing and filing a consolidated class action complaint after being appointed Lead
Counsel; (ii) successfully opposing Defendants' motions to dismiss and motions for
reconsideration; (iii) successfully opposing Defendants' efforts to dispose of the case in an

unusually early, 5-day *Daubert* hearing; (iv) coordinating fact and expert discovery;

(v) preparing a substantial amended complaint and winning a motion to amend in which the

court granted Plaintiffs' right to file it;  (vi) successfully opposing Defendants' motion for

summary judgment on the merits; (vii) coordinating Plaintiffs' Counsel's substantial efforts in

preparing the case for trial; (viii) coordinating Plaintiffs' Counsel's efforts in successfully

prosecuting an appeal after the Court dismissed the case in its entirety based on the exclusion of

Plaintiffs' loss causation and damages expert on the eve of trial pursuant to a *Daubert* motion;

(ix) improving the case for trial by successfully reinstating certain statements that had been

dismissed from the case on the appeal; (x) continuing to prepare for trial after the successful

appeal in anticipation of the case returning to this Court for trial; and (xi) negotiating the

Settlement that is currently before the Court for its final approval.

      3.     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the

amount of time spent by the attorneys and professional support staff of my firm who were

involved in, and billed fifty or more hours to, this Action, and the lodestar calculation for those

individuals based on my firm's current billing rates.  For personnel who are no longer employed

by my firm, the lodestar calculation is based on the billing rate for that individual in his or her

final year of employment by my firm.  The schedule was prepared from contemporaneous daily

time records regularly prepared and maintained by my firm.  Time expended in preparing this

application for attorney's fees and expenses has been excluded.

      4.     The hourly rates for the attorneys and professional support staff of my firm

included in Exhibit 1 are the same as the regular rates charged for their services in other

contingent matters and have been accepted by other courts in other class action cases prosecuted

by G&E.

5.      The total number of hours expended on this Action by my firm during the Time Period is 192,772.57 hours.  The total lodestar for my firm for those hours is $73,907,401.50, consisting of $72,598,897.50 for attorneys' time and $1,308,504.00 for professional support staff time.

6.      In order to provide the Court with additional detail regarding my firm's lodestar, Exhibit 2 hereto provides a breakdown of the hours incurred by my firm, and resulting lodestar, for each of the following time categories: (1) work performed between the inception of the case and the Court's decision rendered on September 4, 2008 regarding Defendants' Motion for Reconsideration of the Court's decision on Defendants' Motion to Dismiss; (2) work performed between September 5, 2008 and the Court's decision on March 22, 2010 regarding Defendants' Daubert motions to exclude expert testimony (related to Statistical Significance); (3) work performed between March 23, 2010 and Defendants' initial motion for Summary Judgment filed on July 2, 2012; (4) work performed between July 3, 2012 and the Court's issuance of its initial Summary Judgment ruling on March 28, 2013; (5) work performed between March 29, 2013 and the Court's issuance of its second Summary Judgment ruling on July 8, 2014; (6) work performed between July 9, 2014 and the issuance of the Second Circuit's appellate opinion on April 12, 2016; and (7) work performed between April 13, 2016 and the Court's granting of Preliminary Approval to the Settlement on September 16, 2016.

7.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8.      As detailed in Exhibit 3 hereto, my firm is seeking payment for a total of $16,566,995.14 in expenses incurred in connection with the prosecution of the Action.  These

expenses are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

9.     My firm managed the litigation fund maintained in connection with the prosecution of the Action, for which each category of expenses paid from that fund are detailed in Exhibit 4 hereto.   Each participating firm has included their respective net contributions to the litigation fund in their submitted expense detail and has further reduced their contributions by their respective portion of the remaining balance in the fund, which is $32,475.94.  Accordingly, net contributions to the litigation fund total $10,687,062.06.  In addition, $215.09 of interest has been earned on these funds.

10.     With respect to the standing of my firm, attached hereto as Exhibit 5 is a brief biography of G&E and the attorneys in G&E who were principally involved in this Action.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 11, 2016, in Wilmington, Delaware.

Mary S. Thomas

**EXHIBIT 1**

*In re Pfizer Inc. Securities Litigation*
No. 04-cv-9866 (LTS)(HBP)

**GRANT & EISENHOFER, P.A.**

**LODESTAR REPORT**

Inception through September 16, 2016

| NAME | HOURS | HOURLY RATE | AMOUNT |
|---|---|---|---|
| **PARTNERS:** | 21,109.30 | | $16,081,110.00 |
| | | | |
| Charles T. Caliendo | 7,922.40 | $725.00 | $5,743,740.00 |
| Mary S. Thomas | 5,073.60 | $725.00 | $3,678,360.00 |
| Geoffrey C. Jarvis | 1,925.10 | $895.00 | $1,722,964.50 |
| James J. Sabella | 1,696.40 | $925.00 | $1,569,170.00 |
| Francis P. Karam | 1,547.50 | $750.00 | $1,160,625.00 |
| Stephen G. Grygiel | 1,619.90 | $695.00 | $1,125,830.50 |
| Keith M. Fleischman | 1,202.30 | $825.00 | $991,897.50 |
| Jeff A. Almeida | 122.10 | $725.00 | $88,522.50 |
| | | | |
| **ASSOCIATES:** | 30,266.27 | | $14,880,149.75 |
| | | | |
| Brenda Szydlo | 7,230.90 | $680.00 | $4,917,012.00 |
| Raymond Schuenemann | 5,981.30 | $350.00 | $2,093,455.00 |
| James R. Banko | 3,322.55 | $595.00 | $1,976,917.25 |
| Ned Weinberger | 4,031.30 | $450.00 | $1,814,085.00 |
| Michele Carino | 2,240.90 | $625.00 | $1,400,562.50 |
| Traci Goins | 4,249.40 | $300.00 | $1,274,820.00 |
| Robert Gerson | 1,321.50 | $450.00 | $594,675.00 |
| Brian Rostocki | 570.07 | $325.00 | $185,272.75 |
| David Haendler | 241.40 | $525.00 | $126,735.00 |
| Diane T. Zilka | 164.00 | $695.00 | $113,980.00 |
| Naumon Amjed | 251.85 | $425.00 | $107,036.25 |
| Jacob Kirkham | 164.80 | $360.00 | $59,328.00 |
| Jonathan D. Margolis | 103.70 | $545.00 | $56,516.50 |
| Kyle McGee | 108.50 | $450.00 | $48,825.00 |
| Kimberly L. Wierzel | 95.30 | $415.00 | $39,549.50 |
| Sharan Nirmul | 83.50 | $445.00 | $37,157.50 |
| John S. Taylor | 105.30 | $325.00 | $34,222.50 |
| | | | |

| | | | |
|---|---|---|---|
| **STAFF ATTORNEYS:** | 105,638.75 | | $35,384,262.75 |
| | | | |
| Cheron Everett | 12,200.70 | $325.00 | $3,965,227.50 |
| Kevin Nadolny | 10,981.30 | $325.00 | $3,568,922.50 |
| Lisa Grumbine | 7,230.40 | $360.00 | $2,602,944.00 |
| Jim Cavanaugh | 5,779.60 | $420.00 | $2,427,432.00 |
| Kerry Dustin | 6,662.00 | $325.00 | $2,165,150.00 |
| Katie Sierakowski | 6,836.70 | $295.00 | $2,016,826.50 |
| Richard Gartman | 5,262.20 | $360.00 | $1,894,392.00 |
| Simona Bonifacic | 5,193.60 | $360.00 | $1,869,696.00 |
| Matthew Rieder | 4,088.40 | $395.00 | $1,614,918.00 |
| Lawrence Kempner | 3,729.00 | $420.00 | $1,566,180.00 |
| Edward Lilly | 3,100.20 | $375.00 | $1,162,575.00 |
| Steven Cotter | 2,877.20 | $375.00 | $1,078,950.00 |
| Shannon Somma | 2,909.90 | $325.00 | $945,717.50 |
| Kathryn Polito | 3,279.70 | $275.00 | $901,917.50 |
| Mason Apostol | 3,432.70 | $250.00 | $858,175.00 |
| C. Patrick Renegar | 3,342.00 | $250.00 | $835,500.00 |
| Leanne Brown | 1,871.50 | $420.00 | $786,030.00 |
| Abagail Gertner | 2,446.80 | $300.00 | $734,040.00 |
| Melanie Grabski | 2,834.70 | $250.00 | $708,675.00 |
| Tasha Thompson | 2,407.10 | $290.00 | $698,059.00 |
| Beth Calhoun | 1,702.10 | $350.00 | $595,735.00 |
| Joseph Gulino | 1,341.90 | $425.00 | $570,307.50 |
| Kimberly B. Schwarz | 1,737.95 | $325.00 | $564,833.75 |
| Dan Lovin | 1,551.30 | $290.00 | $449,877.00 |
| Anthony Ryan | 1,605.10 | $250.00 | $401,275.00 |
| Tracy Sepehriazar | 722.70 | $360.00 | $260,172.00 |
| C. Kirby Happer | 424.50 | $280.00 | $118,860.00 |
| Buneka J. Islam | 87.50 | $250.00 | $21,875.00 |
| | | | |
| **CONTRACT ATTORNEYS:** | 29,527.60 | | $6,253,375.00 |
| | | | |
| Brad Dirks | 4,517.20 | $250.00 | $1,129,300.00 |
| Reid Coppock | 3,744.30 | $250.00 | $936,075.00 |
| Nathan Paustian | 1,793.50 | $250.00 | $448,375.00 |
| Crystal Wilson | 1,375.80 | $250.00 | $343,950.00 |
| Osita Ogbunamiri | 1,205.00 | $250.00 | $301,250.00 |
| Lindsay Doering | 1,182.50 | $250.00 | $295,625.00 |
| LaSonya Thompson | 1,109.70 | $250.00 | $277,425.00 |
| George Stemerman | 1,033.90 | $250.00 | $258,475.00 |
| Louis Leo | 2,482.30 | $100.00 | $248,230.00 |
| Dereck Scott | 904.00 | $250.00 | $226,000.00 |

| | | | |
|---|---|---|---|
| **Carrie Smith** | 874.00 | $250.00 | $218,500.00 |
| **Damaris Garcia** | 852.30 | $250.00 | $213,075.00 |
| **Ahlise Greenbaum** | 802.00 | $250.00 | $200,500.00 |
| **Sophia Samuels-Ellis** | 755.90 | $250.00 | $188,975.00 |
| **Mary Heinrich** | 528.50 | $250.00 | $132,125.00 |
| **Pam Candelaria** | 495.00 | $250.00 | $123,750.00 |
| **Roberto DiMichele** | 395.90 | $250.00 | $98,975.00 |
| **Paul Rossi** | 975.10 | $100.00 | $97,510.00 |
| **Peter McCauley** | 964.80 | $100.00 | $96,480.00 |
| **Demetrio Timban** | 820.50 | $100.00 | $82,050.00 |
| **Richard Golden** | 772.40 | $100.00 | $77,240.00 |
| **Vincent Witkowski** | 668.60 | $100.00 | $66,860.00 |
| **John Narkin** | 266.60 | $250.00 | $66,650.00 |
| **Sagar Shaw** | 489.50 | $100.00 | $48,950.00 |
| **Terrance Annese** | 168.00 | $250.00 | $42,000.00 |
| **Paul Curtis** | 350.30 | $100.00 | $35,030.00 |
| | | | |
| **PARALEGALS** | 6,230.65 | | $1,308,504.00 |
| | | | |
| **Matthew Hartman** | 2,282.90 | $225.00 | $513,652.50 |
| **Beatrice Smith** | 2,298.50 | $200.00 | $459,700.00 |
| **Alexandra Carpio** | 634.10 | $200.00 | $126,820.00 |
| **Debbie Bartell** | 472.50 | $175.00 | $82,687.50 |
| **Mary Ruth LaSota** | 288.00 | $250.00 | $72,000.00 |
| **Ronald E. Wittman** | 186.80 | $200.00 | $37,360.00 |
| **Carolynn A. Nevers** | 67.85 | $240.00 | $16,284.00 |
| | | | |
| **TOTALS:** | 192,772.57 | | $73,907,401.50 |

## EXHIBIT 2

*In re Pfizer Inc. Securities Litigation*
No. 04-cv-9866 (LTS)(HBP)

## GRANT & EISENHOFER, P.A.

## SUMMARY OF HOURS WORKED BY CATEGORY

| | Category of Work | Date Range | Total Hours | Total Lodestar |
|---|---|---|---|---|
| 1 | Work performed between the inception of the case and the Court's decision rendered on September 4, 2008 regarding Defendants' Motion for Reconsideration of the Court's decision on Defendants' Motion to Dismiss | Inception-9/4/2008 | 3,844.17 | $1,816,116.00 |
| 2 | Work performed between September 5, 2008 and the Court's decision on March 22, 2010 regarding Defendants' Daubert motions to exclude expert testimony (related to Statistical Significance) | 9/5/2008-3/22/2010 | 80,870.60 | $25,973,403.50 |
| 3 | Work performed between March 23, 2010 and Defendants' initial motion for Summary Judgment filed on July 2, 2012 | 3/23/2010-7/2/2012 | 82,858.80 | $33,792,465.00 |
| 4 | Work performed between July 3, 2012 and the Court's issuance of its initial Summary Judgment ruling on March 28, 2013 | 7/3/2012-3/28/2013 | 8,749.10 | $3,918,681.00 |
| 5 | Work performed between March 29, 2013 and the Court's issuance of its second Summary Judgment ruling on July 8, 2014 | 3/29/2013-7/8/2014 | 14,268.10 | $6,991,539.50 |
| 6 | Work performed between July 9, 2014 and the issuance of the Second Circuit's appellate opinion on April 12, 2016 | 7/9/2014-4/12/2016 | 991.20 | $688,161.00 |
| 7 | Work performed between April 13, 2016 and the Court's granting of Preliminary Approval to the Settlement on September 16, 2016 | 4/13/2016-9/16/2016 | 1,190.60 | $727,035.50 |
| | **TOTALS:** | | 192,772.57 | $73,907,401.50 |

## EXHIBIT 3

### *In re Pfizer Inc. Securities Litigation*
### No. 04-cv-9866 (LTS)(HBP)

### GRANT & EISENHOFER, P.A.

### EXPENSE REPORT

| CATEGORY | AMOUNT |
|---|---|
| Contributions to Litigation Fund | $7,895,443.12 |
| Mock Trial, Jury Selection, Visual Presentation & Jury Consulting | $4,262,179.82 |
| Reproduction Costs | $1,451,501.38 |
| eDiscovery and Data Hosting | $666,544.74 |
| Experts | $965,643.85 |
| Class Notice of Pendency | $496,350.16 |
| Research | $398,289.82 |
| Travel | $285,329.45 |
| Meeting Expense | $41,880.22 |
| Telephones/Faxes | $34,222.92 |
| Postage & Express Mail | $23,989.18 |
| Court Reporters and Transcripts | $21,915.70 |
| Filing Fees | $14,869.87 |
| Other Miscellaneous | $7,125.99 |
| Publications | $932.29 |
| Service Fees | $540.63 |
| Witness Fees | $236.00 |
| **TOTAL EXPENSES:** | **$16,566,995.14** |

**EXHIBIT 4**

*In re Pfizer Inc. Securities Litigation*
No. 04-cv-9866 (LTS)(HBP)

**GRANT & EISENHOFER, P.A.**

**LITIGATION FUND EXPENSE DETAIL**

| CATEGORY | AMOUNT |
|---|---|
| Experts | $4,818,900.89 |
| Class Notice of Pendency | $2,444,220.43 |
| eDiscovery & Data Hosting | $2,304,994.71 |
| Mock Trial, Jury Selection, Visual Presentation and Jury Consulting | $600,354.20 |
| Court Reporters and Transcripts | $396,883.07 |
| Outside Reproduction Costs | $44,720.15 |
| Mediation | $35,000.00 |
| Outside Counsel Expense Reimbursement | $15,693.40 |
| Research | $10,311.20 |
| Deposition Expense Reimbursement | $5,605.24 |
| Process Service | $4,969.72 |
| Tax Preparation Services | $2,679.48 |
| Meeting Expense | $1,555.80 |
| Postage and Express Mail | $487.25 |
| Telephone Conference Services | $541.60 |
| Bank Service Charges | $360.00 |
| **TOTAL EXPENSES:** | **$10,687,277.14** |

## EXHIBIT 5

*In re Pfizer Inc. Securities Litigation*
No. 04-cv-9866 (LTS)(HBP)

## GRANT & EISENHOFER, P.A.

## FIRM BIOGRAPHY

## GRANT & EISENHOFER P.A.
## FIRM BIOGRAPHY

Grant & Eisenhofer P.A. ("G&E") concentrates on federal securities and corporate governance litigation and other complex class litigation.  With over 65 attorneys, G&E primarily represents domestic and foreign institutional investors, both public and private, who have been damaged by corporate fraud, greed and mismanagement.  The Firm was named to *The National Law Journal*'s "Plaintiffs' Hot List" for the last ten years and is listed as one of America's Leading Business Law Firms by Chambers & Partners, who reported that G&E "commanded respect for its representation of institutional investors in shareholder and derivative actions, and in federal securities fraud litigation."  Based in Delaware, New York, and Chicago, G&E routinely represents clients in federal and state courts throughout the country.  G&E's clients include the California Public Employees' Retirement System, New York State Common Retirement Fund, Ohio Public Employees' Retirement System, State of Wisconsin Investment Board, Teachers' Retirement System of Louisiana, PIMCO, Trust Company of the West, The Capital Guardian Group and many other public and private domestic and foreign institutions.

G&E was founded in 1997 by Jay W. Eisenhofer and Stuart M. Grant, former litigators in the Wilmington office of the nationally prominent firm of Skadden, Arps, Slate, Meagher & Flom LLP.  Over the years, the Firm's directors have gained national reputations in securities and corporate litigation.  In fact, G&E was the first law firm in the country to argue the provisions of the Private Securities Litigation Reform Act ("PSLRA") allowing an institutional investor to be appointed as lead plaintiff in a securities class action.  The Firm has gone on to build a national and international reputation as a leader in securities litigation.  In both class action and "opt-out" cases, G&E has attracted widespread recognition for protecting investors' rights and recovering their damages.  The Firm has recovered over $28 billion for its clients in the last ten years, and RiskMetrics Group has twice recognized G&E for winning the highest average investor recovery in securities class actions.

G&E has served as lead counsel in many of the largest securities class action recoveries in U.S. history, including:

> $3.2 billion settlement from Tyco International Ltd. and related defendants
> $922 million from UnitedHealth Group
> $486 million settlement from Pfizer (preliminarily approved)
> $450 million Pan-European settlement from Royal Dutch Shell
> $448 million settlement in Global Crossing Ltd. securities litigation
> $422 million total class recovery for investors in the stock and bonds of Refco
> $400 million recovery from Marsh & McLennan
> $325 million from Delphi Corp.
> $303 million settlement from General Motors
> $300 million settlement from DaimlerChrysler Corporation
> $300 million recovery from Oxford Health Plans
> $276 million judgment & settlement for Safety-Kleen bond investors

G&E has also achieved landmark results in corporate governance litigation, including:

*In re UnitedHealth Group Inc. Shareholder Derivative Litigation*: G&E represented the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative and class action suit in which G&E successfully challenged $1.2 billion in back-dated options granted to William McGuire, then-CEO of health care provider UnitedHealth Group ("UHG"). This was among the first – and most egregious – examples of options backdating. As previously stated, G&E's case against UHG produced a settlement of $922 million, the largest settlement in the history of derivative litigation in any jurisdiction.

*In re Digex, Inc. Shareholders Litigation* – G&E initiated litigation alleging that the directors and majority stockholder of Digex, Inc. breached fiduciary duties to the company and its public shareholders by permitting the majority shareholder to usurp a corporate opportunity that belonged to Digex. G&E's efforts in this litigation resulted in an unprecedented settlement of $420 million, the largest settlement in the history of the Delaware Chancery Court.

*Caremark / CVS Merger* - G&E represented two institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as the board's decision to reject a competing proposal from a different suitor. Through the litigation, Caremark's board was forced to renegotiate the terms of the merger agreement with CVS. The settlement ensured statutory rights of Caremark shareholders, providing an additional $3.19 billion in cash consideration.

*Teachers' Retirement System of Louisiana v. Greenberg, et al. and American International Group, Inc.*: In what was, at the time, the largest settlement of shareholder derivative litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a lawsuit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets.

*AFSCME v. AIG* – This historic federal appeals court ruling in favor of G&E's client established the right, under the then-existing proxy rules, for shareholders to place the names of director candidates nominated by shareholders on corporate proxy materials – reversing over 20 years of adverse rulings from the SEC's Division of Corporate Finance and

achieving what had long been considered the "holy grail" for investor activists. Although the SEC took nearly immediate action to reverse the decision, the ruling renewed and intensified the dialogue regarding proxy access before the SEC, ultimately resulting in a new rule currently being considered by the SEC that, if implemented, will make proxy access mandatory for every publicly traded corporation.

*Unisuper Ltd. v. News Corp., et al.* – G&E forced News Corp. to rescind the extension of its poison pill on the grounds that it was obtained without proper shareholder approval.

*Teachers' Retirement System of Louisiana v. HealthSouth* – G&E negotiated a settlement which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby shareholders would nominate their replacements.

*Carmody v. Toll Brothers* – This action initiated by G&E resulted in the seminal ruling that "dead-hand" poison pills are illegal.

*In re Refco Inc. Securities Litigation* – G&E represented Pacific Investment Management Company LLC ("PIMCO") as co-lead plaintiff in a securities class action alleging that certain officers and directors of Refco Inc., as well as other defendants including the company's auditor, its private equity sponsor, and the underwriters of Refco's securities, violated the federal securities laws in connection with investors' purchases of Refco stock and bonds. Recoveries for the class exceeded $400 million, including $140 million from the company's private equity sponsor, over $50 million from the underwriters, and $25 million from the auditor.

In addition, the Firm's lawyers are often called upon to testify on behalf of institutional investors before the SEC and various judicial commissions, and they frequently write and speak on securities and corporate governance issues. G&E managing director Jay Eisenhofer and director Michael Barry are co-authors of the *Shareholder Activism Handbook*, and in 2008, Jay Eisenhofer was named one of the 100 most influential people in the field of corporate governance.

G&E is proud of its success in fighting for institutional investors in courts and other forums across the country and throughout the world.

### G&E's Attorneys

**Jay W. Eisenhofer**

Jay Eisenhofer, co-founder and managing director of Grant & Eisenhofer P.A., has been counsel in more multi-hundred million dollar cases than any other securities litigator, including the $3.2 billion settlement in the Tyco case, the $922 million UnitedHealth Group settlement, the $450 million settlement in the Global Crossing case, the historic $450 million pan-European settlement in the Shell case, as well as a $400 million settlement with Marsh & McLennan, a $303 million settlement with General Motors and a $300 million settlement with DaimlerChrysler. Mr. Eisenhofer was also the lead attorney in the seminal cases of *American Federation of State, County & Municipal Employees, Employees Pension Plan v. American International Group, Inc.*, where the U.S. Court of Appeals required shareholder proxy access reversing years of SEC no-action letters, and *Carmody v. Toll Brothers*, wherein the Delaware Court of Chancery first ruled that so-called "dead-hand" poison pills violated Delaware law.

Mr. Eisenhofer has served as litigation counsel to many public and private institutional investors, including, among others, Amalgamated Bank, APG Asset Management, California Public Employees Retirement System, California State Teachers Retirement System, Colorado Public Employees Retirement Association, the Florida State Board of Administration, John Hancock, Louisiana State Employees Retirement System, New York City Retirement Funds, Inc., and Service Employees International Union.

Mr. Eisenhofer is consistently ranked as a leading securities and corporate governance litigator and he has been named by Lawdragon to its annual list of the top 500 lawyers in America each year since 2006. He is also recognized by Benchmark Litigation as one of the Top 100 Trial Lawyers. *The National Law Journal* has selected Grant & Eisenhofer as one of the top plaintiffs' law firms in the country for the last eleven years in the annual "Plaintiffs' Hot List," earning the firm a place in *The National Law Journal*'s "Plaintiffs' Hot List Hall Of Fame" in 2008, as well as to its 2014 inaugural list of "Elite Trial Lawyers: The 50 Leading Plaintiffs Firms in America." The firm has twice been selected as a "Most Feared Plaintiffs Firm" by *Law360* and "one of the most high-profile shareholder and whistleblower advocates in the country, securing record-high cash settlements." *U.S. News & World Report* has also repeatedly named Grant & Eisenhofer to its list of "Best Law Firms" in the fields of Securities Litigation, Commercial Litigation, and Corporate Law. Mr. Eisenhofer is rated AV by Martindale-Hubbell.

Mr. Eisenhofer has written and lectured widely on securities fraud and insurance coverage litigation, business and employment torts, directors' and officers' liability coverage, and the Delaware law of shareholder rights and directorial responsibilities. Among the publications he has authored: "The Shareholders Activism Handbook" Aspen Publishers; "Proxy Access Takes Center Stage – The Second Circuit's Decision in *AFSCME Employees Pension Plan v. American International Group, Inc.*" *Bloomberg Law Reports*, Vol. 1, No. 5; "Investor Litigation in the U.S. - The System is Working" *Securities Reform Act Litigation Reporter*, Vol. 22, #5; "*In re Walt Disney Co. Deriv. Litig.* and the Duty of Good Faith Under Delaware Corporate Law" *Bank & Corporate Governance Law Reporter*, Vol. 37, #1; "Institutional Investors As Trend-Setters In Post-PSLRA Securities Litigation" *Practising Law Institute*, July, 2006; "*In re Cox Communications, Inc.*: A Suggested Step in the Wrong Direction," *Bank and Corporate Governance Law Reporter,* Vol. 35, #1; "Does Corporate Governance Matter to Investment

Returns?" *Corporate Accountability Report*, Vol. 3, No. 37; "Loss Causation in Light of Dura: Who is Getting it Wrong?" *Securities Reform Act Litigation Reporter*, Vol. 20, #1; "Giving Substance to the Right to Vote: An Initiative to Amend Delaware Law to Require a Majority Vote in Director Elections," *Corporate Governance Advisor*, Vol. 13, #1; "An Invaluable Tool in Corporate Reform: Pension Fund Leadership Improves Securities Litigation Process," *Pensions & Investments*, Nov. 29, 2004; and "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, Aug. 2004. Mr. Eisenhofer has also authored a number of articles on illiquid and rouge hedge funds, including "Time for Hedge Funds to Become Accountable to Fiduciary Investors," *Pensions & Investments*, April 30, 2012; and "Hedge Funds of the Living Dead," *New York Times Dealbook*, June 4, 2012.

Mr. Eisenhofer serves as a member of the NYU Law School Advisory Board for the Center on Civil Justice, and as co-chair for the Securities Litigation Committee of the American Association for Justice. Mr. Eisenhofer currently serves as a member of the New York City Mayor's Advisory Board for the Mayor's Fund to Advance New York City, and also serves as an ex-officio Trustee on the Board of Trustees of the American Museum of Natural History. He is a graduate of the University of Pittsburgh, and a 1986 *magna cum laude* graduate of Villanova University School of Law, Order of the Coif. He was a law clerk to the Honorable Vincent A. Cirillo, President Judge of the Pennsylvania Superior Court and thereafter joined the Wilmington office of Skadden Arps Slate Meagher & Flom. Mr. Eisenhofer was a partner in the Wilmington office of Blank Rome Comisky & McCauley until forming Grant & Eisenhofer P.A. in 1997.

**Stuart M. Grant**

Stuart M. Grant, co-founder and managing director of Grant & Eisenhofer P.A., is internationally recognized for his extensive knowledge in the areas of Delaware corporate law, fiduciary responsibility, securities and investments, private equity and fixed income, appraisal remedies, valuation, proxy contests and other matters related to protecting and promoting the rights of institutional investors. He serves as litigation counsel to many of the largest public and private institutional investors in the world.

Mr. Grant was the first attorney to argue the provisions of the PSLRA allowing an institutional investor to be appointed as sole lead plaintiff and has served as lead counsel in eight of the ten largest settlements in the history of Delaware Chancery Court.

Among his many accolades, Mr. Grant is consistently ranked in Band 1 of *Chambers USA* as a leading litigator for his work in Delaware Chancery and securities, regulatory and corporate governance litigation. For the past several years, he has been named to Best Lawyers, ranked as a leading lawyer by Legal 500, and selected for inclusion in *Super Lawyers*. Mr. Grant, who has also been recognized as one of the Top 500 Leading Lawyers in America by Lawdragon, is rated AV by Martindale-Hubbell, and is recognized by Benchmark Litigation as one of the Top 100 Trial Lawyers. Additionally, *The National Law Journal* selected Grant & Eisenhofer to its inaugural list of "Elite Trial Lawyers: The 50 Leading Plaintiffs Firms in America" in 2014, and again in 2015.

Mr. Grant has first-chaired more nine-figure securities class action and Delaware Chancery Court case resolutions than perhaps any other litigator, including:

*In re Dole Food Co. Stockholder Litigation* and *In re Dole Food Co. Appraisal Litigation*, stockholder class and appraisal litigation victory following a nine-day trial;

*In re Freeport-McMoRan Copper & Gold, Inc. Derivative Litigation*, where in a historic first for derivative litigation, the entire cash component of the settlement was distributed to Freeport shareholders in the form of a special dividend;

*City of Roseville Employees' Retirement System v. Lawrence Ellison, et al. ("Oracle Corp."),* a stockholder derivative suit alleging breach of fiduciary duty;

*In re El Paso Corporation Shareholder Litigation*, a settlement resolving allegations that El Paso's Board of Directors negotiated a merger that was "tainted with disloyalty;"

*In re Refco Inc. Securities Litigation*, class action settlement over violations of federal securities laws;

*In re Parmalat Securities Litigation*, securities class action in what the SEC described as "one of the largest and most brazen financial frauds in history;"

*Teachers' Retirement System of Louisiana v. Greenberg, et al. and American International Group, Inc.*, one of the largest derivative shareholder litigation settlements in the history of Delaware Chancery Court;

*In re Safety-Kleen Securities Corporation Bondholders Litigation*, a seven week securities class action jury trial resulting in judgments holding the company's CEO and CFO jointly and severally liable;

*In re Digex Stockholders Litigation*, the largest settlement in Delaware Chancery Court history, which led to the establishment of lead plaintiff provisions in Delaware.

Mr. Grant has also resolved several class and/or derivative actions, which rank among the largest in the Delaware Chancery Court:

*In re Jefferies Group, Inc. Shareholders Litigation,* a fiduciary duty action representing one of the top ten settlements of a post-closing action challenging the fairness of a merger in the history of the Delaware Chancery Court;

*In re Del Monte Foods Company Shareholders Litigation*, shareholder litigation resulting in an unprecedented and immediate change in lending policy practices among major investment banks regarding the way the banks approach financing transactions in which they represent the seller;

*In re American International Group, Inc. Consolidated Derivative Litigation,* a settlement resolving claims that AIG's CEO Hank Greenberg and other officers of the insurer were involved in a well-documented bid-rigging scheme used to inflate the company's income; and,

*In re ACS Shareholder Litigation*, a settlement resolving allegations that ACS's Board of Directors breached their fiduciary duties in connection with the negotiated buyout of ACS by Xerox Corp.

Mr. Grant serves as Vice-Chairperson of the Delaware Judicial Nominating Commission, as a member of the Board of Trustees for the University of Delaware, and on the Advisory Board for the Weinberg Center for Corporate Governance at the University of Delaware. Mr. Grant was an Adjunct Professor of Law at the Widener University School of Law from 1994-2009, where he taught securities litigation, and is a past trustee of the Delaware Art Museum.

Mr. Grant has authored a number of articles which have been cited with approval by the U.S. Supreme Court, U.S. Court of Appeals for the 2nd and 5th Circuits and numerous U.S. District Courts. His articles include, among others, "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is so Fraught With Uncertainty That They May be Void for Vagueness"; "Class Certification and Section 18 of the Exchange Act"; "*Unisuper v. News Corporation*: Affirmation that Shareholders, Not Directors, Are the Ultimate Holders of Corporate Power"; "Executive Compensation: Bridging the Gap Between What Companies Are Required to Disclose and What Stockholders Really Need to Know"; and a number of annual PLI updates under the heading of "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act."

Mr. Grant was graduated in 1982 *cum laude* from Brandeis University with a B.A. in economics and received his J.D. from New York University School of Law in 1986. He served as Law Clerk to the Honorable Naomi Reice Buchwald in the U.S. District Court for the Southern District of New York. Mr. Grant was an associate at Skadden, Arps, Slate, Meagher & Flom (1987-94), and a partner in the Wilmington office of Blank Rome Comisky & McCauley from 1994 until forming Grant & Eisenhofer P.A. in 1997.

**Jeff A. Almeida**

Jeff Almeida is a director at Grant & Eisenhofer practicing in the areas of corporate, securities and consumer litigation.

Mr. Almeida has a wide breadth of complex commercial litigation experience, with over 18 years of litigation experience. He has primarily represented domestic and foreign institutional investors in prominent securities fraud class actions and opt-out cases, including *In re JPMorgan Chase & Co. Securities Litigation (London Whale)* (S.D.N.Y.); *In re Medtronic Securities Litigation* (D. Minn.); *In re Refco Inc. Securities Litigation* (S.D.N.Y.); *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* (D.N.J.); *In re Bank of America/Merrill Lynch Securities Litigation* (S.D.N.Y.); *In re Pfizer Inc. Securities Litigation* (S.D.N.Y.); *In re Global Cash Access Holdings Securities Litigation* (D. Nev.); and *In re Career Education Corp. Securities Litigation* (S.D. Ill.).

Mr. Almeida has also been actively engaged in derivative, class, and appraisal litigation in the Delaware Court of Chancery, including the matters *In re Tyson Foods, Inc. Consolidated Shareholder Litigation*, which resulted in historic rulings clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans; *Louisiana Municipal Police Employees' Retirement System v. Crawford* (*Caremark*), a well-publicized

derivative action challenging the terms of the Caremark and CVS merger that resulted in a $3.2 billion settlement; and *In re Genentech Inc. Shareholder Litigation*, where he successfully represented Genentech minority stockholders against Roche's heavy-handed attempt to squeeze out the minority to seize control of Genentech.

In consumer litigation, Mr. Almeida currently serves as counsel for plaintiffs in two separate consumer class actions against Ford Motor Company, one of which involves Ford's defective infotainment system and the second of which involves unintended acceleration.  In other commercial fraud litigation, he has also successfully represented hedge fund clients in claims involving short-squeeze market manipulation and the marketing and sale of abusive tax shelters.

Prior to joining Grant & Eisenhofer in August 2004, Mr. Almeida was affiliated for seven years as an attorney with a major Philadelphia defense firm, where he practiced in the areas of complex commercial litigation, with a focus on consumer class actions, commercial contract disputes, and insurance coverage and bad faith defense.

Mr. Almeida is a 1994 graduate of Trinity College in Hartford, Connecticut, where he captained the varsity basketball team and achieved election to Phi Beta Kappa, and a 1997 graduate of William and Mary Law School in Williamsburg, Virginia. Mr. Almeida is admitted to practice in Delaware, Pennsylvania, and New Jersey, along with several federal district courts.

**Michael J. Barry**

Michael Barry is a director at Grant & Eisenhofer focusing on corporate governance and securities litigation. For over thirteen years, he has represented institutional investors in litigation relating to securities fraud, corporate fiduciary responsibilities, shareholder proposals under SEC Rule 14a-8, and corporate governance generally.  As a foremost practitioner in these areas, Mr. Barry has been significantly involved in groundbreaking class action recoveries, corporate governance reforms and shareholders rights litigation.

He has been instrumental in landmark corporate governance cases, including *AFSCME v. AIG*, which recognized shareholders' right to introduce proxy access proposals; *Bebchuk v. CA, Inc.,* which allowed shareholders to introduce proposals restricting a board's ability to enact poison pills; and *CA, Inc. v. AFSCME*, a historic decision of the Delaware Supreme Court regarding the authority of shareholders to adopt corporate bylaws. His casework includes the Genentech Shareholder Litigation, resulting in an increase of $3 billion in value for shareholders arising from a corporate merger; a $922 million settlement in the UnitedHealth Group derivative litigation, resolving one of the most egregious examples of options backdating; an $89.4 million recovery for stockholders of Del Monte Foods Co. in a case that exposed significant conflicts of interest in staple financing in corporate mergers; and a $153.75 million recovery in a derivative action on behalf of Freeport-McMoRan Corporation shareholders, which included, for the first time in derivative litigation, a provision that the entire cash portion of the recovery—$147.5 million—be distributed to shareholders in the form of a special dividend.

Mr. Barry has spoken widely on corporate governance and related matters. In addition to having served as a guest lecturer at Harvard Law School, he speaks at numerous conferences each year. Mr. Barry has authored several published writings, including the *Shareholder Activism Handbook*, a comprehensive guide for shareholders regarding their legal rights as owners of

corporations, which he co-authored. In 2015, Mr. Barry was selected to the Markets Advisory Council for the Council of Institutional Investors.

Prior to joining Grant & Eisenhofer, Mr. Barry practiced at a large Philadelphia-based firm, where he defended the Supreme Court of Pennsylvania, the Pennsylvania Senate and Pennsylvania state court judges in a variety of trial and appellate matters. He is a 1990 graduate of Carnegie Mellon University and graduated *summa cum laude* in 1993 from the University of Pittsburgh School of Law, where he was an Executive Editor of the *University of Pittsburgh Law Review* and a member of the Order of the Coif.

**Daniel L. Berger**

Daniel Berger is a director at Grant & Eisenhofer. Prior to joining the firm, Mr. Berger was a partner at two major plaintiffs' class action firms in New York, including Bernstein Litowitz Berger & Grossmann (BLBG), where he had litigated complex securities and discrimination class actions for twenty two years.

Mr. Berger's experience includes trying three 10b-5 securities class actions to jury verdicts, which are among very few such cases ever tried. He also served as principal lead counsel in many of the largest securities litigation cases in history, achieving successful recoveries for classes of investors in cases including *In re JPMorgan Chase & Co. Securities Litigation* ($150 million);  *In re Merck Vytorin/Zetia Securities Litigation* ($215 million); *In re Cendant Corp. Securities Litigation* ($3.3 billion); *In re Lucent Technologies, Inc. Securities Litigation* ($675 million); *In re Bristol-Myers Squibb Securities Litigation* ($300 million); *In re Daimler Chrysler A.G. Securities Litigation* ($300 million); *In re Conseco, Inc. Securities Litigation* ($120 million); *In re Symbol Technologies Securities Litigation* ($139 million); and *In re OM Group Securities Litigation* ($92 million).

Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott,* 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.,* 919 F.2d 290 (5th Cir. 1990.) In addition, Mr. Berger was lead class counsel in many important discrimination class actions, in particular *Roberts v. Texaco, Inc.*, where he represented African-American employees of Texaco and achieved the then largest settlement ($175 million) of a race discrimination class action.

Mr. Berger is a member of the faculty of Columbia University School of Law, where he is a Lecturer in Law.  He also serves on the Board of visitors of the Law School. Previously, Mr. Berger was a member of the Board of Managers of Haverford College from 2000-2003.  He serves as the Co-Chair of the Board of GO Project, a not-for profit organization that provides academic support for New York City public school students, and is a Member of the Board of Grace Church School in New York. He also serves on the Board of in Motion, Inc., a non-profit organization providing legal services to victims of domestic violence, and the Board of Madison Square Park Conservancy, a public-private partnership that operates and preserves one of New York City's great parks.

Mr. Berger is a 1976 graduate from Haverford College, and graduated in 1979 from Columbia University School of Law.

**Cynthia A. Calder**

Cynthia Calder is a director at Grant & Eisenhofer. She concentrates her practice in the areas of corporate governance and securities litigation. She has represented shareholders in such seminal cases in the Delaware Court of Chancery as *UniSuper Ltd. v. News Corp.*, vindicating the shareholders' right to vote; *Carmody v. Toll Brothers*, finding the dead-hand poison pill defensive measure was illegal under Delaware law, *Jackson National Life Insurance Co. v. Kennedy*, breaking new ground in the interpretation of fiduciary duties owed to preferred shareholders; *Haft v. Dart Group Corp.*, resolving a contest for control of a significant public corporation; and *Paramount Communications Inc. v. QVC Network*, obtaining an injunction preventing the closing of a merger to force the board of directors to appropriately consider a competing bid for the corporation. More recently, Ms. Calder prosecuted a derivative suit on behalf of American International Group, Inc. shareholders against the company's former CEO, Maurice Greenberg, and other former AIG executives. The action was concluded for a settlement of $115 million – one of the largest such settlements in the history of the Delaware Court of Chancery. Ms. Calder was also the Court-appointed representative on the shareholder counsel's committee in the UnitedHealth Group derivative litigation, which was settled for more than $900 million – the largest known derivative settlement in any court system. Ms. Calder also prosecuted a shareholder class action, *In re ACS Shareholder Litigation*, which resulted in one of the largest class recoveries in the history of the Court of Chancery.

Ms. Calder has co-authored numerous articles on corporate governance and securities litigation, including "Options Backdating from the Shareholders' Perspective" *Wall Street Lawyer*, Vol. 11, No. 3; "Securities Litigation Against Third Parties: Pre-Central Bank Aiders and Abettors Become Targeted Primary Defendants" *Securities Reform Act Litigation Reporter*, Vol. 16, No. 2; and "Pleading Scienter After Enron: Has the World Really Changed?" *Securities Regulation & Law*, Vol. 35, No. 45.

Ms. Calder graduated *cum laude* from the University of Delaware in 1987 and graduated from the Villanova University School of Law in 1991. Upon graduating from law school, Ms. Calder served as a Judicial Law Clerk in the Delaware Court of Chancery to the Honorable Maurice A. Hartnett, III. Prior to joining Grant & Eisenhofer, Ms. Calder was an associate at Blank, Rome, Comisky & McCauley.

**Charles T. Caliendo**

Charles Caliendo is a director at Grant & Eisenhofer. He represents institutional investors in class action securities, opt-out and shareholder derivative litigation. Prior to joining Grant & Eisenhofer, he served as an Assistant Attorney General in the Investment Protection Bureau of the New York State Attorney General's Office where he prosecuted cases and led investigations related to mutual fund market timing and late trading. Mr. Caliendo practiced at a Manhattan-based law firm in the areas of class action securities, mergers and acquisitions, corporate governance and other commercial litigation.

Mr. Caliendo has written and spoken on issues relating to regulatory enforcement, corporate internal investigations and securities and shareholder litigation. In November 2004 and June 2006, Mr. Caliendo was a speaker at financial services industry seminars sponsored by The Association of the Bar of the City of New York for which he authored articles entitled "The

Investment Protection Bureau:  An Overview of Financial Markets Regulation and Enforcement in New York" and "Thompson Memo Under A Microscope." In June 2005, Mr. Caliendo spoke before a delegation of Chinese mutual fund CEOs participating in the Penn-China Mutual Fund CEO Leadership Program, University of Pennsylvania Graduate School of Education. Mr. Caliendo co-authored "Who Says The Business Judgment Rule Does Not Apply To Directors Of New York Banks?" 118 *Banking Law Journal* 493 (June 2001) and "Board of Directors' 'Revlon Duties' Come Into Focus," *New York Law Journal*, vol. 222, no. 86, col. 1 (Nov. 1, 1999).

Mr. Caliendo received his B.S. from Cornell University and J.D. from St. John's University School of Law where he was an editor of the *St. John's Law Review* and a Saint Thomas More Scholar.

**Nathan A. Cook**

Nathan Cook is a director at Grant & Eisenhofer and focuses his practice on trial and appellate litigation relating to Delaware corporation and alternative entity law.  Mr. Cook has litigated a variety of Delaware law matters, including numerous matters relating to the fiduciary duties of directors, officers and controlling stockholders, appraisal rights, and stockholder inspections of corporate books and records, as well as disputes relating to corporate contests for control, the post-merger treatment of options and merger earn-outs.

Mr. Cook has litigated multiple complex matters before the Delaware Court of Chancery and the Delaware Supreme Court including: *In re Dole Food Co. Stockholder Litigation* and *In re Dole Food Co. Appraisal Litigation*, stockholder class and appraisal litigation resulting in a damages award of $148 million, plus interest, following a nine-day trial; *In re News Corporation Shareholder Derivative Litigation,* a stockholder lawsuit resulting in a $139 million settlement; *In re Clear Channel Outdoor Holdings, Inc. Derivative Litigation,* resulting in a settlement which returned $200 million to Clear Channel Outdoor Holdings' stockholders; *In re Delphi Financial Group Shareholder Litigation*, a stockholder class action resulting in a $49 million settlement; *Indiana Electrical Workers Pension Trust Fund IBEW v. Wal-Mart Stores, Inc.,* a stockholder books and records lawsuit that obtained one of the largest productions of internal documents pursuant to 8 *Del. C.* §220 in Delaware Chancery Court history and led to a landmark Delaware Supreme Court ruling recognizing the "Garner doctrine" as Delaware law; and *Oklahoma Firefighters Pension & Retirement System v. Citigroup Inc.,* a successful lawsuit to inspect internal books and records relating to $400 million in alleged fraudulent lending, as well as alleged regulatory non-compliance, involving a Mexican subsidiary bank.

Mr. Cook's current work includes: *In re Appraisal of PetSmart, Inc.,* stockholder appraisal litigation relating to the 2015 buyout of PetSmart, Inc., which represents the largest appraisal case in Delaware Chancery Court history; and *Refco Group, Ltd. v. Cantor Fitzgerald, LP, et al.*, alternative-entity derivative litigation before the U.S. District Court for the Southern District of New York concerning alleged breaches of fiduciary duty.

Prior to joining Grant & Eisenhofer, Mr. Cook served as lead trial counsel for a stockholder seeking to replace incumbent directors in a hostile takeover, successfully representing the stockholder in stock-list litigation, litigation to compel a stockholders meeting, defeat of the incumbent directors' request for temporary restraining order concerning compliance with advance notice bylaws, and a highly-contested stockholders meeting.  Mr. Cook's prior

experience also includes *Lillis, et al. v. AT&T and AT&T Wireless*, a successful action to recover the value of out-of-the-money stock options, which were cancelled in the AT&T-Cingular Wireless merger, on behalf of former directors and executive officers of MediaOne.

Mr. Cook also has significant experience providing corporate advisory services on a variety of matters relating to Delaware law—*e.g.*, advising directors (including special committees) and officers in connection with mergers and other strategic transactions; charters, bylaws, and stockholder rights plans; and dividends and distributions.

Mr. Cook spoke on the "M&A and Advising the Board" panel at the 2015 Delaware Law Issues Update conference hosted by the Weinberg Center and the Society of Corporate Secretaries & Governance Professionals. Mr. Cook also spoke on a panel discussing litigation to enforce stockholders' rights to inspect corporate books and records at the Practising Law Institute's seminar "Delaware Law Developments 2015: What All Business Lawyers Need to Know." Mr. Cook also authored *Delaware Supreme Court Okays One-Way Fee-Shifting Bylaws*, AAJ (Summer 2014), and co-authored *The Delaware Supreme Court Weighs in on Fiduciary Duties to Creditors*, Insights (June 2007), and *Frequently Asked Questions, Answers and More Questions about the Business Strategy Immunity*, PLI (2011).

In 2015, Mr. Cook was selected to The National Trial Lawyers: Top 40 Under 40. Mr. Cook is a member of the Richard S. Rodney Inn of Court, the American Bar Association (Business Law Section), the Delaware State Bar Association, and the New York State Bar Association.

Mr. Cook received his B.A., with distinction, from the University of Virginia in 2002, where he majored in economics and history and was a Jefferson Scholar and an Echols Scholar. He received his J.D. from the University of Virginia in 2005, where he served on the Editorial Board for the *Virginia Environmental Law Journal*. Following graduation from law school, Mr. Cook served as a law clerk to the Honorable John W. Noble of the Delaware Court of Chancery.

**Robert G. Eisler**

Robert Eisler is a director at Grant & Eisenhofer and leads the firm's antitrust practice. Mr. Eisler has been involved in many significant antitrust class action cases in recent years. He is experienced in numerous industries, including pharmaceuticals, paper products, construction materials, industrial chemicals, processed foods, municipal securities, and consumer goods.

Mr. Eisler is currently serving as co-lead counsel in several cases, including *Gordon et al. v. Amadeus et al.*, *In re London Silver Fixing, Ltd. Antitrust Litigation* and *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation.* He has served as lead or co-lead counsel in many other significant antitrust cases, including *In re Buspirone Antitrust Litigation* (which led to a $90 million settlement in which presiding Judge Koeltl stated that the plaintiffs' attorneys had done "a stupendous job"), *In re Ciprofloxacin Hydrochloride Antitrust Litigation, In re Flat Glass Antitrust Litigation,* and *In re Municipal Derivatives Antitrust Litigation.*

Mr. Eisler has played major roles in a number of other significant antitrust cases, including *In re Polyurethane Foam Antitrust Litigation, In re Blue Cross/Blue Shield Antitrust Litigation,* and *In re Linerboard Antitrust Litigation.* He also has significant experience litigating antitrust matters

in the U.K., including cases concerning cartels in a number of industries, such as air cargo services, air passenger services, automotive glass, and pharmaceuticals, among others.

In addition to his antitrust work, Mr. Eisler has extensive experience in securities, derivative, complex commercial and class action litigation at the trial and appellate levels. He has been involved in numerous securities and derivative litigation matters on behalf of public pension funds, municipalities, mutual fund companies and individual investors in state and federal courts.

Mr. Eisler graduated from LaSalle University in 1986, and in 1989, from Villanova University School of Law.

### Elizabeth (Beth) Graham

Elizabeth ("Beth") Graham is a director at Grant & Eisenhofer, leading the firm's complex pharmaceutical and medical device litigation practice.  Since 1989, she has dedicated her practice to complex mass tort and class action litigation.

Ms. Graham's expertise spans the practice areas of mass tort, consumer fraud, product liability, environmental, and business torts. She has served as Lead Class Counsel in multi-million dollar cases, has acted as a member of various Plaintiffs' Executive Committees in complex actions, and has prior experience as national defense coordination counsel in product liability litigation.

Currently, Ms. Graham serves as Co-Lead on the Plaintiffs' Executive Committee in *In re Zofran (Ondansetron) Products Liability Litigation* (MDL No. 2657) and serves on the Plaintiffs' Steering Committee in *In re Power Morcellator Products Liability Litigation* (MDL No. 2652). Ms. Graham is Co-Chair of the Law & Briefing Committee for *In re Xarelto Products Liability Litigation* (MDL No. 2592) and is a member of the Xarelto Bellwether Selection Committee. She is actively representing thousands of injured victims in cases against major pharmaceutical companies and medical device manufacturers, including women adversely affected by permanent contraceptive device Essure. Additionally, Ms. Graham is Co-Chair of the American Association for Justice Zofran Litigation Group, and is a member of the Publications Committee for the AAJ.

Notably, Ms. Graham has served as lead counsel in high profile class actions such as *Borman Automotive v. American Honda Motor Corp.* (MDL No. 1069), which resulted in a $435 million settlement; and litigation against Chrysler based on its Minivan Doorlatch failures and ABS brake defects. Ms. Graham served on the Plaintiffs' Steering Committee and represented dozens of victims in the *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation* (MDL No. 1410). She has also represented over one hundred families injured by environmental contaminants, including radon, arsenic and rocket fuel, resulting in confidential settlements in excess of $25 million.   Ms. Graham also has vast experience as a consultant to other mass tort firms that seek her advice in structuring their cases.

Ms. Graham is an accomplished speaker, having co-chaired the December 2014 HarrisMartin MDL Conference covering updates to the Xarelto and power morcellator litigations, presenting at several Mass Torts Made Perfect conferences on the progress of the Zofran (Ondansetron) litigation, and speaking at the American Association for Justice "Plaintiffs-Only Hot Topics and Trends in Litigation," discussing Zofran (Ondansetron). Ms. Graham co-authored "Overcoming the Clear Evidence Defense," published in the July 2016 issue of *Trial* magazine.

Prior to her representation of injured individuals, Ms. Graham worked for large product liability defense firms as national defense counsel in cases such as *In re Silicone Breast Implant Litigation*. Prior to joining G&E, Ms. Graham was a partner at prominent San Francisco area law firms.

**Olav Haazen**

Olav Haazen, PhD, is a director at Grant & Eisenhofer. His areas of practice include cross-border securities fraud and antitrust litigation.

Mr. Haazen has significant experience representing foreign and domestic plaintiffs in a variety of antitrust and fraud actions. Most recently, he successfully represented a class of Fortis investors for whom he helped negotiate a record-high $1.3 billion settlement of all investment fraud claims in the Netherlands and Belgium. Other representations, past and present, include:

- nearly 300 institutional investors from around the world seeking recovery from Volkswagen in German court in connection with its well-publicized manipulation of emissions controls;
- a large group of Laiki and Bank of Cyprus bondholders and depositors with ICSID arbitration claims against Cyprus, whose interests were wiped as part of the 2013 Cyprus bank bail-out;
- foreign Madoff investors on fraud and negligence claims against feeder fund defendants and their auditors, custodians, and administrators;
- a French *qui tam* plaintiff in litigation arising out of the sale of Executive Life Insurance Company; and
- a large regional bakery in its successful monopolization suit against a competitor.

Mr. Haazen has also represented two classes of professional fashion models in price-fixing and consumer fraud actions, which resulted in a virtually unprecedented 100% recovery of all claimants' losses, as well as substantial injunctive relief, which Justice Ramos of the New York Supreme Court lauded as a model for legislative reform.

Prior to joining G&E, Mr. Haazen was counsel at a prominent national law firm, where he successfully represented major corporate clients and individuals in several high-profile RICO, securities, and government investigation matters and commercial disputes, including a well-known playwright against a civil forfeiture claim arising out of Kenneth Starr's "Ponzi" scheme; a utilities company in a significant contract dispute with Enron; and one of the largest franchisors in professional sports in a $1.2 billion monopolization suit. He has also represented several government entities and officials, including a Westchester County municipality in a $600 million lawsuit by Donald Trump's Seven Springs LLC, as well as the City and Mayor of Amsterdam, and a foreign country's former Secretary of State.

From 2010-2011, Mr. Haazen served on the American Bar Association's seven-member Standing Committee for Amicus Curiae briefs and the Third-Party Litigation Funding Study Group. From 1996-2001, he served as a Country Reporter for the Netherlands for the European Restatement of Torts, and recently as a Netherlands Reporter to the 17th International Congress of Comparative Law. Mr. Haazen teaches comparative civil procedure and cross-border litigation at Leiden University in the Netherlands, and previously taught at Harvard, Stanford, and Oxford.

He has written several books and over 40 articles and case notes. He is admitted as solicitor in England and Wales, and as arbitrator at the Netherlands Arbitration Institute and at the Center for Dispute Resolution (CEDIRES) in Belgium.

**Adam J. Levitt**

Adam Levitt is a director at Grant & Eisenhofer P.A., where he leads the Firm's Consumer Protection and Products Liability Litigation Group. He specializes in complex commercial litigation, class action, and mass tort litigation in the areas of consumer protection, automotive, antitrust, securities, technology, and agricultural law. Mr. Levitt served as co-lead counsel in two of the largest biotechnology class actions in recent years, recovering more than $1.2 billion in damages for the plaintiffs: *In re Genetically Modified Rice Litigation*, in which Mr. Levitt has obtained settlements exceeding $1.1 billion on behalf of long-grain rice producers and others who suffered losses resulting from contamination of the U.S. rice supply with unapproved, genetically modified seeds; and *In re StarLink Corn Products Liability Litigation*, where he recovered $110 million on behalf of farmers who sustained market losses on their corn crops arising from contamination of the U.S. corn supply with genetically-modified StarLink corn.

With one of the country's leading consumer litigation practices, Mr. Levitt has successfully led numerous class and complex litigation cases in both state and federal courts, on the trial and appellate court levels. He is currently lead or co-lead counsel in several notable nationwide litigations (MDL and otherwise), including *Johnson, et al. v. Ford Motor Co.* (Ford Sudden Acceleration), (S.D. W.Va.); *In re Navistar Maxxforce Engines, Sales Practices and Products Liability Litigation*, (N.D. Ill.); *In re MyFord Touch Consumer Litigation*, (N.D. Cal.); *In re Porsche Cars North America Inc. Plastic Coolant Tubes Products Liability Litigation*, (S.D. Ohio); *In re Dial Complete Marketing and Sales Litigation*, (D. N.H.); *In re Wesson Oil Marketing and Sales Practices Litigation*, (C.D. Cal.); and *Philips v. Ford Motor Co.* (Ford EPAS), (N.D. Cal.). He is also a Plaintiffs' Steering Committee member in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* (N.D. Cal.); an Executive Committee member in *In re General Motors LLC Ignition Switch Litigation*, (S.D.N.Y.); and Plaintiffs' Executive Committee Chair in *In re Stryker Rejuvenate and ABG II Hip Implant Litigation*, (D. Minn.).

Mr. Levitt is an appointed member of the Advisory Council of the Duke Law Center for Judicial Studies; an elected member of the American Law Institute; and an elected member of the Economic Club of Chicago.  Mr. Levitt is also President of the Class Action Trial Lawyers – a division of The National Trial Lawyers – of which he is an Executive Committee Member; sits on the Board of Advisors for the Chicago chapter of the American Constitution Society for Law and Policy and is an Advisory Board Member of the Institute for Consumer Antitrust Studies.

Mr. Levitt is "AV" rated by Martindale Hubbell. He has been recognized as an Illinois "Super Lawyer" for the past several years, acknowledged by Lawdragon as one of the 500 leading lawyers in the United States, and has been named "Litigator of the Week" by *The American Lawyer* magazine.   Mr. Levitt has also been recognized as one of *Avenue* magazine's "Legal Elite" and is part of the Angeion Group's "Angeion Leading Litigators" video series.

Mr. Levitt is a Leaders' Forum member of the American Association for Justice, where he was selected to co-chair the Volkswagen Emissions and the GM Ignition Switch Litigation Groups, is a peer reviewer of articles submitted to AAJ's *Trial* magazine, and is a member of AAJ's Publications and Legal Affairs Committees.

Mr. Levitt has authored numerous articles on class action litigation and consumer protection; some of his more recent publications include:

Law Review Articles

- "*The Gift That Keeps on Giving:  Price Overhang Damages in Commodity Crop Cases,*" 51 Val. *U. L. Rev.* --- (2016) (co-authored with Russell L. Lamb);
- "Agricultural "Market Touching": Modernizing Trespass to Chattels in Crop Contamination Cases," 38 *U. Haw. L. Rev.* 409 (2016) (co-authored with Nicole Negowetti);
- "CAFA and Federalized Ambiguity: The Case for Discretion in the Unpredictable Class Action," 120 *Yale Law Journal Online* 231 (2011);

Other Publications

- "The Volkswagen Emissions Scandal: What's Next?," *TRIAL*, Vol. 52, No. 2 (2016);
- "Avoiding the Substantiation Trap in Health Benefit Product Claims," *AAJ Class Action Litigation Newsletter*, Winter 2016;
- "Volkswagen Scandal is Perfect Fit for a Damages Class Action," *Portfolio Media* (Law360), September 2015;
- "The Ascertainability Fallacy and Its Consequences," *AAJ Class Action Litigation Newsletter*, Spring 2015;
- "Fees Obliterate Managed Futures Fund Profits," *Financial Advisor,* Jan. 21, 2014;
- "Supreme Court to Revisit the Fraud on the Market Presumption of Reliance in Securities Fraud Cases," *AAJ Class Action Litigation Newsletter*, Winter 2014;
- "Calculating Damages in Securities Class Actions," *TRIAL,* Vol. 49, No. 6. (2013);
- "The Role and Function of Corporate Representatives at Trial," *The Trial Lawyer*, Vol. II, No. IV (2013);
- "Multidistrict Litigation Practice: The Function and Shifting Focus of the JPML in Class Action and Other 'Bet the Company' Litigation," chapter from *Straight from the Top: Case Studies in the World of Litigation* (2012);
- "Sticky Situations in Mass Tort Settlements," *TRIAL*, Vol. 48, No. 11 (2012);
- Taming the Metadata Beast," *New York Law Journal,* May 16, 2008;
- "The Big Business Wish List: Proposed Illinois Supreme Court Rule 225 and the Demolition of Consumer Rights," *The Class Act*, 2005;
- "Foreign Investors Serving as Lead Plaintiffs in U.S.-Based Securities Cases," *Association of Trial Lawyers of America*, 2005;
- "Proposed Rule 225: A Death Warrant for Class Actions in Illinois," 93 *Illinois Bar Journal 202 (*2005);

- "An Illinois Lawyer's Guide to Service of Process in Mexico," 82 *Illinois Bar Journal 434* (1994).

In addition to his writings, Mr. Levitt is a frequent speaker on topics of consumer protection, automotive litigation, multidistrict litigation, biotechnology, corporate governance, securities litigation, and Internet privacy. Mr. Levitt has also testified before the Illinois Supreme Court Rules Committee on class action practice and related issues. In addition to chairing an annual class action litigation conference in Chicago, some of Mr. Levitt's more recent speaking engagements include:

- "Criteria for Approving Class Action Settlements," The Duke Law Center for Judicial Studies – Class Action Settlement Conference, 2016;
- "Current Trends in Product Liability Class Action Litigation," Perrin Class Action Litigation Conference – Chicago 2016 (Conference Co-Chair);
- "What's on the Horizon: Emerging Class Action Trends," Class Action Litigation in America – A National Symposium, 2016;
- "Proving Class-Wide Damages After Comcast in Consumer Products Class Actions," AAJ 2016 Summer Conference;
- "Poison in the Well: GMO Crop Contamination Litigation," Valparaiso Law Review Symposium, 2015;
- "Rage Against the Machine: Breaking Down the Best-Schooled Corporate Executives at Deposition and Trial," Trial Lawyers Summit, 2015;
- "Criteria for Approving Class Action Settlements," The Duke Law Center for Judicial Studies – Class Action Settlement Conference, 2015;
- "Volkswagen Emissions Fraud Litigation Update," American Association for Justice, Plaintiff-Only Hot Topics and Trends in Litigation Seminar, 2015;
- "Consumer Litigation Roundtable: Judicial Perspectives on the Management of Class Action Cases," Perrin Class Action Litigation Conference – Chicago 2015 (Conference Co-Chair);
- "Challenges to Ascertainability, "Fail-Safe" Classes, Standing, and Class Member Injury," Chicago Bar Association Class Action Conference: Challenges to Class Membership, 2015;
- "Scope of Vehicles, Numerosity, and Commonality in the VW Emissions Scandal," AAJ Volkswagen Emissions Litigation Webinar, 2015;
- "Litigation Background and Update: *In re Syngenta AG MIR 162 Corn Litigation*," Syngenta GMO Corn Webinar, 2015;
- "Commentator – Writing Better Jury Instructions: Antitrust as an Example," 15th Annual Loyola Antitrust Colloquium, 2015;
- "Lessons Learned: Trial, Discovery, and the Business of Practicing Law," Trial Lawyers Summit, 2014;
- "Lessons on Motions to Dismiss From Other Car Defect Cases," HarrisMartin's MDL Conference: General Motors Ignition Switch Recall Litigation, 2014;
- "The Process that Works – Class Action Mediation LIVE!" 18th Annual American Bar Association National Institute on Class Actions, 2014;

- "Making Your Parents Proud: Crafting a Meaningful Settlement," AAJ-NACA Consumer Warranty Class Action Litigation Seminar, 2014;
- "Litigating the Class Action: *In re General Motors Ignition Switch Litigation*," AAJ Education's Plaintiff-Only Hot Topics and Trends in Litigation Seminar: GM Auto Recall, 2014;
- "Corporate Governance, Arbitration By-Laws, and Foreign Securities Litigation," IPPFA Midwest Pension Conference, 2014;
- "Fighting the Class Action Battle: What Every Lawyer Needs to Know About Filing the Class Certification Motion," Trial Lawyers Summit, 2013;
- "Consumer Class Actions in a Post-*Concepcion* World," The Shifting Landscape of Class Litigation, The Chicago Bar Association, 2013;
- "Recent Developments in the Supreme Court, Seventh Circuit and Northern District of Illinois," Litigating Class Actions, 2013 (Conference Co-Chair);
- "Current Trends in Consumer Litigation," Grant & Eisenhofer Consumer Litigation Breakfast Briefing, 2013;
- "Supreme Court Review," ISS Global Shareholder Activism Conference, 2013;
- "Using Litigation to Enforce and Protect Food Labeling and Crop Standards," Animals as Food: The Legal Treatment of Animals in Contemporary Agribusiness and Factory Farming, DePaul University School of Law Symposium, 2013;
- "Access to Justice after *Iqbal* and *Twombly*," American Constitution Society Georgia Lawyer Chapter, 2013;
- "Disaster Averted, Mass Tort Resolved - Settling Mass Tort Disaster Cases," American Bar Association, Section of Litigation Annual Conference, 2013;
- "Recent Developments in Class Action Settlement Jurisprudence," American Association for Justice, 2013 Annual Convention;
- "The JPML's 1404/1407 Shift and the End of Reflexive Transfer," Aggregate Litigation After Class Actions Conference of Law Seminars International, 2013 (Conference Co-Chair);
- "Deposing the Corporate Machine: How to Win Against the Best-Schooled Corporate Executive," Trial Skills Retreat: Empowering Witnesses Conference by 360 Advocacy Institute, 2013;
- "Manifestation of Defect That Causes Actual Injury in Economic Defect Related Class Actions," 2013 National Consumer Class Action Litigation & Management Conference;
- "Trial Lawyers and Class Actions: Protecting Consumers and Elevating Your Practice," Trial Lawyers Summit, 2012;
- "Lead Plaintiff 'Pickoffs', Offers of Judgment, Moving to Dismiss Class Allegations, and Other Early Attacks on the Class Process,"
  Litigating Class Actions Conference of Law Seminars International, 2012;
- "MERS Litigation: Justice for Illinois Counties," Illinois Association of County Clerks & Recorders Annual Conference, 2012;
- "Class Actions in Medical Device and Pharmaceutical Litigation," HarrisMartin
  TVM/Actos Litigation Conference, 2012;

- "The Evolution of the Class Action Notice," Class Actions – Plaintiff & Defense Perspectives, 2012;
- "Removal, Remand, and Claims Asserted – Strategic Considerations in MERS Litigation," American Association for Justice, Mortgage Electronic Registration System (MERS) Teleseminar, 2012;
- "Thinking About Trial from Day One," American Association for Justice, 2012 Annual Convention;
- "Litigation at Sunrise – The Basics of the MERS System," American Association for Justice, 2012 Annual Convention;
- "Class Action Litigation and Victim Services," 38th NOVA Conference, 2012;
- "Modifying Your Approach for Multi-State Class Actions," LSI Litigating Class Actions Conference, 2011;
- "Multi-State Litigation in the Post-CAFA World," Litigating Class Actions (Chicago), 2011;
- "Imprelis Herbicide Litigation Spotlight," HB Litigation Conferences, 2011;
- "Ethical Implications of Class Action and Mass Tort Settlements," American Association for Justice, Summer Conference, 2011;
- "Current Developments in Consumer Protection Litigation," 11th Annual Class Action/Mass Tort Symposium, 2011;
- "Privacy Litigation: The Evolution in Theories and Outcomes," International Association of Privacy Professionals "Privacy Academy," 2009;
- "Securities Litigation Update," 2008 Class Action Institute;
- "Legal Strategies to Fight Negative Effects of Genetic Engineering," Public Interest Environmental Law Conference, 2007;
- "Corporate Governance Developments," Financial Management Association Annual Conference, 2005.

Mr. Levitt graduated from Columbia College, Columbia University (A.B., *magna cum laude*, 1990) and received his J.D. from Northwestern University School of Law in 1993.

**Megan D. McIntyre**

Megan McIntyre is a director at Grant & Eisenhofer, practicing in the areas of corporate, securities and complex commercial litigation. Among other work, she has represented institutional investors, both public and private, in corporate cases in the Delaware Court of Chancery as well as in securities class actions in federal courts throughout the country that have resulted in significant recoveries. She was a member of the trial team in *In re Safety-Kleen Corp. Bondholders Litigation*, which ended in settlements and judgments totaling approximately $280 million after seven weeks of trial, and she played a lead role in *In re Refco Inc. Securities Litigation*, which culminated in recoveries exceeding $400 million. Ms. McIntyre was also a member of the litigation teams that represented the plaintiffs in two cases whose settlements rank among the largest in the history of the Delaware Court of Chancery: *In re El Paso Corp. Shareholder Litigation*, which settled for $110 million, and *In re American International Group, Inc. Consolidated Derivative Litigation*, which settled for $90 million.

In addition to her work on behalf of investor plaintiffs in class and derivative litigation, Ms. McIntyre has represented institutional investors who have opted out of federal securities class actions to pursue separate actions, resulting in recoveries that exceeded what they would have received as class members. Ms. McIntyre has also successfully represented clients in obtaining access to corporate proxy statements for the purpose of presenting proposed shareholder resolutions, and has brought and defended actions seeking to enforce shareholders' rights to inspect corporate books and records pursuant to the statutory authority of Section 220 of the Delaware General Corporation Law.

Ms. McIntyre has appeared as a guest on CNBC's "On the Money," and on September 13, 2012 she was featured as "Litigator of the Week" in *The AmLaw Litigation Daily* for her work in the *In re El Paso Corp. Shareholder Litigation*.

Ms. McIntyre graduated from The Pennsylvania State University in 1991 and graduated *magna cum laude* in 1994 from The Dickinson School of Law. In 2013, she was selected as one of the Lawdragon 500 Leading Lawyers of America.

**Gordon Z. Novod**
Gordon Novod is a director at Grant & Eisenhofer, focusing his practice on corporate restructuring and creditors' rights. He has fifteen years of experience representing *ad hoc* and official committees, distressed investors, lenders, litigation trustees, indenture trustees, trade creditors, and other parties in some of the most complex landmark restructurings.

Mr. Novod's industry experience spans the automotive, chemical, construction, energy, entertainment, gaming, manufacturing, media, mining, and retail sectors. He has negotiated, drafted, and litigated all aspects of Chapter 11 plans of reorganization, valuation, and plan confirmation proceedings, contested debtor-in-possession financing and cash collateral use, the pursuit of fraudulent conveyance actions, and other matters involving bankruptcy-related and distressed litigation. He also has extensive experience reviewing, advising clients on, and litigating issues related to corporate debt securities in default and distressed situations, including exchange transactions and the Trust Indenture Act.

Mr. Novod prides himself on providing high quality advocacy to clients, keeping their business objectives in mind, thereby enabling him to build lasting relationships. He is also able to grasp complex legal and business issues in order to craft and implement innovative, yet practical solutions to maximize value for clients.

On numerous occasions, Mr. Novod has been acknowledged for his work as a restructuring attorney. In 2011, Law360 called him one of the "Rising Stars" in restructuring and "one of the five bankruptcy attorneys under 40 to watch." He was also named a finalist in the M&A Advisor's "40 under 40." The following year, he was recognized as a "Winner of the 2012 40 Under 40 East M&A Advisor Recognition Awards" and New York *Super Lawyers* – Bankruptcy, "Rising Stars." In 2013, 2014, 2015 and 2016, he was selected to New York Metro *Super Lawyers* in Bankruptcy. In addition, he serves on the New York City Bar Association's Committee on Bankruptcy and Corporate Reorganization.

Prior to joining G&E, Mr. Novod was a partner in the bankruptcy & corporate restructuring group at Brown Rudnick in New York. He also formerly practiced in the corporate restructuring and bankruptcy group at Kramer Levin Naftalis & Frankel LLP.

Mr. Novod's prominent engagements include:

- Caesars Entertainment Operating Company, Inc. (unsecured noteholder and proposed class representative)
- CoBank, ACB (ad hoc noteholder committee)
- Chesapeake Energy Corp. (unsecured noteholders and proposed class representatives)
- Cliffs Natural Resources (unsecured noteholders and proposed class representatives)
- Vanguard Natural Resources (unsecured noteholders and proposed class representatives)
- The Refco Litigation Trust
- ShengdaTech, Inc. (ad hoc noteholder committee)
- Tribune Company (indenture trustee)
- Central European Distribution Corporation (ad hoc committee of convertible noteholders)
- Lyondell Chemical Company (creditors' committee)
- Herbst Gaming, Inc. (creditors' committee)
- Lehman Brothers (ad hoc consortium of claimholders of Lehman Brothers Special Financing, Inc.)
- Green Valley Ranch Gaming, LLC (ad hoc committee of second lien lenders)
- Palm Harbor Homes, Inc. (indenture trustee)
- Equisearch Services, Inc. (trade creditor)
- General Motors Corporation (n/k/a Motors Liquidation Company) (creditors' committee)
- Charter Communications, Inc. (ad hoc first lien lenders)
- Midway Games, Inc. (secured lender)
- Bethlehem Steel Corp. (creditors' committee)
- WCI Steel, Inc. (ad hoc noteholders' committee and indenture trustee)
- Delphi Corp. (trade creditor and member of the creditors' committee)
- Grace Industries, Inc. (creditors' committee)
- Wave Wireless Corp. (secured lender)
- Diomed, Inc. (licensor and chairman of the creditors' committee)
- TransCare Corp. (creditors' committee)
- Buffets Holdings, Inc. (ad hoc noteholders' committee)
- ASARCO LLC (majority noteholders)
- Bridgeport Holdings, Inc. (Micro Warehouse, Inc.) (debtors)
- WestPoint Stevens, Inc. (second lien agent)

Mr. Novod has lectured on indenture analysis and fraudulent conveyance litigation.

**James J. Sabella**

James Sabella is a director at Grant & Eisenhofer. He has over thirty-five years of experience in complex civil litigation, including representing plaintiffs and defendants in class and derivative actions involving trial and appellate work in state and federal courts. He has substantial experience in securities litigation and litigation involving claims against accounting firms and

underwriters. He has also handled antitrust litigation, whistleblower claims and cases involving claims under the False Claims Act, and cases involving the fiduciary obligations of trustees under state law.

Mr. Sabella has represented the lead plaintiffs in numerous major cases that have resulted in large recoveries, including the General Motors securities litigation, where the settlement was in excess of $300 million, and the Refco securities litigation, where the recovery was in excess of $400 million.  He also represented the lead plaintiffs in the Parmalat securities litigation, which resulted in landmark opinions establishing that the international firms that coordinate the audit services that audit firms conduct in various countries can be held liable for the conduct of such local audit firms.

Prior to joining Grant & Eisenhofer, Mr. Sabella practiced for twenty-eight years at several large Manhattan law firms, most recently as a partner in Sidley, Austin, Brown & Wood LLP, where his practice focused largely on accountants' liability defense, including the defense of actions alleging securities law violations and professional malpractice as well as grand jury investigations and investigations by the American Institute of Certified Public Accountants.

Mr. Sabella is a 1976 graduate of Columbia Law School, where he was a member of the Board of Directors of the *Columbia Law Review*. He received a B.A. *summa cum laude* from Columbia College in 1972 and a B.S. in 1973 from the Columbia School of Engineering, where he was valedictorian.

**Mary S. Thomas**

Mary Thomas is a director at Grant & Eisenhofer. She spent twelve years practicing business litigation with two of Los Angeles' leading law firms before joining Grant & Eisenhofer in 2006. Her experience prior to Grant & Eisenhofer includes trade secret and intellectual property matters, contract actions, employment defense, consumer class action defense, insurance disputes and environmental matters.

At Grant & Eisenhofer, Ms. Thomas represents institutional investors in class action securities and shareholder litigation and individual relators in false claims act cases. Ms. Thomas represented the lead plaintiffs in the Marsh & McLennan securities litigation, which resulted in a $400 million settlement. In Delaware Chancery Court, Ms. Thomas successfully represented investors in the ACS shareholders litigation.  Ms. Thomas currently represents the relator in a Delaware False Claims and Reporting Act case concerning unclaimed gift card balances.

Ms. Thomas served as a volunteer arbitrator for the L.A. County Bar Association and as a volunteer mediator for the L.A. Superior Court and now serves as a volunteer guardian *ad litem* through Delaware's Office of the Child Advocate. She co-authored "California Wage and Hour Laws" (published by the National Legal Center for the Public Interest, January 2005) and was one of several authors of the 10th and 11th editions of the *California Environmental Law Handbook.*

Ms. Thomas graduated *magna cum laude* from Harvard Law School in 1994 and *magna cum laude* from the University of Delaware in 1991.

**Lisa B. Weinstein**

Lisa Weinstein is a director at Grant & Eisenhofer and leads the firm's birth injury litigation division. Her practice primarily focuses on representing women and children in birth injury and birth trauma litigation.

Prior to joining G&E, Ms. Weinstein founded The Weinstein Law Group, where she represented children who were victims of medical malpractice and birth injuries. In her practice as a plaintiffs' trial lawyer, Lisa has successfully litigated personal injury, medical malpractice and birth injury matters resulting in multi-million dollar settlements and verdicts. Representative examples include an $8 million settlement in a case against Wayne County after her client's child suffered brain damage due to lack of oxygen during the labor and delivery process and a $20 million verdict in a brain damaged baby case.

Ms. Weinstein was a speaker at the 2015 New Jersey Association for Justice seminar covering "When Medical Malpractice and Mass Tort Overlap," and at the 2016 North American Brain Injury Society's annual conference, speaking about "Representing Children with Acquired TBI."

Ms. Weinstein has been selected as a Rising Star by *Super Lawyers* and has been honored by The National Trial Lawyers in the "Top 40 Under 40" for the past five years. She is a member of the Million Dollar Advocates Forum as well as the Multi-Million Dollar Advocates Forum, recognized for her work in obtaining several notable settlements and verdicts. Ms. Weinstein is an active member of the Birth Trauma Litigation Group, the Women Trial Lawyers Caucus and the Women's Bar Association of Illinois. She is also an Arbitrator for the Circuit Court of Cook County and is a Board Member of the Illinois Trial Lawyers Association.

Ms. Weinstein earned an undergraduate degree from the University of Michigan and graduated *cum laude* from DePaul University College of Law.

**John C. Kairis**

John Kairis is of counsel at Grant & Eisenhofer, where he represents institutional investors in class action litigation, individual "opt-out" securities litigation, and derivative and corporate governance litigation in the Delaware Chancery Court and other courts throughout the country. He has been a leader of G&E teams that have achieved some of the largest recoveries in securities class action history, and played major roles in the *Tyco*, *Parmalat*, *Marsh & McLennan*, *Hollinger International* and *Dollar General* securities class actions, and opt-out actions in *AOL Time Warner* and *Telxon Corporation*.

Among his Delaware Chancery Court litigation experience is a landmark case against HealthSouth, involving a books and records trial under Section 220 of the Delaware General Corporations Law, to obtain certain documents that the corporation refused to produce, which led to a settlement implementing corporate governance improvements, such as HealthSouth's agreement to replace its conflicted directors with independent directors approved by a committee which included the institutional investor plaintiff; and a settlement of litigation against Oracle Corporation, Larry Ellison and the other members of Oracle's board, whereby plaintiffs alleged that Ellison's control over Oracle and Pillar Data Systems led to an unfair process resulting in Oracle's agreement to pay a grossly excessive and unfair price for Pillar in the form of a novel

"earn out." The settlement provided a monetary benefit of approximately $440 million resulting from a required reduction in the purchase price for Pillar.

Mr. Kairis has also been instrumental in prosecuting consumer class actions involving unfair competition and false marketing claims against both Johnson & Johnson and Bausch & Lomb, and represented the lead plaintiffs and the class in a securities fraud suit against Merck & Co. and certain of its officers and directors relating to the defendants' alleged suppression of test results of Merck's cholesterol medication Vytorin.

He currently represents plaintiffs in several consumer class actions, including a pending case against Avon relating to its allegedly false advertising and misrepresentations relating to various cosmetics, and a case against Nicor Gas Company relating to that company's allegedly deceptive marketing and sale of a gas-pipe repair warranty service. Mr. Kairis also represents the lead plaintiffs in various breach of fiduciary duty cases pending in the Delaware Chancery Court.

Mr. Kairis has authored articles including "Shareholder Proposals For Reimbursement Of Expenses Incurred In Proxy Contests: Recent Guidance From The Delaware Supreme Court," *PLI*, What All Business Lawyers Must Know About Delaware Law Developments 2009 (New York, NY May 21, 2009) (co-authored with Stuart Grant); "Challenging Misrepresentations in Mergers: You May Have More Time Than You Think," *Andrews Litigation Reporter*, Vol. 12, Issue 3, June 14, 2006; "Disgorgement Of Compensation Paid To Directors During The Time They Were Grossly Negligent: An Available But Seldom Used Remedy," *Delaware Law Review*, Vol. 13, #1, 2011; and was the principle writer of an *amicus* brief to the United States Supreme Court on behalf of various public pension funds in the *Merck* case involving the standard for finding that a plaintiff is on "inquiry notice" of potential claims such that the limitations period for pleading securities fraud has commenced.

Mr. Kairis has served on the boards of several nonprofit organizations, including the West-End Neighborhood House, Inc., the Cornerstone West Development Corporation, and the board of the Westover Hills Civic Association. He has also served on the Delaware Corporation Law Committee, where he evaluated proposals to amend the Delaware General Corporation Law.

Mr. Kairis is a 1984 graduate of the University of Notre Dame and a 1987 graduate of the Ohio State University Moritz College of Law, where he was Articles Editor of the *Ohio State Law Journal* and recipient of the American Jurisprudence and John E. Fallon Memorial Awards for scholastic excellence. He is a member of the Delaware and American Bar Associations and the Delaware Trial Lawyers Association.

**Richard S. Schiffrin**

Richard S. Schiffrin is of counsel at Grant & Eisenhofer.  He has represented institutional investors and consumers in securities and consumer class actions worldwide.  In 2008, Mr. Schiffrin retired as a founding partner of Schiffrin Barroway Topaz & Kessler, LLP.

Mr. Schiffrin has been recognized for his expertise in many prominent cases, including *In re Tyco International Ltd. Securities Litigation*, the most complex securities class action in history, which resulted in a record $3.2 billion settlement.  The $2.975 billion payment by Tyco represents the single largest securities class action recovery from a single corporate defendant in

history, while the $225 million settlement with PricewaterhouseCoopers (PwC) represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history; *In re AremisSoft Corp. Securities Litigation*, a complex case involving litigation in four countries, resulting in a $250 million settlement providing shareholders with a majority of the equity in the reorganized company after embezzlement by former officers; *In re Tenet Healthcare Corp.*, resulting in a $216.5 million settlement and which led to several important corporate governance improvements; *Henry v. Sears, et al.*, one of the largest consumer class actions in history which resulted in a $156 million settlement distributed without the filing of a single proof of claim form by any class member; *Wanstrath v. Doctor R. Crants, et al.*, a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets to a private entity owned by company insiders, resulting in corporate governance reform in addition to the issuance of over 46 million shares to class members; *Jordan v. State Farm Insurance Company*, resulting in a $225 million settlement and other monetary benefits for current and former State Farm policy-holders; and *In re Sotheby's Holdings, Inc. Derivative Litigation*, resulting in a multi-million dollar settlement and significant governance changes.

Mr. Schiffrin is an internationally renowned speaker and lectures frequently on corporate governance and securities litigation. His lectures include: the MultiPensions Conference in Amsterdam, Netherlands; the Public Funds Symposium in Washington, D.C.; the European Pension Symposium in Florence, Italy; and the Pennsylvania Public Employees Retirement Summit (PAPERS) in Harrisburg, Pennsylvania. Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and served as a faculty member at legal seminars, including the Annual Institute on Securities Regulation, NERA: Finance, Law & Economics - Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC): Ethical Issues in the Practice of Securities Law.

Mr. Schiffrin is a graduate of DePaul Law School and attended graduate school at the University of Chicago. After protecting the civil rights of clients for seven years as an Assistant Public Defender with the Office of the Public Defender of Cook County, where he tried hundreds of cases, Mr. Schiffrin founded Schiffrin & Craig, Ltd., representing consumers and individual investors in actions brought against public companies. He is licensed to practice law in Pennsylvania and Illinois and has been admitted to practice before numerous United States District Courts.

**Thomas V. Ayala**

Thomas Ayala is senior counsel at Grant & Eisenhofer, focusing on complex pharmaceutical and medical device litigation. Mr. Ayala has handled all phases of mass tort and personal injury litigation from commencement through trial and appeals. He has also assembled and worked with numerous interdisciplinary teams of medical and scientific expert witnesses to support clients' legal claims, and he has served as first-chair cross-examiner of adversarial experts and other witnesses in product liability litigation.

Mr. Ayala is actively representing injured victims in cases against major pharmaceutical companies, medical device manufacturers, and manufacturers in other industries. Mr. Ayala serves on the Law and Briefing Committee for the Plaintiff's Steering Committee in *In re Xarelto Products Liability Litigation*, MDL No. 2592, serves as Co-Chair of the Science and

Expert Committee and as a member of the Law and Briefing Committee for the Plaintiff's Steering Committee in *In re Zofran (ondansetron) Products Liability Litigation,* MDL No. 2657 (where G&E is co-lead), and power morcellators (where G&E is a member of the Plaintiffs' Steering Committee in *In re Power Morcellator Products Liability Litigation*, MDL No. 2652). Mr. Ayala is also representing individuals adversely affected by defective metal-on-metal hips, Actos, and Risperdal.

Prior to his representation of injured individuals and victims of consumer fraud, Mr. Ayala worked for an international firm serving as national counsel in numerous mass tort proceedings, including pharmaceutical, medical device, environmental exposure, and other complex personal injury proceedings, including multidistrict litigation proceedings.

Immediately following law school, Mr. Ayala was a law clerk to Judge Eduardo C. Robreno of the U.S. District Court for the Eastern District of Pennsylvania, where he assisted the judge in presiding over seven jury trials and was actively involved in the administration of matters arising under federal and state law.

Mr. Ayala was selected as a Product Liability "Rising Star" in Law360's 2016 list of Top Attorneys Under 40 and co-authored "Overcoming the Clear Evidence Defense," published in the July 2016 issue of *Trial* magazine.

Mr. Ayala earned his J.D., *summa cum laude*, from Villanova University School of Law in 2004, where he served as editor-in-chief of the *Villanova Law Review* and was named to the Order of the Coif. At Villanova, Mr. Ayala served as an intern to the late Judge Charles R. Weiner.

**Deborah A. Elman**

Deborah Elman is senior counsel at Grant & Eisenhofer, where she represents clients in complex civil litigation in federal and state court, with a particular focus on securities and shareholder litigation.

Currently, Ms. Elman is a member of the litigation team representing institutional investors in *In re Petrobras Securities Litigation*. Ms. Elman's other current matters include *Fernandez et al. v. UBS AG et al.*

Ms. Elman has litigated numerous cases related to the financial crisis, including more than fifteen actions arising out of wrongdoing involving the issuance of residential mortgage-backed securities ("RMBS") and other complex financial products, resulting in several substantial settlements. Additionally, Ms. Elman was a member of the litigation teams that successfully represented the lead plaintiff in a case dubbed "The Enron of India," *In re Satyam Computer Services Ltd. Securities Litigation*, which settled for $150.5 million, and *In re Kinder Morgan Energy Partners, L.P. Derivative Litigation*, which settled for $27.5 million. She recently represented institutional investors in *In re Merck and Co., Inc. Securities, Derivative & ERISA Litigation*, resulting in substantial investor recoveries.

Prior to joining Grant & Eisenhofer, Ms. Elman represented clients before the SEC and participated in numerous appearances before federal and state courts as an associate at a leading New York law firm.

Ms. Elman served as a law clerk for the Honorable William L. Standish, United States District Judge, in the United States District Court for the Western District of Pennsylvania, participating in all aspects of federal trial court practice.

Ms. Elman graduated *cum laude* in 2001 from the University of Pittsburgh School of Law, where she was Lead Executive Editor of the *Journal of Law and Commerce*. She received a Masters of Public Health degree in 1997 from Columbia University, where she also graduated *cum laude* with a Bachelor of Arts degree in 1995.

**Kimberly A. Evans**

Kimberly Evans is senior counsel at Grant & Eisenhofer, focusing her practice on appraisal rights, corporate governance and complex securities litigation on behalf of institutional investor clients.

Ms. Evans is a leading member of the Firm's appraisal rights practice and has litigated a number of complex matters before the Delaware Court of Chancery, including *In re Dole Food Co. Stockholder Litigation* and *In re Dole Food Co. Appraisal Litigation*, a stockholder class and appraisal litigation resulting in a damages award of $148 million, plus interest, following a nine-day trial.  The *Dole* litigation represents one of the largest recoveries in a non-derivative action in the history of the Delaware Chancery Court.

Ms. Evans also successfully litigated the *In re Appraisal of DFC Global Corp.* action where she served as second chair on the trial team representing petitioners asserting the deal price of $9.50 did not reflect fair value. Following a three-day trial, Chancellor Bouchard awarded petitioners with a fair value determination of $10.30 per share, plus statutory interest.

Ms. Evans is also currently litigating *In re Appraisal of PetSmart, Inc.* on behalf of petitioners that collectively held nearly $1 billion of PetSmart shares on the merger date.  The *PetSmart* action is scheduled for a four-day trial before Vice Chancellor Slights in October 2016 and represents one of the largest appraisal actions ever brought before the Delaware Court of Chancery.

Ms. Evans also has played a significant role in a number of securities fraud class actions that have achieved substantial recoveries for classes of investors and on behalf of individual and institutional investors who have opted out of class actions to pursue individual suits.

Prior to joining Grant & Eisenhofer, Ms. Evans worked as an associate at a well-known Philadelphia-area law firm, where she gained extensive experience in the practice areas of securities, antitrust, and consumer protection class action litigation. She also previously worked as a paralegal in the Juvenile Division of the Philadelphia District Attorney's Office.

**Christine M. Mackintosh**

Christine Mackintosh is senior counsel at Grant & Eisenhofer, practicing in the areas of corporate and securities litigation. She has represented institutional investors, both public and

private, in corporate cases in the Delaware Court of Chancery and in securities fraud class actions in federal courts throughout the country.

Ms. Mackintosh's practice primarily focuses on litigation in the Delaware Court of Chancery, where she has played significant roles in several landmark actions challenging mergers and acquisitions (including *In re Del Monte Foods Company Shareholder Litigation*, which resulted in an $89.4 million recovery for the class, and *In re El Paso Corporation Shareholder Litigation*, which resulted in a $110 million recovery for the class) and in several successful shareholder derivative actions (including *In re American International Group, Inc. Consolidated Derivative Litigation*, which resulted in a $90 million recovery, one of the largest recoveries in a shareholder derivative action in the history of the Delaware Court of Chancery). In addition, Ms. Mackintosh frequently represents institutional investors in appraisal actions and was a member of the trial team in *In re Appraisal of Dell, Inc.*, securing a highly publicized ruling that the fair value of Dell was 28% more than the merger price.

In addition to her Chancery Court practice, Ms. Mackintosh has played a significant role in a number of securities fraud class actions that have achieved substantial recoveries for classes of investors, including *In re JP Morgan Chase & Co. Securities Litigation* ($150 million recovery), *In re Refco Securities Litigation* ($400 million recovery), and *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* ($215 million recovery), and on behalf of individual and institutional investors who have opted out of class actions to pursue individual suits, including representation of investors who opted out of *In re Bank of America Corporation Securities, Derivative & ERISA Litigation*. Outside of the United States, Ms. Mackintosh was a member of the team that secured the historic $450 million pan-European settlement in the *Royal Dutch Shell* case and is currently representing institutional investors in litigation against The Royal Bank of Scotland in the United Kingdom and against Volkswagen AG in Germany.

Prior to joining Grant & Eisenhofer, Ms. Mackintosh practiced in the Philadelphia office of an international law firm, where she practiced in the areas of commercial, securities, and insurance recovery litigation.

A *magna cum laude* graduate of St. Joseph's University, Ms. Mackintosh earned her law degree at the University of Pennsylvania Law School. She is the co-author of two articles published by the Practising Law Institute's *Corporate Law & Practice Course Handbook Series.* "Ethical Issues and Their Impact on Securities Litigation," published in September-October, 2003, was co-authored with Marc J. Sonnenfeld, Viveca D. Parker and Marisel Acosta. "Lessons From Sarbanes-Oxley: The Importance of Independence In Internal Corporate Investigations," published in July, 2003, was co-authored Alfred J. Lechner, Jr.

## John E. Tangren

John Tangren is a senior counsel at Grant & Eisenhofer, where his primary area of practice is consumer class action litigation. Prior to joining G&E, Mr. Tangren was a class action litigation associate in the Chicago office of a national law firm, and practiced complex commercial litigation as an associate in the Chicago office of a large global firm.

Mr. Tangren has spoken on issues relating to class action litigation and electronic discovery. Mr. Tangren's recent speaking engagements include "The Use of Absent Class Member Discovery on

Issues of Class Certification," at the 2013 National Consumer Class Action Litigation & Management Conference; "ESI for Beginners," at the 2013 Seventh Circuit Conference of the National Employment Lawyers Association; and "Lessons on Motions to Dismiss from Other Car Defect Cases," at the HarrisMartin MDL Conference: General Motors Ignition Switch Recall Litigation.

Mr. Tangren graduated from the University of Chicago (A.B., philosophy and music, 2000) and the University of Chicago Law School with honors (J.D., 2003) where he was Executive Editor of the University of Chicago Legal Forum. He was selected to The National Trial Lawyers Top 40 Under 40 in 2012 and by *Super Lawyers* as an Illinois "Rising Star" for 2011, 2013-2016. Mr. Tangren was also named an "Emerging Lawyer" by the Law Bulletin Publishing Company in 2015.

**Diane T. Zilka**

Diane Zilka is senior counsel at Grant & Eisenhofer. For over a decade, Ms. Zilka has been in the forefront of the Firm's successful prosecution of securities fraud and corporate governance cases. As a member of numerous trial teams, Ms. Zilka has played a key role in achieving significant recoveries for funds managed by U.S. and international institutional investors and public pension plans. Representative cases include: *In re Safety-Kleen Bondholders Litigation* (more than $276 million in judgments and settlements); *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* (recovered $215 million for investors—among the largest for a securities fraud case without a government finding of corporate wrongdoing); *In re News Corp. Shareholder Derivative Litigation* ($139 million recovered for the company—one of the largest cash recoveries in the history of derivative shareholder litigation—and which resulted in significant corporate governance reforms); *In re Dole Food Co., Inc. Stockholder Litigation* ($148 million recovered for shareholders over senior executives' deceit in management buyout); *In re Parmalat Securities Litigation*—the European "Enron" ($110 million recovery); *TRSL v. AIG* ($115 million recovered for the company); *In re Appraisal of Metromedia International Group, Inc.*, ($188 million judgment in only the second appraisal action of preferred shares in the history of Delaware Chancery Court). In the corporate governance arena, Ms. Zilka's cases have addressed such cutting-edge issues as the propriety of "proxy puts" and of "Don't Ask, Don't Waive" standstill provisions, the use of derivative securities in "poison pills," and the conflicted role of Wall Street banks as financial advisors to target corporations which, in *In re Del Monte Foods Co. Shareholders Litigation,* resulted in a preliminary injunction of a $5.3 billion leveraged buyout and an $89.4 settlement for the shareholders. Ms. Zilka has successfully defended clients before the SEC in "no-action" proxy proposal challenges, and has successfully prosecuted "books and records" actions.

Ms. Zilka co-authored "The Role of Foreign Investors in Federal Securities Class Actions," 1442 PLI/CORP. 91 (2004) and "The Current Role Of Foreign Investors In Federal Securities Class Actions," 1620 PLI/Corp 11 (2007), cited in *Morrison v. National Australia Bank*, 561 U.S. 247 (2010).  Ms. Zilka has lectured on federal class action litigation practice as well as on Delaware corporate law.

Ms. Zilka has concentrated her career in securities, corporate and complex commercial litigation. Before joining G&E, she was a partner in a prominent New York City law firm. Ms. Zilka has served as General Chair of the annual Combined Campaign For Justice which provides critical

funding for Delaware's three legal services agencies. She is a member of the Carpenter-Walsh Delaware Pro Bono Inn of Court. Current and past board memberships include Delaware Volunteer Legal Services, The Print Center of Philadelphia, and Panetiere Partners, three non-profit organizations.

Ms. Zilka graduated from the State University of New York at Binghamton in 1982, and received her J.D. from Fordham University School of Law in 1985.

## Paige J. Alderson

Paige Alderson is an associate at Grant & Eisenhofer where she focuses her practice on complex pharmaceutical and medical device litigation. Prior to joining Grant & Eisenhofer, Ms. Alderson was an associate at a regional litigation firm where she practiced toxic tort and products liability litigation. Before entering private practice, Ms. Alderson served as a judicial law clerk to The Honorable William C. Carpenter, Jr. of the Complex Commercial Litigation Division in the Superior Court of Delaware.

Ms. Alderson earned her J.D. from Villanova University Charles Widger School of Law in 2014 and her B.S. from the University of Delaware in 2009. During her time at Villanova, Ms. Alderson participated in the Health Law Clinic assisting clients with Social Security, Medicare/Medicaid, and insurance matters.

## Edward J. Aucoin

Edward Aucoin is an associate at Grant & Eisenhofer, where his primary area of practice is representing families and children in birth injury and birth trauma litigation. Prior to joining G&E, Mr. Aucoin worked at several medical negligence defense firms in the Chicago area, focusing on medical malpractice and professional liability as well as commercial litigation. He also was a senior trial attorney at a national insurance company.

Mr. Aucoin has successfully litigated hundreds of cases and has served as first and second chair trial attorney. He has handled every aspect of medical negligence cases, from pleadings and discovery to experts and trial.

Mr. Aucoin received his J.D. from Loyola University New Orleans School of Law and his B.A. in Broadcast Journalism and Political Science from Loyola University of New Orleans.

## Seth D. Blumenthal

Seth Blumenthal is an associate at Grant & Eisenhofer and focuses his practice on corporate litigation. Prior to joining Grant & Eisenhofer, Mr. Blumenthal was an Assistant District Attorney for the Manhattan District Attorney's Office prosecuting major financial crimes, and an associate at an international law firm practicing securities, antitrust, and general commercial defense litigation.

Mr. Blumenthal earned his J.D. from Fordham University School of Law in 2007 where he received the Archibald R. Murray Public Service Award and the Legal Writing Award. He

earned his B.A., *cum laude*, from Tufts University in 2003 with a double-major in Economics and Psychology.

**Joseph L. Christensen**

Joseph Christensen is an associate at Grant & Eisenhofer and focuses his practice on litigation relating to Delaware corporation and alternative entity law. Mr. Christensen previously worked as an associate at leading law firms in Delaware and New York.

Mr. Christensen has represented a variety of clients in public and private investment and M&A transactions and corporate litigation. He has published numerous articles addressing transactional, litigation and theoretical issues of Delaware law.

Mr. Christensen earned his B.A. from The University of Iowa, where he was a Presidential Scholar, and his J.D. from The University of Iowa College of Law, where he served on the *Iowa Law Review*.

**Jeremy S. Cole**

Jeremy Cole is an associate at Grant & Eisenhofer, focusing on corporate securities and complex litigation. Mr. Cole graduated from the University of Pennsylvania in 2012, *cum laude,* with a B.A. in philosophy. In 2015, Mr. Cole graduated *cum laude* from William & Mary Law School. While at William & Mary, Mr. Cole served as the Managing Editor of the *William & Mary Business Law Review* and as a student advocate for William & Mary's Lewis B. Puller, Jr. Veterans Benefits Clinic.

**Irene R. Lax**

Irene Lax is an associate at Grant & Eisenhofer, focusing her practice on securities litigation, corporate governance, and appraisal rights.

Upon graduating from law school, Ms. Lax served as law clerk for the Honorable Carolyn Berger, Supreme Court of the State of Delaware, from 2012-2013. Prior to joining Grant & Eisenhofer, Ms. Lax worked as an associate at a well-known Philadelphia-area law firm, where she assisted clients in civil litigation brought under federal and state securities laws, as well as federal antitrust laws. Ms. Lax also gained extensive experience representing companies in various aspects of complex commercial and civil litigation before state and federal courts in matters involving breach of contract, breach of fiduciary duty, and business disputes.

Ms. Lax earned her J.D. from Temple University Beasley School of Law in 2012 where she was an Editor of the *Temple Law Review* and President of the Phillip C. Jessup International Law Moot Court team. Ms. Lax received a joint honors B.A. in political science and international development studies from McGill University in Montreal, Quebec in 2009.

Ms. Lax has co-authored several publications relating to Delaware law and securities litigation and represents individuals *pro bono* seeking Social Security Disability Income (SSDI) benefits. Ms. Lax is also a Young Friends Board member of the National Museum of American Jewish History.

**Michael T. Manuel**

Michael Manuel is an associate at Grant & Eisenhofer, focusing on securities and corporate governance litigation. Mr. Manuel has experience in a variety of complex commercial cases, including matters involving contract disputes, securities, commercial litigation, corporate governance, mass torts and products liability cases.

Mr. Manuel graduated *cum laude* from Harvard Law School in 2002 and received a Bachelor's degree in mathematics from Duke University in 1999.

**Kyle J. McGee**

Kyle McGee is an associate at Grant & Eisenhofer focusing on complex securities and commercial litigation on behalf of institutional investors, consumers, small businesses, and advocacy organizations.

Mr. McGee was heavily involved in *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* (D.N.J.), a major securities fraud action against pharmaceutical industry titan Merck & Co., Inc. The case was prosecuted jointly with a related action, *In re Schering-Plough Corp. ENHANCE Securities Litigation* (D.N.J.), resulting in a $688 million total recovery. This represents the largest securities class action recovery against a pharmaceutical company to date, and ranks among the top securities settlements with any issuer.

Mr. McGee also successfully represented shareholders in several other federal securities actions, including the JPMorgan "London Whale" class action, *In re JPMorgan Chase & Co. Securities Litigation* (S.D.N.Y.), which resulted in recovery of $150 million; *In re New Oriental Education & Technology Group Securities Litigation* (S.D.N.Y.); *In re Miller Energy Resources, Inc. Securities Litigation* (E.D. Tenn.); *British Coal Staff Superannuation Scheme, et al. v. American International Group, Inc.* (S.D.N.Y.); and *Stichting Pensioenfonds ABP, et al. v. Merck & Co., Inc.* (D.N.J.), each of which resulted in substantial investor recoveries.

Mr. McGee is a member of teams prosecuting consumer protection claims against Ford Motor Company, in relation to the safety and reliability of its MyFord Touch in-car units, and Volkswagen AG in litigation relating to its "clean diesel" products. Mr. McGee is also litigating fraud claims on behalf of small businesses against national merchant service providers, antitrust claims against global travel service providers, and various privacy claims against major financial institutions.

Mr. McGee earned a postgraduate research degree from the University of Edinburgh in Scotland and a J.D. from Villanova University in 2009, both with honors. Mr. McGee studied the history and philosophy of law at Edinburgh and was honored as a Dean's Merit scholar at Villanova Law. In 2005, he graduated from the University of Scranton with a B.A. in philosophy as well as media technologies.

**Samantha R. Mertz**

Samantha Mertz is an associate at Grant & Eisenhofer, where her primary area of practice is complex pharmaceutical and medical device litigation. Prior to joining Grant & Eisenhofer, Ms. Mertz worked at a Philadelphia law firm as a pharmaceutical mass tort litigation attorney, and was selected for inclusion in the Pennsylvania *Super Lawyers* "Rising Star" list for 2014 and 2015.

Ms. Mertz earned her J.D. from Temple University Beasley School of Law in 2010. Upon graduation, Ms. Mertz served as a mass tort law clerk for the Complex Litigation Center under the Honorable Judge Arnold New and the Honorable Judge Sandra Mazer Moss for the First Judicial District of Pennsylvania from 2010-2013.

Ms. Mertz serves on the Louis D. Brandeis Law Society Executive Committee and chairs the Society's Mentorship and Networking Program. She is a member of the Temple American Inn of Court and the Philadelphia Bar Association.

**Caitlin M. Moyna**

Caitlin Moyna is an associate at Grant & Eisenhofer where she represents investors in securities fraud class actions, shareholder derivative actions, appraisals, merger litigation and international arbitration.

Ms. Moyna has helped achieve significant shareholder recoveries while at G&E in cases against Career Education Corp. and Miller Energy Resources, Inc., and others prior to her time at G&E, including *Litwin v. The Blackstone Group L.P.*, which resulted in an $85 million recovery. She has also represented institutional investors who opted out of securities fraud class actions against Merck and Citigroup. Additionally, Ms. Moyna represents a group of over 600 Greek investors challenging the bail-in of Cypriot banks in an international arbitration before the International Centre for Settlement of Investment Disputes.

Ms. Moyna represented a class of stockholders challenging the American Greetings Corp. buyout, which contributed to a $23.4 million increase in merger consideration. She currently represents investors challenging consideration of the PetSmart buyout and the AOL-Verizon merger in appraisal actions.

Prior to joining G&E, Ms. Moyna was associated with two leading New York law firms, where she represented corporations in securities fraud class actions and government investigations, as well as a boutique litigation firm specializing in investor representation.

With Managing Director Jay W. Eisenhofer, Ms. Moyna is the co-author of two multi-series articles that explore the rights of investors in alternative entities: "What is the State of Delaware Law as It Relates to the Scope of Fiduciary Duties Owed to Investors in So-Called Alternative Entities?", *Bloomberg BNA*, Corporate Accountability Report (Dec. 5, 12, and 19, 2014); and "What Is the Current State of Delaware Law on the Scope of Fiduciary Duties Owed by Hedge Fund Managers to Their Funds and Investors?", *The Hedge Fund Law Report*, Vol. 6, Nos. 26 and 27 (Sept. 19 and 26, 2013).

Ms. Moyna is a *cum laude* graduate of Northwestern University School of Law, where she was elected to the Order of the Coif and was a member of the *Journal of Criminal Law and Criminology*. Ms. Moyna received her A.B. from Dartmouth College.

**Rebecca A. Musarra**

Rebecca Musarra is an associate at Grant & Eisenhofer where she focuses her practice on corporate governance and complex securities litigation. Ms. Musarra also represents institutional investors in appraisal actions before the Delaware Chancery Court, including the recent matter of *In re Appraisal of Dell Inc*. In addition, she is involved in nationwide class action litigation, prosecuting consumer and ERISA cases as well as a variety of corporate tort cases and bondholder litigation, such as *Danner v. Caesars Entertainment Corporation*. Ms. Musarra is also engaged in the *pro bono* representation of juvenile immigrants.

Prior to joining G&E, Ms. Musarra worked as an appellate law clerk to the Chief Justice of the Supreme Court of the Virgin Islands in St. Thomas, Virgin Islands.

During law school, Ms. Musarra was a member of the *American University Law Review* and served for two years in an impact litigation clinic. She was awarded a full-tuition scholarship, was elected to the Order of the Coif, and graduated *summa cum laude*.

Ms. Musarra received her J.D. degree from American University Washington College of Law in 2009 and obtained a B.A. in international relations from the College of William and Mary in 2003. Between college and law school, Ms. Musarra served as a Peace Corps Volunteer in Chad, Central Africa.

**Jonathan D. Park**

Jonathan Park is an associate at Grant & Eisenhofer, where he focuses on securities litigation. Mr. Park graduated in 2013 from Fordham University School of Law, where he served as the Jessup International Law Competition Editor for the Fordham Moot Court Board and as a Crowley Scholar in International Human Rights.

Prior to joining the firm, he interned with a refugee law project in Cairo, Egypt. Mr. Park received a B.A. in 2006 from Vassar College, where he majored in Africana Studies.

**Jon T. Pearson**

Jon Pearson is an associate at Grant & Eisenhofer, focusing on securities and complex litigation. Mr. Pearson has over ten-years of litigation experience, having managed all aspects of litigation, including trial and pre-trial practice involving brief preparation, discovery, presentation of live testimony (both fact and expert), and oral argument. Before joining G&E, Mr. Pearson worked for over 6 years as a senior litigation and regulatory associate for a large Philadelphia-area law firm.

Mr. Pearson was selected to the 2015 *Pennsylvania Super Lawyers* Rising Stars List; 2010, 2012, 2015, and 2016 *Mountain States Super Lawyers* Rising Stars List; and 2011 *Nevada Business* as one of "Southern Nevada's Top 100 Attorneys."

Mr. Pearson earned his J.D. from California Western School of Law in 2006, where he was an editor for the *California Western Law Review* and for the *California Western International Law Journal*. He received his B.A. in Music Performance from Temple University in 2001.

**Stephanie E. Smiertka**

Stephanie Smiertka is an associate at Grant & Eisenhofer where she focuses on complex pharmaceutical and medical device litigation. Prior to joining Grant & Eisenhofer, Ms. Smiertka was an associate at a national litigation firm where she practiced civil defense litigation. Before entering private practice, Ms. Smiertka served as a judicial law clerk to five judges of the Delaware Court of Common Pleas for New Castle County, where she assisted in drafting judicial opinions for both civil and criminal matters.

Ms. Smiertka earned her J.D. from The George Washington Law School in 2012. During her time at GW, she participated in the Domestic Violence Clinic, and she continues to volunteer on behalf of domestic violence survivors in Delaware. Shortly after graduation, Ms. Smiertka wrote an article titled "The Federal Fortress Surrounding Police Liability For Failure To Enforce Protection Orders," published by *The Buffalo Journal of Gender, Law & Social Policy*.

Ms. Smiertka is admitted to practice in Delaware and Florida. She is an active member of the Richard S. Rodney Inn of Court and the Delaware State Bar Association's Women and the Law section.

**Kelly L. Tucker**

Kelly Tucker is an associate at Grant & Eisenhofer, where she focuses her practice on securities litigation, corporate governance, and appraisal rights.  Prior to joining G&E, Ms. Tucker worked at a Philadelphia area law firm practicing antitrust, consumer protection, and products liability litigation.

Ms. Tucker received her J.D. from Fordham University School of Law in 2010, where she was the Executive Notes and Articles Editor of the *Fordham Journal of Corporate and Financial Law* and a member of the Executive Board of Fordham Law Moot Court. She received her B.A. in international politics from American University in 2003.

**Vivek Upadhya**

Vivek Upadhya is an associate at Grant & Eisenhofer, focusing on securities fraud, appraisal, and false claims act cases.

Mr. Upadhya received his J.D. from Emory University School of Law, where he served as a managing editor for the *Emory Law Journal*. He received his B.A. in law and political science from the University of Utrecht in the Netherlands, and was born and raised in India.

**Viola Vetter**

Viola Vetter is an associate at Grant & Eisenhofer where she focuses her practice on corporate litigation. Prior to joining Grant & Eisenhofer, Ms. Vetter was an associate at an international law firm, resident in Philadelphia, representing corporate clients in complex commercial, consumer and *qui tam* matters in state and federal courts. She is experienced in all aspects of litigation, from inception through complex discovery, trial, and post-trial appeal.

Ms. Vetter earned her J.D. from Temple University Beasley School of Law in 2007, where she was a member of the *Temple Political & Civil Rights Law Review*. She received her B.S. in International Business and Political Philosophy, *magna cum laude*, from Elizabethtown College in 2004.

Ms. Vetter was selected to the 2015-2016 *Pennsylvania Super Lawyers* Rising Stars list for Business Litigation. She is fluent in English and German.

**Carrie L. Vine**

Carrie Vine is an associate at Grant & Eisenhofer, where her primary area of practice is representing families and children in birth injury and birth trauma litigation.

Prior to joining G&E, Ms. Vine worked at a well-known medical negligence firm. She has successfully litigated dozens of cases from inception through conclusion, including both settlement and trial. Her genetic training and scientific background provide insight into the medical nuances that arise in medical malpractice cases.

Ms. Vine has been identified as an *Emerging Lawyer* by *Leading Lawyers*, a designation granted to the top two percent of lawyers in the early stage of their career. She is a member of the Illinois State Bar Association and the Wisconsin State Bar, and volunteers her legal services to help low income individuals adopt children.

Ms. Vine received her J.D. from Northern Illinois University College of Law, where she was also the Notes & Comments Editor for the *Northern Illinois Law Review*. She earned her Ph.D. from Pennsylvania State University where she studied human genetics and human variation. She earned her B.S. from the University of Notre Dame studying biological sciences.

**James G. Welch**

James Welch is an associate at Grant & Eisenhofer, focusing his practice on antitrust litigation.

Prior to joining Grant & Eisenhofer, Mr. Welch worked as a litigation associate at a large Philadelphia-area law firm, where he gained substantial experience in commercial litigation in state and federal court representing companies and governmental organizations involving contracts, consumer protection laws, and products liability in class actions and multidistrict litigation.

Mr. Welch earned his J.D. from the University of Pennsylvania Law School in 2011 where he was a Senior Editor of the *Journal of Business Law*. He received his B.A., *summa cum laude,* in

International Studies from the University of Alabama in 2006, where he was also elected to Phi Beta Kappa.

Mr. Welch is a co-author of "Disclosure of Seed Sets: Required to Cooperate or Protected as Attorney Work Product?" *The Legal Intelligencer*, February 18, 2014.  He is a member of the Philadelphia Bar Association and the National LGBT Bar Association, and represents individuals *pro bono* for the Support Center for Child Advocates in Philadelphia.

**Jing-Li Yu**

Jing-Li Yu is an associate at Grant & Eisenhofer where he focuses his practice on securities and corporate litigation. Prior to joining Grant & Eisenhofer, Mr. Yu was a senior associate practicing securities litigation and enforcement at the New York office of an international law firm.

Mr. Yu is a Board member of the 80-20 National Asian American Initiative, headed by S.B. Woo, former Lieutenant Governor of Delaware (1985-89). He speaks Shanghai-Regional Chinese and Mandarin Chinese.

Mr. Yu earned his J.D. (2010) and M.A. (2005) from the University of Chicago.  He received his B.A., *cum laude*, from the University of Pennsylvania in 2001 in Economics, where he was a University Scholar and a National Merit Scholar.

**G&E also employs the following staff attorneys:**

E. Teresa Ahonkhai
Joshua E. Alpert
Stephen J. Astringer
Revital B. Braun
Leanne P. Brown-Pasquarello
James P.A. Cavanaugh
Alice Cho Lee
Kerry A. Dustin
Cheron D. Everett
R. Alexander Gartman
Lisa K. Grumbine
Laina M. Herbert
Morris Ingemason
Ann Kashishian
Lawrence P. Kempner
Edward M. Lilly
Maria J. Morinigo
Michael A. Morris
Kevin M. Nadolny
Joseph P. Nearey
Raymond F. Schuenemann
Kimberly B. Schwarz
Tracy L. Sepehriazar

Shannon T. Somma
Charles C. Sweedler

**Selected Institutional Client Representations**

G&E has represented or is currently representing a number of institutional investors in major securities fraud actions, shareholder derivative suits, other breach-of-fiduciary-duty cases and related ancillary proceedings around the country.  Some of the Firm's cases include:

**(A)   In Securities Fraud Litigation:**

**(1)   CellStar**

In one of the earliest cases filed after the enactment of PSLRA, the State of Wisconsin Investment Board ("SWIB") was designated lead plaintiff and G&E was appointed lead counsel in *Gluck v. CellStar Corp.,* 976 F.Supp. 542 (N.D.Tex. 1997).   The cited opinion is widely considered the landmark on standards applicable to the lead plaintiff/lead counsel practice under PSLRA. (See, especially, *In re Cendant Corp. Litig.*, 2001 WL 980469, at *40, *43 (3d Cir. Aug. 28, 2001), citing the CellStar case.)   After the CellStar defendants' motion to dismiss failed and a round of discovery was completed, the parties negotiated a $14.6 million settlement, coupled with undertakings on CellStar's part for significant corporate governance changes as well.  With SWIB's active lead in the case, the class recovery, gross before fees and expenses, was approximated to be 56% of the class' actual loss claims, about 4 times the historical 14% average gross recovery in securities fraud litigation.  Because of the competitive process that SWIB had undertaken in the selection of counsel, resulting in a contingent fee percentage significantly less than the average 31% seen historically, the net recovery to the class after all claims were submitted came to almost 50% of actual losses, or almost 5 times the average net recovery.

**(2)   Pfizer**

G&E is currently class counsel in a certified federal securities class action against Pfizer and certain of its former officers and directors. Plaintiffs are alleging that Pfizer affirmatively misrepresented the cardiovascular safety of its multi-billion-dollar arthritis drugs, Celebrex and Bextra, and actively concealed adverse safety information concerning the products in order to win market share from Merck's competing Cox-2 drug, Vioxx. In 2004 and 2005, when the truth about the cardiovascular risks of Celebrex and Bextra was finally revealed, Pfizer shareholders collectively lost billions of dollars. Plaintiffs are also alleging that certain former officers and directors of Pfizer illegally sold shares of Pfizer stock during the class period while in possession of material, non-public information concerning the drugs.

The case has been extensively litigated for nearly 10 years, with millions of pages of documents produced and more than 50 depositions taken. A class of investors has been certified by the Court. Further, prior to the beginning of merits discovery, the parties engaged in a Daubert proceeding in which Pfizer argued that there was no scientific basis for a claim that Celebrex and Bextra were

associated with adverse cardiovascular effects. Both sides submitted extensive expert reports and, after a 5 day trial, the Court completely rejected Pfizer's challenges to Plaintiffs' expert testimony. Defendants' motion for summary judgment was denied in most respects, although the Court held that Pfizer could not be held liable for a few statements made by its co-promoters concerning the drugs. In 2014, however, the Court granted Defendants' motion to exclude the testimony of Plaintiffs' expert concerning damages and causation, Professor Daniel Fischel, and thereafter granted summary judgment for Defendants because without Fischel's testimony, Plaintiffs could not prove damages or loss causation. Plaintiffs appealed to the United States Court of Appeals for the Second Circuit, and on April 12, 2016, the Court of Appeals reversed. The Court of Appeals held that the District Court abused its discretion in excluding Fischel's testimony and further held that the District Court's erred in granting summary judgment to Defendants concerning the statements made by Pfizer's co-promoter. Defendants moved in the Court of Appeals for rehearing *en banc*. While that motion was pending, the parties agreed on a settlement of the litigation providing for a cash payment by Pfizer of $486 million. The parties then jointly moved, and the Court of Appeals agreed, to hold the rehearing petition in abeyance pending the District Court's consideration of the proposed settlement. The District Court held a conference on September 13, 2016 to consider whether to grant preliminary approval to the settlement and authorize the transmission of notice of the settlement to class members. The settlement was preliminarily approved on September 16, 2016. *In re Pfizer Inc. Securities Litigation,* SD-NY, No. 04-9866.

**(3)**   **DaimlerChrysler**

Florida State Board of Administration was appointed lead plaintiff and G&E co-lead counsel in the PSLRA class action on behalf of shareholders of the former Chrysler Corporation who exchanged their shares for stock in DaimlerChrysler in Chrysler's 1998 business combination with Daimler-Benz AG which was represented at the time as a "merger of equals." Shortly before trial, the defendants agree to a $300 million cash settlement, among the largest securities class action settlements since the enactment of the PSLRA. *In re DaimlerChrysler Securities Litigation,* D. Del., C.A. No. 00-0993.

**(4)**   **Oxford Health Plans**

Public Employees' Retirement Association of Colorado ("ColPERA") engaged G&E to represent it to seek the lead plaintiff designation in the numerous securities fraud actions that were consolidated into *In re Oxford Health Plans, Inc., Securities Litig.*, S.D.N.Y., MDL Docket No. 1222 (CLB). The court ordered the appointment of ColPERA as a co-lead plaintiff and G&E as a co-lead counsel. G&E and its co-leads filed the Consolidated Amended Complaint. Memorandum opinions and orders were entered denying defendants' motions to dismiss (see 51 F.Supp. 2d 290 (May 28, 1999) (denying KPMG motion) and 187 F.R.D. 133 (June 8, 1999) (denying motion of Oxford and individual director

defendants)).  The case settled for $300 million, another settlement negotiated by G&E that is among the largest settlements since the enactment of the PSLRA.

**(5)      Dollar General**

The U.S. District Court for the Middle District of Tennessee ordered the appointment of Florida State Board of Administration and the Teachers' Retirement System of Louisiana as lead plaintiffs and G&E as co-lead counsel in a PSLRA and Rule 10b-5 case against the defendant company, its accountants, and individual insiders who allegedly issued false and misleading statements over an alleged 3-year Class Period and failed to disclose adverse facts about the company's financial results.  Settlements were approved involving a cash payment of $162 million from the company and the individual defendants, an additional $10.5 million from Deloitte & Touche, LLP (Dollar General's accountants), and beneficial governance reforms for Dollar General.  *In re Dollar General Securities Litigation*, M.D. Tenn., No. 3:01-0388, orders dated July 19, 2001 and September 29, 2003.

**(6)      Just For Feet**

G&E represented the State of Wisconsin Investment Board ("SWIB") in a federal securities class action against certain officers and directors of Just For Feet, Inc., and against Just For Feet's auditors, in the Northern District of Alabama.  That action arose out of the defendants' manipulation of the company's accounting practices to materially misstate the company's financial results.  Having been appointed co-lead plaintiff, SWIB, with G&E as its counsel, took primary responsibility for the case.  (*SWIB v. Ruttenberg, et al.*, N.D. Ala., CV 99-BU-3097-S and 99-BU-3129-S, 102 F. Supp. 2d 1280 (N.D. Ala. 2000)).  SWIB obtained a policy limits settlement with the individual defendants' D&O carrier and an additional $7.4 million from Just For Feet's auditor, for a recovery totaling approximately $32 million.

**(7)      Waste Management**

G&E filed a non-class federal securities action against Waste Management, Inc., its former and current directors, and the company's accountants in the Northern District of Florida, on behalf of Lens Investment Management, LLC and Ram Trust Services, Inc.  The complaint alleged that Waste Management had, over a five-year period, issued financial statements and other public statements that were materially false and misleading due to the defendants' fraudulent and improper accounting manipulations.  G&E also filed non-class actions in Illinois state court, asserting similar claims on behalf of the Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana.  After G&E successfully defeated the defendants' motions to dismiss FSBA's complaint in state court, FSBA's cause of action was transferred to the Northern District of Florida. At the point where there were competing motions for summary judgment pending, G&E successfully negotiated a settlement pursuant to which each plaintiff received several times what it would have received in the class action.

*Florida State Board of Administration, Ram Trust Services, Inc. and Lens Investment Management, LLC v. Waste Management, Inc., et al.*, N.D.Fla., No. 4:99CV66-WS, amended complaint filed June 21, 1999; and *Teachers' Retirement System of Louisiana v. Waste Management, Inc., et al.*, Circuit Ct., Cook Co. [Ill.], No. 98 L 06034, complaint filed May 18, 1999.

**(8)     Total Renal Care**

In June 1999, the Louisiana State Employees' Retirement System and Teachers' Retirement System of Louisiana were appointed as Lead Plaintiffs in a federal securities class action against Total Renal Care ("TRC") and certain of its officers and directors, in the U.S. District Court for the Central District of California. G&E served as Plaintiffs' Lead Counsel. Plaintiffs filed their Corrected Consolidated Amended Complaint against the defendants, alleging, *inter alia*, that the defendants manipulated TRC's financial statements so as to materially overstate TRC's revenues, income and assets and to artificially inflate TRC's stock price. G&E negotiated a settlement requiring TRC's payment of $25 million into a settlement fund for the class and the company's adoption of certain internal corporate governance policies and procedures designed to promote the future accountability of TRC's management to its stockholders. At the time of the settlement, this amount represented 33% of the value of the Company's shares. *In re Total Renal Care Securities Litigation*, C.D. Cal., Master File No. CV-99-01745 CBM.

**(9)     Safety-Kleen**

G&E was sole lead counsel for the plaintiffs in a federal securities class action and a series of related individual actions against former officers, directors, auditors and underwriters of Safety-Kleen Corporation, who are alleged to have made false and misleading statements in connection with the sale and issuance of Safety-Kleen bonds. *In re Safety-Kleen Corp. Bondholders Litig.*, D.S.C., No. 3:00-CV-1145-17, consolidated complaint filed January 23, 2001. In March of 2005, after a jury had been selected for trial, the auditor defendant settled with the class and individual claimants for $48 million. The trial then proceeded against the director and officer defendants. After seven weeks of trial, the director defendants settled for $36 million, and the court entered judgment as a matter of law in favor of the class and against the company's CEO and CFO, awarding damages of $192 million.

**(10)    Styling Technology Corporation**

G&E represented funds managed by Conseco Capital Management, Inc., Credit Suisse Asset Management, Pilgrim American Funds and Oppenheimer Funds, Inc. in a securities action brought in May 2001, asserting both federal (1933 Act) and state claims brought in the Superior Court of California. The suit alleged that certain former officers, as well as the independent auditors, of Styling Technology Corporation made false and misleading statements in connection with the sale and issuance of Styling Technology bonds. Styling Technology filed for bankruptcy

protection under Chapter 11 in August 1999. In October 2000, discovery of accounting irregularities and improperly recognized revenue forced the Company to restate its financial statements for the years 1997 and 1998. Plaintiffs, owning $66.5 million of the total $100 million in bonds sold in the offering, settled the case for a recovery representing approximately 46% of the losses suffered by the client funds that they manage. *Franklin High Income Trust, et al. v. Richard R. Ross, et al.*, Cal. Super., San Mateo Co. [Calif.], Case No: 415057, complaint filed November 28, 2000.

**(11)    Tyco**

G&E served as co-lead counsel representing co-lead plaintiffs Teachers' Retirement System of Louisiana and Louisiana State Employees' Retirement System in a securities class action against Tyco International Ltd. and PricewaterhouseCoopers LLP. The complaint alleged that the defendants, including Tyco International, Dennis Kozlowski, and other former executives and directors of Tyco and PricewaterhouseCoopers, made false and misleading public statements and omitted material information about Tyco's finances in violation of Sections 10(b), 14, 20A and 20(a) of the Securities Exchange Act of 1934. Tyco agreed to fund $2.975 billion in cash to settle these claims, representing the single largest payment from any corporate defendant in the history of securities class action litigation. PricewaterhouseCoopers also agreed to pay $225 million to settle these claims, resulting in a total settlement fund in excess of $3.2 billion.

**(12)    Global Crossing**

Ohio Public Employees' Retirement System and the Ohio Teachers' Retirement System were appointed lead plaintiff and G&E was appointed sole lead counsel in a securities class action against Global Crossing, Ltd. and Asia Global Crossing, Ltd. *In re Global Crossing, Ltd. Securities & "ERISA" Litig.*, MDL Docket No. 1472. In November 2004, the Court approved a partial settlement with the Company's former officers and directors, and former outside counsel, valued at approximately $245 million. In July 2005, the Court approved a $75 million settlement with the Citigroup-related defendants (Salomon Smith Barney and Jack Grubman). In October 2005, the Court approved a settlement with Arthur Andersen LLP and all Andersen-related defendants for $25 million. In October 2006, the Court approved a $99 million settlement with various financial institutions. In total, G&E recovered $448 million for investors in Global Crossing.

**(13)    Telxon Corporation**

G&E filed a federal securities and common law action against Telxon Corporation, its former officers and directors and its accountants in the Northern District of Ohio on behalf of Wyser-Pratte Management Co., Inc., an investment management firm. Following mediation, G&E negotiated a settlement of all claims. *Wyser-Pratte Management Co., Inc. v. Telxon Corp., et al.,* N.D. Ohio, Case No. 5:02CV1105.

**(14)**   **Hayes Lemmerz**

G&E served as lead counsel to plaintiffs and class members who purchased or acquired over $1 billion in bonds issued by Hayes Lemmerz International, Inc. G&E negotiated a settlement worth $51 million. *Pacholder High Yield Fund, Inc. et al. v. Ranko Cucoz et al.*, E.D. Mich., C.A. No. 02-71778.

**(15)**   **Asia Pulp and Paper**

On behalf of bondholders of various subsidiaries of Indonesian paper-making giant Asia Pulp and Paper ("APP"), G&E filed an action alleging that the bondholders were defrauded by APP's financial statements which were inflated by nearly $1 billion in fictitious sales. Defendants' motions to dismiss were denied. *Franklin High Income Trust, et al. v. APP Global Ltd., et al.,* N.Y. Sup. Ct., Trial Div., Index No. 02-602567. The matter was resolved through a confidential settlement.

**(16)**   **Alstom**

Louisiana State Employees' Retirement System was appointed as co-lead plaintiff and G&E was appointed co-lead counsel in a class action against Alstom SA, a French corporation engaged in power generation, transmission and distribution in France. The suit alleges that Alstom and other defendants made false and misleading statements concerning the growth and financial performance of its transportation subsidiary. G&E achieved a settlement in the amount of $6.95 million. *In re Alstom SA Sec. Litig.*, S.D.N.Y. 03-cv-6595.

**(17)**   **Parmalat**

G&E was co-lead counsel in this securities class action arising out of a multi-billion dollar fraud at Parmalat, which the SEC described as "one of the largest and most brazen corporate financial frauds in history." Settlements exceeding $110 million were reached. *In re Parmalat Sec. Litig.*, S.D.N.Y. 04-MDL-1653.

**(18)**   **Marsh & McLennan**

G&E was co-lead counsel for the class of former Marsh & McLennan shareholders in this federal securities class action alleging that the company, its officers, directors, auditors, and underwriters participated in a fraudulent scheme involving, among other things, bid-rigging and secret agreements to steer business to certain insurance companies in exchange for "kick-back" commissions. After five years of litigation, G&E achieved a $400 million settlement on behalf of the class. *In re Marsh & McLennan Companies, Inc. Sec. Litig.,* S.D.N.Y. 04-cv-8144.

(19)   **Hollinger International**

G&E was co-lead counsel in this securities class action arising out of a company scandal at Hollinger International, Inc. which involves payment of millions of dollars to certain executives, including the company's former CEO, Lord Conrad Black, relating to sales of company assets.   G&E negotiated a settlement with Hollinger in the amount of $37.5 million.   *In re Hollinger International Inc. Securities Litigation*, N.D. Ill. 04-C-0834**.**

(20)   **General Motors**

G&E served as co-lead counsel in a securities class action against GM, arising from alleged false statements in GM's financial reports.   After about two and a half years of litigation, a settlement was reached with GM for $277 million, with GM's auditor, Deloitte & Touche contributing an additional $26 million.   The combined $303 million settlement ranked among the largest shareholder recoveries of 2008.  *In re General Motors Corp. Sec. Litig.*, E.D. Mich., MDL No. 1749.

(21)   **Delphi**

Delphi is an automotive company that was spun off of General Motors.   The company failed as a stand-alone entity, but concealed its failure from investors.   G&E's client, one of the largest pension funds in the world, served as a lead plaintiff, and G&E served as co-lead counsel in this securities class action, which produced settlements totaling $325 million from Delphi, its auditor and its director and officers liability insurer.   *In re Delphi Corporation Securities Derivative & ERISA Litigation*, E.D. Mich., MDL No. 1725.

(22)   **Refco**

A mere two months after going public, Refco admitted that its financials were unreliable because the company had concealed that hundreds of millions of dollars of uncollectible receivables were owed to the company by an off-balance sheet entity owned by the company's CEO.   G&E served as a co-lead counsel and G&E's client, PIMCO, was a co-lead plaintiff.   The case resulted in recoveries totaling $422 million for investors in Refco's stock and bonds (including $140 million from the company's private equity sponsor, over $50 million from the underwriters, and $25 million from the auditor).   *In re Refco, Inc. Securities Litigation*, S.D.N.Y., No. 05 Civ. 8626.

(23)   **Sprint**

G&E represented lead plaintiff institutional investor Carlson Capital, L.P. in this class action suit against Sprint Corporation and its former CEO and directors for breach of fiduciary duty in the consolidation of two separate tracking stocks.   In December 2007, a $57.5 million settlement was approved.   *In re Sprint Corporation Shareholder Litigation*, D. Kan., No. 04 CV 01714.

**(B)     In Derivative and Other Corporate Litigation:**

**(1)     Digex**

This case resulted in a settlement of over $400 million, the largest reported settlement in the history of Delaware corporate litigation. G&E represented the lead plaintiff, TCW Technology Limited Partnership, in alleging that Digex, Inc.'s directors and majority stockholder (Intermedia, Inc.) breached their fiduciary duties in connection with WorldCom's proposed $6 billion acquisition of Intermedia. Among other issues, WorldCom was charged with attempting to usurp a corporate opportunity that belonged to Digex and improperly waiving on Digex's behalf the protections of Delaware's business combination statute. Following G&E's argument on a motion to preliminarily enjoin the merger, the Court issued an opinion declining to enjoin the transaction but acknowledging plaintiffs' likelihood of success on the merits. *In re Digex, Inc. Shareholders Litigation*, C.A. No. 18336, 2000 WL 1847679 (Del. Ch. Dec. 13, 2000). The case settled soon thereafter.

**(2)     UnitedHealth Group**

G&E represented the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative and class action suit in which G&E successfully challenged $1.2 billion in back-dated options granted to William McGuire, then-CEO of health care provider UnitedHealth Group. This was among the first – and most egregious – examples of options backdating. G&E's case produced a settlement of $922 million, the largest settlement in the history of derivative litigation in any jurisdiction. *In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, C.A. No. 06-cv-1216 (D. Minn.)

**(3)     AIG**

In what was, at the time, the largest settlement of derivative shareholder litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a suit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets. *Teachers' Retirement System of Louisiana v. Greenberg, et al.*, C. A. No. 20106-VCS (Del. Ch.).

**(4)     Genentech**

When Swiss healthcare company Roche offered to buy out biotech leader Genentech Inc. for $43.7 billion, or $89 per share, G&E filed a derivative claim

on behalf of institutional investors opposed to the buyout. With the pressure of the pending litigation, G&E was able to reach a settlement that provided for Roche to pay $95 per share, representing an increase of approximately $3 billion for minority shareholders. *In re Genentech, Inc. Shareholders Litig.*, C.A. No. 3911-VCS (Del. Ch.).

**(5)    Willamette**

In January 2002, at the request of Wyser-Pratte Management Co., Inc. and others, G&E filed a shareholder derivative action in Oregon state court claiming that the board of Willamette Industries, Inc. breached its fiduciary duties by attempting to cause Willamette to acquire the asbestos-ridden building products division of Georgia-Pacific Company as part of a scorched-earth effort to defeat a hostile takeover of Willamette by its chief competitor, Weyerhaeuser Company. G&E obtained an expedited hearing on its motion for a preliminary injunction and obtained an agreement from Willamette at the hearing not to consummate any deal with Georgia-Pacific without providing prior notice to G&E. Almost immediately thereafter, and after years of fighting against Weyerhaeuser's take-over attempts, the Willamette board relented and agreed to sell the company to Weyerhaeuser. *Wyser-Pratte Management Co., Inc. & Franklin Mutual Advisors v. Swindells, et al.*, No. 0201-0085 (Ore. Cir. Ct.).

**(6)    Medco Research**

In January 2000, G&E filed a shareholder derivative action on behalf of State of Wisconsin Investment Board against the directors of Medco Research, Inc. in Delaware Chancery Court. The suit alleged breach of fiduciary duty in connection with the directors' approval of a proposed merger between Medco and King Pharmaceuticals, Inc. G&E was successful in obtaining a preliminary injunction requiring Medco to make supplemental and corrective disclosures. Because of G&E's efforts, the consideration to Medco's stockholders increased by $4.08 per share, or $48,061,755 on a class-wide basis. *State of Wisconsin Investment Board v. Bartlett, et al.,* C.A. No. 17727, 2000 WL 193115 (Del. Ch. Feb. 9, 2000).

**(7)    Occidental Petroleum**

G&E represented Teachers' Retirement System of Louisiana and served as co-counsel in a shareholders' derivative suit against the directors of Occidental Petroleum Corporation, challenging as corporate waste the company's excessive compensation arrangements with its top executives. Filed in California state court, the case settled when the company agreed to adopt California Public Employees' Retirement System's model principles of corporate governance and undertook to reconstitute its key

committees so as to meet the tests of independence under those principles. *Teachers' Retirement System of Louisiana v. Irani et al.,* No. BC1850009 (Cal. Super.).

**(8)    Staples, Inc.**

On behalf of Teachers' Retirement System of Louisiana, G&E challenged Staples, Inc.'s proposed "recapitalization" plan to unwind a tracking stock, Staples.com, which it created in 1998.  G&E obtained a preliminary injunction against the deal and the deal terms were ultimately altered resulting in a $15-$20 million gain for shareholders. Additional disclosures were also required so that shareholders voted on the challenged transaction based on a new proxy statement with substantial additional disclosures.  *In re Staples, Inc. Shareholders Litigation*, C.A. No. 18784, 2001 WL 640377 (Del. Ch. June 5, 2001).

**(9)    SFX/Clear Channel Merger**

G&E filed a class action on behalf of stockholders of SFX, challenging the merger between SFX and Clear Channel.  While the SFX charter required that in any acquisition of SFX  all classes of common stockholders be treated equally, the merger, as planned, provided for approximately $68 million more in consideration to the two Class B stockholders (who happened to be the senior executives of SFX) than to the public stockholders.   The merger was structured so that stockholders who voted for the merger also had to vote to amend the Charter to remove the non-discrimination provisions as a condition to the merger.  G&E negotiated a settlement whereby $34.5 million more was paid to the public stockholders upon closing of the merger.  This was more than half the damages alleged in the Complaint. *Franklin Advisers, Inc., et al. v. Sillerman, et al.*, C.A. No. 17878 (Del. Ch.).

**(10)    Lone Star Steakhouse & Saloon**

G&E filed a derivative lawsuit on behalf of California Public Employees' Retirement System ("CALPERS") against Lone Star's former CEO, Jamie Coulter, and six other Lone Star directors.  The suit alleged that the defendants violated their fiduciary duties in connection with their approval of the company's acquisition of CEI, one of Lone Star's service providers, from Coulter, as well as their approvals of certain employment and compensation arrangements and option repricing programs.  Before filing the suit, G&E had assisted in CALPERS in filing a demand for books and records pursuant to Section 220 of the Delaware General Corporation Law.  The company's response to that demand revealed the absence of any documentation that the board ever scrutinized transactions between Lone Star and CEI, that the board negotiated the purchase price for CEI, or that the board analyzed or discussed the repricing programs.  In August 2005, the Court approved a settlement negotiated by G&E whereby Lone Star agreed to a repricing of options granted to certain of its officers and directors, payments from certain of the officers and directors related to option grants, and a $3 million payment from Lone Star's director and officer insurance policy.  Lone Star further

acknowledged that the lawsuit was one of the significant factors considered in its adoption of certain corporate governance reforms. *California Public Employees' Retirement System v. Coulter, et al.*, C.A. No. 19191 (Del. Ch.).

**(11)** <u>**Siebel**</u>

The issue of excessive executive compensation has been of significant concern for investors, yet their concerns have remained largely unaddressed due to the wide discretion afforded corporate boards in establishing management's compensation. G&E effected a sea change in the compensation policies of Siebel Systems, a leading Silicon Valley-based software developer long considered to be an egregious example of executive compensation run amok, and caused Thomas Siebel, the company's founder and CEO, to cancel 26 million options with a potential value of $54 million. Since the company's founding in 1996, Siebel Systems had paid Mr. Siebel nearly $1 billion in compensation, largely in the form of lavish stock options that violated the shareholder-approved stock option plan. In addition, the company had paid its directors millions of dollars for their service on the board, also in the form of stock options, at levels exponentially higher than that paid to directors on the boards of similar companies. G&E, on behalf of Teachers' Retirement System of Louisiana, commenced a derivative action challenging the company's compensation practices in September of 2002 even though a prior, similar lawsuit had been dismissed. Following a hard-fought and acrimonious litigation, G&E successfully negotiated a settlement that, in addition to the options cancellation, included numerous corporate governance reforms. The company agreed to, *inter alia*, restructure its compensation committee, disclose more information regarding its compensation policies and decisions, cause its outside auditor to audit its option plans as part of the company's annual audit, and limit the compensation that can be paid to directors. The Siebel Systems settlement generated considerable favorable press in the industry, as investors and compensation experts anticipated that the reforms adopted by Siebel Systems could affect how other companies deal with compensation issues. *Teachers' Retirement System of Louisiana v. Thomas M. Siebel, et al.*, C. A. No. 425796 (Cal. Super.).

**(12)** <u>**HealthSouth Corporation**</u>

G&E filed a derivative and class action lawsuit on behalf of Teachers' Retirement System of Louisiana against HealthSouth Corporation, its auditors, certain individual defendants, and certain third parties seeking, *inter alia*, an order forcing the HealthSouth board of directors to hold an annual shareholder meeting for the purpose of electing directors, as no such meeting had been held for over thirteen months. Following a trial, G&E negotiated a settlement of part of its claims, pursuant to which five of the defendant directors who were alleged to have engaged in improper self-dealing with the company agreed to resign and be replaced by directors selected in part by a committee comprised in part by institutional investors of HealthSouth. *Teachers' Retirement System of Louisiana v. Scrushy*, Del. Ch., C.A. No. 20529 (March 2, 2004).

**(13)**   **NYSE/Archipelago**

G&E served as co-lead counsel in a class action in New York state court, brought on behalf of a class of seat holders of the New York Stock Exchange ("NYSE") challenging the proposed merger between the NYSE and Archipelago Holdings, LLC.  The complaint alleged that the terms of the proposed merger were unfair to the NYSE seat holders, and that by approving the proposed merger, the NYSE board of directors had violated their fiduciary duties of care, loyalty and candor, because the transaction was the result of a process that was tainted by conflicts of interest and the directors failed adequately to inform themselves of the relevant facts.  The court denied the defendants' motion to dismiss, and after expedited discovery, including over 30 depositions in a five week period, a preliminary injunction evidentiary hearing was held, in which plaintiffs sought to postpone the vote on the merger until a new, current fairness opinion was obtained from an independent financial advisor.  On the second day of the hearing, the defendants agreed to the relief being sought, namely that they would obtain a new, current fairness opinion from an independent financial advisor.  *In re New York Stock Exchange/Archipelago Merger Litig.*, No. 601646/05 (Sup. Ct. N.Y. Co.)

**(14)**   **Caremark / CVS**

G&E represented institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as that board's decision to reject a competing proposal from a different suitor.  Ultimately, through the litigation, G&E was able to force Caremark's board not only to provide substantial additional disclosures to the public shareholders, but also to renegotiate the terms of the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and to ensure Caremark's shareholders had statutory appraisal rights in the deal.  *Louisiana Municipal Police Employees' Retirement System, et al. v. Crawford, et al.*, C.A. No. 2635-N (Del. Ch.).

**(15)**   **AIG**

G&E achieved a settlement of derivative claims against former American International Group, Inc. ("AIG") CEO Hank Greenberg and other officers of the insurer in connection with a well-documented bid-rigging scheme used to inflate the company's income. The scheme ─ which included an array of wrongful activities, such as sham insurance transactions intended to deceive shareholders and illegal contingent commissions which amounted to kickbacks to obtain business ─ caused billions of dollars' worth of damage to AIG, and ultimately led to the restatement of years of financial statements.

In approving a settlement that returned $90 million to AIG, the Court said the settlement was "an incentive for real litigation" with "a lot of high-quality lawyering." *In re American International Group, Inc., Consolidated Derivative Litigation.* Delaware Chancery Court, 769-VCS

**(16)  Del Monte Foods**

G&E served as lead counsel in shareholder litigation in which the Firm obtained an $89.4 million settlement against Del Monte Foods Co. and Barclays Capital. On February 14, 2011, the Delaware Chancery Court issued a ground-breaking order enjoining not only the shareholder vote on the merger, but the merger agreement's termination fee and other mechanisms designed to deter competing bids.  As a result of plaintiff's efforts, the Board was forced to conduct a further shopping process for the company.  Moreover, the opinion issued in connection with the injunction has resulted in a complete change on Wall Street regarding investment banker conflicts of interests and company retention of investment bankers in such circumstances.  *In re Del Monte Shareholder Litigation*, C.A. No. 6027-VCL (Del. Ch).

**(C)  In Securities Class Action Opt-Out Litigation**

**(1)  AOL Time Warner, Inc.**

G&E filed an opt-out action against AOL Time Warner, its officers and directors, auditors, investment bankers and business partners.  The case challenged certain transactions entered by the company to improperly boost AOL Time Warner's financials.  G&E was able to recover for its clients more than 6 times the amount that they would have received in the class case.

**(2)  BankAmerica Corp.**

G&E filed an individual action seeking to recover damages caused by the defendants' failure to disclose material information in connection with the September 30, 1998 merger of NationsBank Corporation and BankAmerica Corporation.  G&E was preparing the case for trial when it achieved a settlement whereby the firm's client received more than 5 times what it would have received in the related class action. Those proceeds were also received approximately one year earlier than the proceeds from the class action settlement.

**(3)  Bristol-Myers Squibb**

G&E filed an opt-out action against Bristol-Myers Squibb, certain of its officers and directors, its auditor, and Imclone, Inc., alleging that Bristol-Myers had falsified billions of dollars of revenue as part of a scheme of earnings management.  While the federal class action was dismissed and eventually settled for only 3 cents on the dollar, G&E's action resulted in a total settlement representing approximately 10 times what the firm's clients likely would have received from the class action.

**(4)**   <u>**Qwest Communications**</u>

G&E filed an individual action against Qwest, its accountant (Arthur Andersen LLP), Solomon Smith Barney, and current and former officers and directors of those companies. The case alleged that Qwest used "swap deals" to book fake revenue and defraud investors.  G&E was able to recover for its clients more than 10 times what they would have recovered had they remained members of the class.

**(5)**   <u>**WorldCom**</u>

G&E filed an opt-out action against former senior officers and directors of WorldCom, including former CEO Bernard Ebbers, and Arthur Andersen LLP (WorldCom's former auditor), among others.  The case stemmed from the widely-publicized WorldCom securities fraud scandal that involved false and misleading statements made by the defendants concerning WorldCom's financials, prospects and business operations.  G&E recovered for its clients more than 6 times what they would have received from the class action.