# Exhibit K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PFIZER INC. SECURITIES LITIGATION

No. 04-cv-9866 (LTS)(HBP)

ECF CASE

**DECLARATION OF CHRISTOPHER A. SEEGER IN SUPPORT OF LEAD
COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
FILED ON BEHALF OF SEEGER WEISS LLP**

I, Christopher A. Seeger, declare as follows:

1.       I am a Partner in the law firm of Seeger Weiss LLP ("Seeger Weiss").  I submit

this declaration in support of Lead Counsel's application for an award of attorneys' fees in

connection with services rendered in the above-captioned action ("Action") from inception

through September 16, 2016 (the "Time Period"), as well as for payment of expenses incurred in

connection therewith.  I have personal knowledge of the matters set forth in this declaration and,

if called upon, I could and would testify competently thereto.

2.       Seeger Weiss served as science counsel in this case, working at the request and

under the authority of Lead Counsel.  Among other things, Seeger Weiss identified consulting

and testifying expert witnesses, and developed prospective expert analyses and/or potential

expert testimony.  The experts developed by Seeger Weiss specialized in

cardiology/cardiovascular disease, clinical trials, statistics and biostatistics, FDA/regulatory

topics, and drug safety.  The Firm's role in connection with Defendants' early science challenge

in the case included presenting these experts at deposition and taking the depositions of

particular Defendant's science experts, and likewise presenting and cross examining various

Class and defense expert witnesses at the ensuing *Daubert* hearing.  Thereafter, the Firm

remained engaged in the broader general liability discovery in the case and, among other things, took a number of liability depositions of current or former Pfizer witnesses.  The Firm further participated in initial settlement communications and mediation efforts.  More generally, as the case was prepared for trial, the Firm engaged in the strategy and tactical development of the case for trial, including the preparation and presentation of science- and liability-related expert proofs at trial.

3.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by the attorneys and professional support staff of my firm who were involved in, and billed ten or more hours to, this Action, and the lodestar calculation for those individuals based on my firm's current billing rates.  For personnel who are no longer employed by my firm, the lodestar calculation is based on the billing rates for such personnel in his or her final year of employment by my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm.  Time expended in preparing this application for attorney's fees and expenses has been excluded.

4.      The hourly rates for the attorneys and professional support staff of my firm included in Exhibit 1 are the same as the regular rates charged for their services in other contingent matters and have been accepted by other federal courts in other class action cases prosecuted by Seeger Weiss.

5.      The total number of hours expended on this Action by my firm during the Time Period is 5,504.30 hours.  The total lodestar for my firm for those hours is $3,929,061.50, consisting of $3,523,796.50 for attorneys' time and $405,265.00 for professional support staff time.

6.     At the request of Lead Counsel and in order to provide the Court with additional detail regarding my firm's lodestar, Exhibit 2 hereto provides a breakdown of the hours incurred by my firm, and resulting lodestar, for each of the following time categories: (1) work performed between the inception of the case and the Court's decision rendered on September 4, 2008 regarding Defendants' Motion for Reconsideration of the Court's decision on Defendants' Motion to Dismiss; (2) work performed between September 5, 2008 and the Court's decision on March 22, 2010 regarding Defendants' *Daubert* motions to exclude expert testimony (related to Statistical Significance); (3) work performed between March 23, 2010 and Defendants' initial motion for Summary Judgment filed on July 2, 2012; (4) work performed between July 3, 2012 and the Court's issuance of its initial Summary Judgment ruling on March 28, 2013; (5) work performed between March 29, 2013 and the Court's issuance of its second Summary Judgment ruling on July 8, 2014; (6) work performed between July 9, 2014 and the issuance of the Second Circuit's appellate opinion on April 12, 2016; and (7) work performed between April 13, 2016 and the Court's granting of Preliminary Approval to the Settlement on September 16, 2016.

7.     My firm's lodestar figures are based upon the firm's current billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8.     As detailed in Exhibit 3 hereto, my firm is seeking payment for a total of $169,744.02 in expenses incurred in connection with the prosecution of the Action.  These expenses are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

9.      With respect to the standing of my firm, attached hereto as Exhibit 4 is a brief biography of Seeger Weiss and the attorneys in Seeger Weiss who were principally involved in this Action.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 8, 2016, in New York, NY.

_____
Christopher A. Seeger

<u>**EXHIBIT 1**</u>

*In re Pfizer Inc. Securities Litigation*
No. 04-cv-9866 (LTS)(HBP)

**SEEGER WEISS LLP**

**LODESTAR REPORT**

**Inception through September 16, 2016**

| NAME | HOURS | HOURLY RATE | AMOUNT |
|------|-------|-------------|--------|
| **PARTNERS** | | | |
| **Christopher A. Seeger** | 743.30 | 985 | 732,150.50 |
| **David R. Buchanan** | 2,085.3 | 975 | 2,033,167.50 |
| **Jeffrey S. Grand** | 612.55 | 895 | 548,232.25 |
| **Moshe Horn** | 131.0 | 850 | 111,350.00 |
| **Stephen A. Weiss** | 44.4 | 975 | 43,290.00 |
| | | | |
| **COUNSEL** | | | |
| | | | |
| | | | |
| **ASSOCIATES** | | | |
| **Asa R. Danes** | 71.75 | 775 | 55,606.25 |
| | | | |
| **OF COUNSEL** | | | |
| | | | |
| | | | |
| | | | |
| **STAFF ATTORNEYS** | | | |
| | | | |
| | | | |
| | | | |
| **CONTRACT ATTORNEYS** | | | |
| | | | |
| | | | |
| | | | |
| **INVESTIGATION DEPARTMENT** | | | |
| | | | |
| | | | |
| | | | |
| **PARALEGALS** | | | |
| **Amanda B. Karlitz** | 11.50 | 235 | 2,702.50 |

| | | | |
|---|---|---|---|
| **Melanie J. Foreman** | 494.25 | 165 | 81,551.25 |
| **Somaiya Kibria** | 1,310.25 | 245 | 321,011.25 |
| | | | |
| **PROFESSIONAL STAFF** | | | |
| | | | |
| | | | |
| TOTALS: | **5,504.30** | | **$ 3,929,061.50** |

**EXHIBIT 2**

*In re Pfizer Inc. Securities Litigation*
**No. 04-cv-9866 (LTS)(HBP)**

**SEEGER WEISS LLP**

**SUMMARY OF HOURS WORKED BY CATEGORY**

|   | Category of Work | Date Range | Total Hours | Total Lodestar |
|---|---|---|---|---|
| 1 | Work performed between the inception of the case and the Court's decision rendered on September 4, 2008 regarding Defendants' Motion for Reconsideration of the Court's decision on Defendants' Motion to Dismiss | Inception-9/4/2008 | 31.00 | 30,210.00 |
| 2 | Work performed between September 5, 2008 and the Court's decision on March 22, 2010 regarding Defendants' *Daubert* motions to exclude expert testimony (related to Statistical Significance) | 9/5/2008-3/22/2010 | 2,419.15 | 1,931,975.75 |
| 3 | Work performed between March 23, 2010 and Defendants' initial motion for Summary Judgment filed on July 2, 2012 | 3/23/2010-7/2/2012 | 2,616.30 | 1,652,812.00 |
| 4 | Work performed between July 3, 2012 and the Court's issuance of its initial Summary Judgment ruling on March 28, 2013 | 7/3/2012-3/28/2013 | 205.65 | 105,536.25 |
| 5 | Work performed between March 29, 2013 and the Court's issuance of its second Summary Judgment ruling on July 8, 2014 | 3/29/2013-7/8/2014 | 216.70 | 193,405.00 |
| 6 | Work performed between July 9, 2014 and the issuance of the Second Circuit's appellate opinion on April 12, 2016 | 7/9/2014-4/12/2016 | 8.10 | 7,907.50 |
| 7 | Work performed between April 13, 2016 and the Court's granting of Preliminary Approval to the Settlement on September 16, 2016 | 4/13/2016-9/16/2016 | 7.40 | 7,215.00 |
| | **TOTALS:** | | 5,504.30 | $ 3,929,061.50 |

**EXHIBIT 3**

*In re Pfizer Inc. Securities Litigation*
**No. 04-cv-9866 (LTS)(HBP)**

**SEEGER WEISS LLP**

**EXPENSE REPORT**

| CATEGORY | AMOUNT |
|---|---:|
| Court Fees | 48.00 |
| PSLRA Notice Costs | |
| On-Line Legal Research* | 2,134.01 |
| On-Line Factual Research* | 20,000.00 |
| Telephones/Faxes | 563.92 |
| Postage & Express Mail | 4,519.85 |
| Internal Reproduction Costs | 13,035.90 |
| External Reproduction Costs | 17,143.86 |
| Out of Town Travel | 80,370.77 |
| Working Meals | 9,706.77 |
| Court Reporters and Transcripts | |
| Deposition/Meeting Hosting Costs | 1,797.44 |
| Experts | 20,423.50 |
| Contributions to Litigation Fund** | |
| | |
| **TOTAL EXPENSES:** | **$ 169,744.02** |

* The charges reflected for on-line research are for out-of-pocket payments to the vendors for research done in connection with this litigation. Online research is billed to each case based on actual time usage at a set charge by the vendor. There are no administrative charges included in these figures.

** The expenses paid from the Litigation Fund held by Lead Counsel are detailed in the Declaration In Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses filed on behalf of Grant & Eisenhofer P.A.

## EXHIBIT 4

*In re Pfizer Inc. Securities Litigation*
**No. 04-cv-9866 (LTS)(HBP)**

**SEEGER WEISS LLP**

**FIRM BIOGRAPHY**



| NEW YORK, NY | NEWARK, NJ | PHILADELPHIA, PA |
|---|---|---|
| 77 Water Street | 550 Broad St | 1515 Market St |
| New York, NY 10004 | Newark, NJ 07102 | Philadelphia, PA 19102 |
| (212) 584-0700 | (973) 639-9100 | (215) 564-2300 |
| (212) 584-0799 fax | (973) 639-9393 fax | (215) 851-8029 fax |

www.seegerweiss.com
_____

# Firm Biography

SEEGER WEISS LLP is one of the nation's leading plaintiffs' law firms. The Firm currently numbers approximately 20 attorneys operating out of offices in New York City; Newark, NJ; and Philadelphia, PA. It focuses on mass tort and class action litigation, with particular emphasis in the areas of products liability, pharmaceutical injury, consumer protection, environmental and toxic tort, securities fraud, antitrust, insurance, ERISA, employment, and *qui tam* litigation. The Firm is made up of experienced litigators, including former state and federal prosecutors. Seeger Weiss's reputation for leadership and innovation has resulted in its appointment to numerous plaintiffs' steering and executive committees in a variety of multidistrict litigations throughout the United States, and it regularly serves as court-appointed Liaison Counsel in New York and New Jersey federal and state courts.

The Firm's manifold accomplishments—including favorable jury verdicts for $47.5 million in *Humeston v. Merck & Co.* (N.J. Super. Ct. Atlantic County); over $10.5 million in *Kendall v. Hoffman-La Roche, Inc.* (N.J. Super. Ct. Atlantic County); $11.05 million in *Owens, et al v. ContiGroup Companies, et al* (Mo. Cir. Ct., Jackson County); and $25.16 million in *McCarrell v. Hoffman-La Roche, Inc.* (N.J. Super. Ct. Atlantic County)—earned it the distinction of being one of only 8 law firms named by the *National Law Journal* to its exclusive "Plaintiffs' Hot List," among numerous awards and recognitions bestowed upon the firm.  Building off its successes in the courtroom, the Firm has been at the helm of some of the most notable settlements in recent decades, *In re National Football League Players' Concussion Injury Litigation*, for which Seeger Weiss founder Christopher Seeger was appointed as co-lead counsel to NFL players and served as lead negotiator of the settlement, and *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, for which Mr. Seeger served on the Settlement Committee and was one of the lead negotiators:

- The settlement in *In re National Football League Players' Concussion Injury Litigation* estimated to be worth $1 billion which includes a Baseline Assessment Program to evaluate the current cognitive state of retired NFL players and provide

immediate treatment and therapies to qualified players, as well as monetary payments of up to $5 million to certain qualifying diagnoses over the 65 year term of the settlement.

- The $14.7 billion settlement in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* which combines a massive buyback program, paying pre-scandal buyback pricing to eligible owners, as well as billions of dollars to environmental remediation efforts and green vehicle technology.

### Mass Torts and Pharmaceutical Litigation

During the past 15 years, Seeger Weiss has emerged as one of the premier mass torts firms in the United States, particularly in the area of pharmaceutical torts. The Firm's expertise in this area has been recognized by courts throughout the U.S. which have appointed the Firm to numerous plaintiffs' steering committees in a variety of multidistrict litigations, including, among others:

**Vioxx**. Seeger Weiss has served at the helm of the nationwide Vioxx litigation since its inception, playing highly prominent roles in both the federal and New Jersey state court litigations against Merck & Co, the manufacturers of the prescription arthritis drug now thought to lead to an increased risk of heart attack and stroke. On April 8, 2005, the Honorable Eldon E. Fallon, who presides over the Vioxx multidistrict litigation in New Orleans, Louisiana, appointed firm partner, Christopher A. Seeger, as Co-Lead of the Plaintiffs' Steering Committee. Additionally, partner David R. Buchanan was appointed Co-Liaison counsel in the New Jersey state Vioxx litigation before the Honorable Carol E. Higbee, J.S.C. In a 2005 class certification ruling involving claims brought on behalf of all third-party payors, including health-maintenance organizations, managed-care organizations, employers and unions, challenging Merck's advertising practices and pricing policies, Judge Higbee recognized Seeger Weiss's prominence in Vioxx-litigation in noting that "there is probably no other law firm as knowledgeable about Vioxx."

In 2007, Mr. Seeger served as Lead Co-Counsel in *Humeston v. Merck & Co*. in New Jersey Superior Court, Atlantic County. There, he and other Seeger Weiss partners David R. Buchanan, Moshe Horn and Laurence Nassif obtained a $47.5 million jury verdict for the plaintiff for injuries caused by Vioxx—as cited in the "Top 20 Personal Injury Awards of the Year (2007)" published by the *New Jersey Law Journal*.

Only months after achieving that verdict, Mr. Seeger, along with co-counsel on the Vioxx Negotiating Committee, concluded a $4.85 billion global settlement with Merck, covering more than 45,000 personal injury claims for heart attack, sudden cardiac death, and ischemic stroke. It



represents the largest "global" settlement of personal injury claims stemming from a pharmaceutical product in U.S. history.

**Zyprexa**. In 2004, Seeger Weiss partner Christopher Seeger was appointed by the Honorable Jack B. Weinstein of the U.S. District Court for the Eastern District of New York to serve as Liaison Counsel in the multidistrict litigation against Ely Lilly & Co. relating to the anti-psychotic drug Zyprexa. On June 7, 2005, Eli Lilly and Mr. Seeger, on behalf of the Plaintiffs' Steering Committee, announced a $700 million settlement of over 8,000 Zyprexa claims alleging that Zyprexa caused diabetes and diabetes-related injuries. Mr. Seeger was one of the chief architects and leading negotiators of this landmark settlement. He also took a leading role in negotiating a second-round settlement of $500 million between plaintiffs and Eli Lilly.

**Accutane**. In 2005, Seeger Weiss partners Christopher Seeger and Dave Buchanan were jointly named to serve on the Plaintiffs' Steering Committee in connection with consolidated litigation against New Jersey based Hoffman-LaRoche, Inc., involving the company's acne medication, Accutane. The mass tort litigation, which came before the Honorable Carole E. Higbee in Atlantic County, involved the consolidation of claims throughout the state of New Jersey alleging severe side effects resulting from the use of Accutane, including birth defects; suicidal impulses among young adults; and inflammatory bowel disease ("IBD"), including Chrohn's disease and ulcerative colitis, a debilitating and life-altering disease with no known cure.

To date, Mr. Buchanan—who, with Seeger Weiss partner Christopher Seeger, served as liaison counsel for the New Jersey coordinated proceedings in the Accutane litigation—has served as co-trial counsel in the three cases tried in New Jersey that involved Accutane-related injuries, all of which resulted in verdicts for the Plaintiff. One, *McCarrell v. Hoffman-La Roche, Inc.*, in New Jersey Superior Court, Atlantic County, resulted in a $25.16 million verdict for the Plaintiff, an Alabama resident who suffered IBD from using Accutane. Seeger Weiss partner Michael Rosenberg also served on the trial team in that case. Another, *Kendall v. Hoffman-La Roche, Inc.*, in the same court, resulted in a verdict for the plaintiff, a Utah woman who suffered the same ailment from using Accutane, of nearly $10.6 million. The third, a consolidated trial for *Mace v. Hoffmann LaRoche Inc.*, *Speisman v. Hoffmann LaRoche Inc.*, and *Sager v. Hoffmann LaRoche Inc.*, garnered a $12.9 million award from the New Jersey jury in November 2008.

**Rezulin**. Seeger Weiss plays a major role in products liability actions against Pfizer and Warner Lambert involving Rezulin, a prescription drug used to treat Type II diabetes. The Firm is a court-appointed member of the Executive Committee in the federal suits coordinated by the Judicial Panel on Multidistrict Litigation ("JPML") before Judge Lewis A. Kaplan in the U.S. District Court for the Southern District of New York. The Firm is also a member of the New Jersey Rezulin Steering Committee in In re: Rezulin Litigation, currently pending before the



Superior Court of New Jersey, Middlesex County. The Firm also successfully represented numerous individuals who commenced personal injury damage actions in various courts throughout the country, all of which claims have been resolved through confidential settlement.

Notably, in March 2003, following a six-week jury trial, the Firm achieved a $2 million verdict against Pfizer on behalf of Concepcion Morgado, a Brooklyn resident who sustained liver injury and was hospitalized for 10 days following her Rezulin use. The case was the first and only Rezulin matter to be tried in New York and represented a watershed result in the nationwide Rezulin litigation.

**Vytorin and Zetia**. Seeger Weiss has taken the lead in Zetia and Vytorin litigation, negotiating a $41.5 million settlement with Merck & Co., Inc and Schering-Plough Corporation, which resolved nationwide fraud claims that arose from the sale and marketing of the companies' co-ventured prescription drugs. Plaintiffs contend that Merck conspired with Schering-Plough in 2003 to combine Zocor—an enormously popular statin cholesterol drug, with Zetia—another widely used non-statin cholesterol drug, under the new name Vytorin. The two companies began marketing Vytorin as more effective in reducing cholesterol than Zetia and Zocor alone, as well as being effective in blocking arterial plaque that can cause heart attack and stroke. The lawsuits allege that the companies have known since 2006 that Vytorin was no more effective than the generic version of Zocor in blocking plaque, despite being effective in lowering LDL, or "bad" cholesterol. In failing to disclose these facts, Merck and Schering-Plough were allegedly able to cause consumers and third-party purchasers to pay significantly higher prices than the cost of equally effective alternatives available on the market.

Founding partners Christopher A. Seeger and Stephen A. Weiss served as Co-Liaison Counsel for the Plaintiffs' Executive Committee for *In Re Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation*, the coordinated group of 140 actions against the two pharmaceutical companies, located in Newark before the Honorable Dennis M. Cavanaugh of the United States District Court of New Jersey. Seeger acted as the principal negotiator for the Plaintiffs' Executive Committee, aided by Weiss and Seeger Weiss partner Diogenes P. Kekatos.

**Gadolinium**. In 2006, the FDA issued a Public Health Advisory concerning a link between Gadolinium-based contrast agents ("GBCAs") used during MRI and related imaging procedures, and a debilitating and potentially fatal skin disorder known as Nephrogenic Systemic Fibrosis or Nephrogenic Fibrosing Dermopathy ("NSF/NFD"). By late 2006, the FDA noted that it had received reports of 90 patients that developed NSF/NFD within 2 days to 18 months after exposure to such contrast agents.

The Firm led the litigation against multiple defendant manufacturers of GBCAs used in these imaging procedures on behalf of injured patients. In February 2008, the Judicial Panel on



Multidistrict Litigation ordered all federal actions involving personal injuries stemming from Gadolinium-based contrast dyes centralized in the U.S. District Court for the Northern District of Ohio, before the Honorable Dan Aaron Polster.  Judge Polster appointed Seeger Weiss partner Christopher Seeger to serve on the Plaintiffs' Steering Committee and Executive Committee for the MDL; partner Dave Buchanan serves as court-appointed Federal-State Liaison Counsel for the litigation. Also in 2008, Seeger Weiss partners Christopher Seeger and Dave Buchanan were appointed Liaison Counsel in connection with the consolidated mass tort litigation against manufacturers of GBCAs in New Jersey, before the Honorable Jamie D. Happas of the Superior Court of New Jersey, Middlesex County.  Following extensive discovery, partner Christopher Seeger led negotiations that led to the initial case resolutions, and subsequently formed the settlement framework for resolution of the broader litigation.

**Fosamax**.  In August 2006, the JPML ordered all federal litigation involving Merck & Co.'s prescription medication Fosamax—used in the treatment of osteoporosis but found to have caused a number of adverse effects, in particular, osteonecrosis (death of bone tissue)—centralized in the U.S. District Court for Southern District of New York (Manhattan), before the Honorable John F. Keenan.  Seeger Weiss partner Christopher A. Seeger has been appointed Plaintiffs' Liaison Counsel, and also served on the Executive Committee of the Plaintiffs' Steering Committee in the multidistrict litigation.  This litigation is ongoing.

**Mirena**.  In April 2013, the JPML ordered all federal litigation involving Bayer's intrauterine ("IUD") device marketed under the brand name Mirena—an IUD containing a hormone, levonorgestrel, designed to be implanted in the uterus for as long as five years——centralized in the U.S. District Court for Southern District of New York (in White Plains, New York), before the Honorable Cathy Seibel.  Meanwhile, many hundreds of lawsuits in the New Jersey state courts have been centralized before the Honorable Brian R. Martinotti in Bergen County.  The Plaintiffs allege that Bayer failed to warn about the longer-term risks of migration of the Mirena device and perforation of the user's uterus, having warned about the risk of migration and perforation only at the time of device's insertion.  Other complications that Bayer failed to warn about include migration and embedment of the device in the uterus.  Seeger Weiss partners Diogenes P. Kekatos and David R. Buchanan have been appointed as Plaintiffs' Liaison Counsel in the federal multidistrict and New Jersey state multicounty Mirena litigation, respectively.  This litigation is ongoing.

**Yaz, Yasmin, and Ocella**. In November 2009, Seeger Weiss partner Christopher A. Seeger was named to the Plaintiff's Steering Committee in the *Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation* (MDL No. 2100) by Judge David R. Herndon, United States District Court, Southern District of Illinois. Thousands of lawsuits were filed against Bayer Healthcare, the pharmaceutical giant that produces Yaz and Yasmin, asserting severe health complications resulting from taking these birth control pills.  The



5

litigation was centralized in the Southern District of Illinois in October 2009 by order of the United States Judicial Panel on Multidistrict Litigation.  These cases were ultimately resolved in settlements totaling more than $2 billion.

**Actos**. In November 2012, founding partner Christopher A. Seeger was appointed to the Multidistrict Litigation (MDL) Actos Product Liability Plaintiffs' Steering Committee. In June 2011, a European study found that among a group of 155,000 patients, one fifth of those who developed bladder cancer had been taking the drug Actos. However, the health warnings that accompanied the prescription failed to alert users of this risk. There were more than 9,000 lawsuits against defendant Takeda Pharmaceuticals in the United States District Court, Western District of Louisiana.  In 2015, a settlement of these claims was announced, totaling in excess of $2 billion.

*Other Pharmaceutical and Medical Device Prosecutions*

**Depuy Orthopaedics, Inc ASR Hip Implant Products**. Seeger Weiss partner Christopher A. Seeger was named to the Plaintiffs' Executive Committee in the *In Re: Depuy Orthopaedics, Inc ASR Hip Implant Products* (MDL No. 2197) by Judge David A. Katz, United States District Court, Northern District of Ohio in January 2011. More than a hundred lawsuits have been filed against Johnson & Johnson, the pharmaceutical giant that is also the parent company of Depuy Orthopaedics, Inc. In August 2010, Johnson & Johnson and its medical device subsidiary, DePuy Orthopaedics, recalled two acetyabular cups hip replacement systems because of their high rate of failures, after a study from the National Joint Registry of England and Wales showed that 1 out of every 8 patients (12%-13%) who had the devices had to undergo revision surgery within five years of receiving it. By the time of the recall, more than 93,000 patients worldwide were fitted with an ASR hip implant. Roughly a third of those were patients in the United States. This litigation was centralized in the North District of Ohio in December 2010 by order of the United States Judicial Panel on Multidistrict Litigation.

**PPA**. Seeger Weiss remains actively involved in litigation against numerous manufacturers of pharmaceutical products containing PPA (phenylpropanolamine), until 2000 an ingredient in virtually every over-the-counter cold medication and many appetite suppressant products. The Firm serves on the Plaintiffs' Steering Committee in the federal suits consolidated by the JPML in the U.S. District Court for the Western District of Washington, and as the court-appointed Liaison Counsel in the New York PPA actions coordinated before Judge Helen Freedman. In 2003, the Firm was one of the lead negotiators of a nationwide settlement agreement with the manufacturers of Dexatrim, a leading over-the-counter appetite suppressant that until 2000 contained PPA. The settlement covers the claims of all individuals who suffered stroke-related injuries resulting from the ingestion of PPA-containing Dexatrim.



**Propulsid**. Seeger Weiss held national leadership positions in pharmaceutical products liability litigation against Johnson & Johnson and Janssen Pharmaceutical, Inc., the manufacturers of Propulsid—a prescription drug used to treat nocturnal heartburn. Seeger Weiss LLP was a member of the court-appointed Plaintiffs' Steering Committees in both the federal litigation, which have been consolidated by the JPML in the Eastern District of Louisiana, and in the statewide consolidated actions in Middlesex County, New Jersey. The Firm served as counsel to numerous individuals who have commenced personal injury damage actions in various courts throughout the country.  These cases were resolved in two separate settlements in 2004 and 2005, totaling $105 million.

**Guidant and Medtronic Heart Device Litigations**. Seeger Weiss served as a court-appointed member of the Plaintiffs' Steering Committee in multidistrict litigation in the U.S. District Court for the District of Minnesota against Medtronic and Guidant involving defective heart defibrillators and pacemakers. The heart devices at issue are surgically implanted in persons who have a type of heart disease that creates the risk of a life-threatening heart arrhythmia (abnormal rhythm). Both Medtronic and Guidant had disclosed defects in certain of their defibrillators that caused the devices to fail without warning. The Firm filed one of the first actions in the U.S. against Guidant on behalf of patients.

**Other Pharmaceutical Products**. In addition to aforementioned pharmaceutical, the Firm serves or has served as counsel in numerous lawsuits in state and federal courts throughout the country brought by individuals who have suffered personal injury or death resulting from the use of various pharmaceutical or medical device products, including **Baycol**, **Celebrex**, **Elidel**, **Ephedra**, **Fen-Phen**, **Kugel Mesh** hernia patches, **Lamisil**, **Neurontin**, **OxyContin**, **Ortho Evra** birth control patches, **Protopic**, **Serevent**, **Serzone**, and **Sporanox**.

## Securities Litigation

Seeger Weiss has emerged as a leading innovator in the realm of securities litigation, with special emphasis on IPO litigation, auction rate securities, securities fraud class action, and, recently, the Bernard Madoff Ponzi scheme. The Firm brought action against some of the largest financial entities in the world, including Goldman Sachs, Morgan Stanley, Credit Suisse, JPMorgan Chase, Bank of America and Merrill Lynch.  Significant recent matters include:

**In re Pfizer Inc. Securities Litigation (Bextra & Celebrex)**.  This litigation involved claims that Pfizer Inc., withheld information regarding the safety of its prescription pain medications, Bextra and Celebrex.  Seeger Weiss, with its vast experience in pharmaceutical litigation, played a significant role in the discovery and preparation for a five-day evidentiary hearing, involving more than eleven experts, as well as the briefing of dispositive motions.  A



preliminary settlement was approved by the United States District Court, Southern District of New York, in August 2016, for $486 million.

**Vytorin Litigation**.  Seeger Weiss served as co-liaison counsel for plaintiffs before the United States District Court of New Jersey (Judge Dennis M. Cavanaugh) in this action against Merck & Co., Inc. and its subsidiary Schering-Plough Corp., involving claims that defendants concealed test results relating to the efficacy of their anti-cholesterol drug Vytorin.  In October 2013, the Court approved a $688 million settlement of this action.

**In re Initial Public Offering Securities Litigation** is one of the largest and most significant coordinated securities fraud prosecutions in United States history. In this coordinated action, Seeger Weiss serves on the Plaintiffs' Steering Committee and as Co-Chair of the Plaintiffs' Legal Committee. The litigation consists of 310 class actions involving IPOs marketed between 1998 and 2000. The defendants include 310 individual companies and 55 investment bank underwriters, which includes Wall Street's largest and most well-known investment houses, including Goldman Sachs, Morgan Stanley, and Credit Suisse. The class actions allege that the IPOs were manipulated by the issuers and investment banks to artificially inflate the market price of the securities of those companies by inducing customers to engage in aftermarket "tie-in" agreements in exchange for IPO allocations.  The cases further allege that the investment banks extracted significant undisclosed compensation from their customers in exchange for giving them the IPO allocations.  The actions are coordinated before Judge Shira A. Scheindlin in the U.S. District Court for the Southern District of New York (Manhattan).

In connection with these actions, the Firm was instrumental in defeating a recusal motion brought by certain of the underwriter-defendants in 2001, and was the principal author of the electronic data preservation protocol that was entered by Judge Scheindlin in the litigation.  The Firm was extensively involved in all phases of the litigation, for which as settlement of $586 million was announced in 2009.

The Firm also represents or has represented shareholders in a variety of securities litigations, including those against *ATEC Group* (E.D.N.Y.); *Axonyx* (S.D.N.Y.); *Bell South* (N.D. Ga.); *Bradley Pharmaceutical* (D.N.J.); *Broadcom Corp.* (C.D. Ca.); *Buca, Inc.* (D. Minn.); *Cryo-Cell International, Inc.* (M.D. Fl.); *eConnect, Inc.* (C.D. Ca.); *FirstEnergy Corp.* (N.D. Ohio); *Friedman, Billings, Ramsey Group* (S.D.N.Y.); *Gander Mountain* (D. Minn.); *Genta* (D.N.J.); officers and directors of *Global Crossing* (C.D. Ca.); *Grand Court Lifestyles, Inc.* (D.N.J.); *Impath* (S.D.N.Y.); *IT Group Securities* (W.D. Pa.); *Mattel, Inc.* (C.D. Ca); *Matrixx Initiatives* (D. Ariz.); *MBNA* (D. Del.); *MIIX Group* (D.N.J.); *Molson Coors Brewing Company* (D. Del.); *Mutual Benefits Corp.* (S.D. Fla.); *New Era of Networks, Inc.* (M.D.N.C.); *Nuance Communications* (N.D. Ca.); *NVE Corporation* (D. Minn.); *Omnivision Technologies, Inc.* (N.D. Ca.); *Par Pharmaceuticals* (D.N.J.); *Pixelplus, Co.* (S.D.N.Y.); *Procter & Gamble*



*Co*. (S.D. Ohio); *Priceline.com* (D. Conn.); *Purchase Pro* (S.D.N.Y.); *Quintiles Transnational* (D. Colo.); *Read Rite Corporation* (N.D. Ca.); *Sagent Technology* (N.D. Ca.); *Sina Corporation* (S.D.N.Y.); *The Singing Machine, Inc*. (S.D. Fl.); *Terayon, Inc*. (C.D. Ca.); and *Tesoro Petroleum Corp*. (E.D. Tex); *Viisage Technology, Inc*. (D. Mass.), among others.

**Madoff Investment Securities Litigation.**  Seeger Weiss LLP helped lead litigation against Bernard L. Madoff Investment Securities, the engine of Madoff's $50 billion Ponzi scheme, and has been retained to represent more than $500 million in claims from defrauded shareholders around the world. Madoff's brand of deception, though similar to a pyramid scheme, proved far more insidious because it relied Madoff's good standing and the fundamental trust the trading community placed in his abilities. Investors were lead to believe that their investments would be handled competently by Madoff and that their returns would be produced through sound investments. Thousands of investors and institutions have been defrauded by Madoff and his firm.

## Consumer Litigation

Seeger Weiss LLP has achieved notable recoveries and currently holds leadership roles in many major consumer class action litigations throughout the country. Among the consumer class action litigations in which Seeger Weiss LLP plays or has played a major role are, in alphabetical order:

**In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation**:  In the largest consumer automotive industry class action settlement in history, Volkswagen ("VW") has agreed to create a funding pool of over $10 billion, an amount which is sufficient to allow for buybacks of 100% of the VW and Audi 2.0-liter diesel vehicles in the United States which are equipped with "defeat device" software.  This software was designed to allow vehicles to meet emissions standards when undergoing emissions testing, but to bypass emissions controls at all other times and pollute the environment by emitting nitrous oxides at levels up to 40 times higher than when the vehicles are being tested.  In addition to the direct monetary benefits to consumers, VW also has agreed to pay $2.7 billion for environmental remediation and to make a $2 billion investment in "green" vehicle technology.

The settlements were reached with VW through the efforts of lawyers on behalf of the consumer class, working in conjunction with government lawyers, including those from the Environmental Protection Agency and the Federal Trade Commission.  The judge overseeing the Multidistrict litigation centralized in the Northern District of California, the Honorable Charles R. Breyer, pushed the lawyers involved to work diligently and quickly in order to reach the settlements expeditiously (or face a quick trial) in order to meet the ultimate goal of removing the polluting cars from the roads as soon as possible.



Christopher Seeger was appointed by Judge Breyer to serve on the Plaintiffs' Steering Committee ("PSC").  He worked closely with court-appointed Lead Counsel, Elizabeth Cabraser, spending countless hours poring over settlement documents and in meetings with VW's lawyers and the government's lawyers in order to reach a fair settlement.  Indeed, at the Status Conference held on May 24, 2016, Judge Breyer even commented that he had been advised by the Settlement Master that all of the lawyers had "devoted substantial efforts, weekends, nights, and days, and perhaps at sacrifice to your family" in order to reach the proposed settlement.

In order to keep the pressure on VW of facing a quick and very public trial, should a settlement not be reached, the counsel on the PSC and the government's lawyers worked long hours at conducting discovery in order to prepare the case for trial.  David Buchanan was one of the counsel on the PSC leading this effort.  In addition, TerriAnne Benedetto, Scott George and others spent significant hours on the case, both on the settlement and litigation tracks.

At the Preliminary Approval Hearing on July 26, 2016 Judge Breyer determined that the proposed Settlement was preliminarily fair, reasonable and adequate such that it was appropriate to commence the Class Notice process.  Following the Fairness Hearing to be held on October 18, 2016, Judge Breyer will decide whether to finally approve the proposed settlements.

**In re Armstrong World Industries, Inc**.: $7 million settlement achieved in the United States Bankruptcy Court for the District of Delaware after transfer. The Firm represented the State of Connecticut, one of numerous property damage claimants which sought injunctive relief and monetary damages resulting from the presence of Armstrong-manufactured asbestos-containing resilient floor tile and sheet vinyl in residences and buildings throughout the United States.

**In re Bridgestone/Firestone, Inc. ATX, ATX II and Wilderness Tires Products Liability Litigation**: Seeger Weiss represented Firestone tire owners and purchasers of Ford Explorers equipped with certain models of Firestone tires. Plaintiffs sought damages flowing from design defects that resulted in severe, life-threatening accidents. Specifically, the consumer class sought a tire recall, recovery for the cost of tire replacement, and recovery for the diminution in the value of Ford Explorer vehicles resulting from the subject design defects. Following the filing of a number of federal class actions, the litigations were transferred for pre-trial proceedings to the Federal court in Indianapolis. In those coordinated actions, which the JPML had centralized before the Honorable Sarah Evans Barker of the U.S. District Court for the Southern District of Indiana (Indianapolis), Seeger Weiss served as a member of the Plaintiffs' Law Committee. Following extensive discovery and motion practice, Plaintiffs achieved a favorable nationwide settlement of their class claims.

**Ecker v. Ford**: In 2008, the Superior Court of California granted final approval to the class action settlement in this litigation. The settlement provides full cash reimbursement for qualifying parts and labor for all California owners and lessees of Ford Focus vehicles who



experienced premature front brake wear, including reimbursement for brake pads and rotors. The court had earlier appointed the Firm to act as co-lead counsel in the litigation. Seeger Weiss partner Christopher Seeger and associate Scott Alan George were primarily responsible for the litigation.

**IBM Deskstar 75GXP Litigation**: The Firm represents statewide classes of purchasers of an IBM manufactured hard disk drive, known as the Deskstar 75GXP, in 9 different state and federal courts throughout the country. The actions include claims for violations of consumer protection statutes and breach of warranty resulting from IBM's commercial practices in the marketing and sale of hard disk drives that it knew were inherently unreliable and that it knew would fail at epidemically high rates. In August 2003, Judge Ronald Sabraw issued a tentative ruling certifying a California statewide class of purchasers of the 75GXP in *Michael Granito v. IBM*, pending in California Superior Court in Alameda County. In addition to California, cases are also pending in New Jersey, New York, Florida, Illinois, Connecticut, Ohio, Michigan, and Pennsylvania. The Firm serves as co-lead counsel in these cases.

**In re Industrial Life Insurance Litigation**: The Firm represents purchasers of industrial life insurance policies who were charged race-based and discriminatory rates. The Firm serves on the Plaintiffs' Steering Committee in connection with the several cases that have been sent to the Eastern District of Louisiana by the JPML.

**Lester v. Percudani**: Pending in the U.S. District Court for the Middle District of Pennsylvania. The Firm represents over 170 first-time homeowners who purchased homes at inflated valuations based upon fraudulent appraisals and in violation of federal mortgage lending guidelines. The action includes federal civil RICO and state consumer fraud claims against a group of RICO co-conspirators.  In 2008, the district court denied motions for partial summary judgment that had been filed by two of the Defendants (Chase Home Finance LLC and one of its officers), and later denied their motion for reconsideration of that ruling. Following those rulings, the parties entered court-approved mediation, which recently resulted in a settlement that will provide millions of dollars' worth of relief to the aggrieved homeowners, including substantial mortgage rate reductions.

**In re MCI Non-Subscriber Telephone Rates Litigation**: $88 million class settlement completed in the United States District Court for the Southern District of Illinois following a transfer to that district by the JPML. Final approval of the class settlement was entered in March 2001 resolving claims brought by class members to recover overcharges arising from MCI's improper imposition of non-subscriber rates and surcharges on certain of its customers. Seeger Weiss LLP was a member of the Plaintiffs' Steering Committee and served as Chair of the Discovery Committee.



**Sims v. Allstate and Dorries v. State Farm**: Pending in Illinois state court. The Firm serves as co-counsel in these separate class actions, representing automobile policyholders seeking to recover payment for the diminution in value of their vehicles following accidents in which certain types of body damage was sustained. These cases were certified as class actions in December 2000.

**Sternberg v. Apple Computer, Inc. and Gordon v. Apple Computer, Inc**.: Nationwide settlement completed in California state court. Plaintiffs recovered class-wide damages resulting from Apple's deceptive advertisements for its iMac and G4 brand computers—specifically the functionality of the DVD playback feature. Seeger Weiss LLP served as co-lead counsel for the classes.

**Tennille v. The Western Union Company**.   Seeger Weiss served as co-Class Counsel in consolidated nationwide class action suits filed in the U.S. District Court for the District of Colorado, alleging that Western Union, in violation of consumer fraud laws, wrongly failed to inform customers who purchased money transfers if a money transfer failed to go through to the intend recipient and that it sat on the funds for years, earning income and administrative fees off them.  In many cases, the funds eventually escheated to state governments.  Following years of extensive discovery and motion practice, including Western Union's unsuccessful bid to compel arbitration of the claims, in November 2012, the parties reached a settlement, brokered by the Tenth Circuit's chief mediator after Western Union's appeal of the district court's denial of its motion to compel arbitration.  Under the settlement, Western Union agreed to the establishment of a cash fund (valued at over $135 million at the time of final approval of the settlement) for the return to class members of funds not already escheated to states; the payment of interest to those class members whose wire transfer funds had already escheated to a state government; the formation of a process for assisting class members in securing the return of their funds if they have already escheated; the creation of a 7-1/2 year notice plan, whereby Western Union is required to inform customers within 60 days if their wire transfers are unsuccessful; and the undertaking of robust efforts to update customers' stale contact information.  The settlement received final approval from U.S. District Judge John L. Kane in June 2013.

**Truth-in-Lending Act Litigation**: The Firm served as co-counsel in several dozen proposed nationwide class actions that were filed in 2007 and 2008 in the various federal courts in California against banks and other mortgage lenders, asserting claims under the federal Truth-in-Lending Act ("TILA"), and California consumer fraud statutes and common law. These actions sought recovery of damages as well as equitable relief, including rescission, in connection with highly-deceptive so-called Option Adjustable Rate Mortgage ("ARM") loans. The loan documents given to Option ARM borrowers failed to adequately disclose to borrowers that the initial "teaser" interest rate of 1%-3% would last only 30 days and that, after that time, the minimum payment specified in the payment schedule would be insufficient to cover even



12

monthly interest charges, let alone loan principal. As a result, borrowers who secured these deceptive loans lost equity in their homes and were no longer able to secure the refinancing necessary to get out from under these loans.  In several of the lawsuits, the courts sustained the Plaintiffs' claims against the defendant lenders' dispositive motions, and several cases resulted in the certification of classes.  A number of the suits culminated in settlements providing cash and/or other relief to borrowers.  Seeger Weiss partners Christopher A. Seeger, Jonathan Shub, and Diogenes P. Kekatos all played a substantial role in these hard-fought litigations.

**In re Vonage Marketing and Sales Practice Litigation***: Nationwide settlement proposed in the U.S. District Court for the District of New Jersey. The lawsuit involves Vonage's promotional "one month free" and "money back guarantee" offers and application of certain charges (disconnection, cancellation and termination fees, and subscription fees despite requests for cancellation), which allegedly violated certain laws. Vonage agreed to pay $4.75 million to fund the settlement, which offers eligible class members reimbursements for certain payments made by Vonage subscribers.

**Workers' Compensation Litigation**: The Firm served as co-counsel in proposed class actions brought in thirteen different states against most of the country's largest workers' compensation insurance carriers. The actions sought to recover damages on behalf of numerous corporate entities resulting from the inappropriate imposition of "residual market loads." In 2006, these cases settled for an aggregate amount of $25 million.

**In re Zynga Privacy Litigation***: Pending in the U.S. District Court for the Northern District of California. The suit accuses Zynga, a Facebook partner and game developer, of deliberately sharing personal data of Facebook users. Zynga breached their own privacy policy, as well as industry standards, which that it "does not provide any Personally Identifiable Information to third-party advertising companies." Partner Jonathan Shub was named Interim Co-Lead Class Counsel in December 2010 by Judge James Ware, United States District Court, Northern District of California.

## General Complex Class Action Litigation

Seeger Weiss has long excelled at general complex class action litigation, having achieved major victories in the past and working on several important class action cases in the present, against large agricultural and pharmaceutical corporations.

**Bayer CropScience Rice Contamination MDL**. The Firm served as a member of the court-appointed Plaintiffs' Executive Committee in this MDL brought on behalf of national rice-growers who sought to recover damages against Bayer CropScience and numerous parents and affiliates to the value of their rice crops resulting from contamination by LLRICE 601 and



LLRICE 604, varieties of long-grain rice that have been genetically modified to produce rice crops resistant to glufosinate—the active ingredient in Liberty® Herbicide, another Bayer product. This "glufosinate-tolerant" trait allows growers to spray Liberty® herbicide over the entire crop, killing all weeds without risking any damage to the rice crop. Following revelations in August 2006 and again in March 2007 that U.S. rice crops had been found to be contaminated with these varieties (which, at the time, had not been approved for commercial use), the world's leading importers of American rice, including the European Union, Japan, and South Korea, quickly announced embargoes of U.S. rice, triggering sharp declines in the market price of U.S. rice.  The JPML centralized these actions, and others similar, before the Honorable Catherine D. Perry of the U.S. District Court for the Eastern District of Missouri (St. Louis). Following the district court's denial of class certification, the cases proceeded to completion of discovery and trial. Following multiple bellwether trials before Judge Perry, both resulting in significant victories for the Plaintiffs, the parties entered into a global settlement totaling $750 million.

**In re "StarLink" Corn Products Litigation**. Similar to the rice contamination litigation against the Bayer companies, this litigation was centralized by the JPML in the U.S. District Court for the Northern District of Illinois, Eastern Division (Chicago). The U.S. Environmental Protection Agency had licensed "StarLink" brand corn—which had been genetically-modified to create its own insecticidal protein, making it resistant to various corn pests—only for the growing of corn used for animal feed and industrial purposes (such as the growing of corn for manufacturing ethanol), was found to have entered the U.S. food chain. The news swiftly led to Japan and other major overseas buyers of U.S. corn placing embargoes on American corn, and the resulting collapse of the export market for U.S. corn and a sharp decline in the market price of U.S. corn. The Firm was one of four court-appointed co-lead counsel for a class of corn farmers in various corn-belt states against Aventis CropScience USA—the developer of StarLink corn seed (which was later purchased by Bayer AG and became Bayer CropScience, the developer of the genetically-modified rice seeds that are the sources of the rice contamination litigation in which the Firm is currently involved)—and Garst Seed Company, the principal licensee and distributor of the corn seed. In the actions, the corn growers sought damages representing the loss in value of their corn crops due to the improper marketing, handling, and distribution of StarLink corn. In April 2003, following much discovery and the denial of the Defendants' motion to dismiss the Plaintiffs' claims, U.S. District Judge James B. Moran gave final approval to a $110 million nationwide settlement of the class claims.

**In re Syngenta AG MIR162 Corn Litigation**. Similar to the StarLink and LLRICE contamination litigation, the JPML centralized this litigation in the U.S. District Court for the District of Kansas in late 2014.  In 2010-11, Syngenta aggressively commercialized genetically-modified corn seeds that, while approved by U.S. government agencies for sale, had not received approval by China, a leading and then ever-growing export market for U.S. corn (expected by the U.S. government to become the largest importer of U.S. corn by 2020).  Syngenta aggressively



commercialized its seed brands containing the MIR162 trait all the while knowing that Chinese approval would not come before this strain entered the U.S. corn supply.  In November 2013, the Chinese government announced an embargo of U.S. corn after detecting Syngenta's strain in U.S. corn shipments.  Meanwhile, commodities markets had already begun to feel the impact of the contamination of the U.S. supply.  Many thousands of farmers filed suits in federal and state court.  Most of the federal actions have been centralized before the Honorable John L. Lungstrum.  The MDL Court appointed Seeger Weiss partner Stephen Weiss to the Plaintiffs' Executive Committee.  In September 2010, Judge Lungstrum sustained most of the counts in the Producer Plaintiffs' Master Complaint in an opinion published at 131 F. Supp. 3d 1177. Extensive discovery had been ongoing in this litigation, in which the Syngenta defendants are represented by Kirkland & Ellis.  Recently, the briefing of Plaintiffs' motion for class certification was completed and a hearing on the motion concluded on September 14, 2016. Seeger Weiss has had extensive involvement in the conduct of discovery, including the defense of class representative and bellwether plaintiff depositions, and a key role in the briefing of the class certification motion.

**OxyContin Third-Party Payor Litigation**. Seeger Weiss has been appointed co-lead counsel in a proposed class action pending in the U.S. District Court for the Southern District of New York (Manhattan) before the Honorable John G. Koeltl.  The litigation against the drug's maker, Purdue Pharma LLP, involves the marketing and promotion of OxyContin. In 2007, Purdue pled guilty to federal violations of misbranding of OxyContin, for which it was fined over $600 million in criminal and civil penalties. The Firm represents insurance providers and other "third-party payors," including self-funded health plans, which have purchased, reimbursed, or otherwise paid for OxyContin for their plan members or participants. The Plaintiffs assert violations of federal RICO and state consumer fraud statutes. Specifically, they allege that, as a result of Defendants' fraudulent over-promotion and off-label promotion of OxyContin, members of the class paid a much higher price, for many more prescriptions, than they would have absent Defendants' fraudulent over-promotion.  After discovery, spirited negotiations, and briefing and argument on Purdue's motion to dismiss the complaint, Seeger Weiss secured a $20 million settlement, which received preliminary approval from the district court in December 2008. A final approval (fairness) hearing is scheduled for May 15, 2009.

### Environmental and Toxic Tort Litigation

Seeger Weiss has brought several environmental and toxic tort cases on behalf of homeowners, small landowners and farmers who have suffered from environmental damage and degradation.

**Factory Hog and Poultry Farm Environmental Litigation**. The Firm is involved in the prosecution of various environmental and common law claims against several of the nation's



largest industrial hog and poultry farm operators. These cases, pending in various jurisdictions throughout the country, were brought on behalf of riparian property owners and other residents in the vicinity of factory hog and poultry farms who have suffered from atmospheric degradation caused by the illegal discharge of harmful toxins and other pollutants contained in the enormous quantities of hog and poultry feces and other wastes produced by the industrial farmer defendants. The Firm serves as co-lead counsel in several of these actions. For example, the Firm serves as court-appointed co-lead counsel in an action pending in the state District Court of Mayes County, Oklahoma pertaining to environmental damages to the Grand Lake O'Cherokees caused by the disposal of massive quantities of chicken litter by the operations of various major poultry integrators and their contract growers. In that action, the Firm achieved the certification of two classes of owners of property around the 44,000-acre lake after a three-day hearing by the District Court, and that ruling was only narrowly overturned by the Oklahoma appellate courts during nearly two and one-half years of appeals. The Firm continues to pursue these claims.

**Hog Odor Nuisance Litigation**.  In September 2006, following a three-week trial in which Firm partner, Stephen A. Weiss, served as co-lead trial counsel, a state court jury sitting in Jackson County, Missouri returned a $4.5 million combined verdict against industrial hog producers Premium Standard Farms, Inc. and ContiGroup Companies, Inc. in favor of six neighbors of the Defendants' vast farm operations in northern Missouri. In March 2010, a group of fifteen neighbors brought Premium Standard Farms before the state court again, alleging that the overpowering hog odors had not abated since the original trial. A Jackson County jury awarded the plaintiffs an $11.05 million verdict. This verdict is the largest monetary award against a hog farm in an odor nuisance case.  Following these verdicts, Mr. Weiss served as lead negotiator of a global settlement that resolved approximately 300 related claims against these Defendants on a confidential basis.

**Lead Poisoning Litigation**. The Firm represented families and property owners living within Tar Creek, one of the nation's most notorious hazardous waste sites, situated within the former Picher Mining Field in Northeast Oklahoma. The site has ranked consistently near the top of EPA's National Priorities List for over a decade. Seeger Weiss is pursuing two types of cases on behalf of the residents: claims on behalf of seven minor children who have irreversible brain damage as a result of exposure to the lead left behind by the mining companies; and a prospective class of residents whose properties have been devalued and who have been exposed to this toxic mining waste.

**Chinese-Manufactured Drywall**. Seeger Weiss is currently pursuing action against Chinese manufacturers of contaminated drywall, which is reported to contain high levels of hydrogen sulfides, compounds that when exposed to prolonged heat or humidity, release sulfur gasses resulting in terrible odors, metal corrosion, and physical injuries. Christopher A. Seeger was named to the Plaintiff's Steering Committee in the Chinese-Manufactured Drywall Products



Liability Litigation (MDL No. 2047) by Judge Eldon E. Fallon, United States District Court, Eastern District of Louisiana. This litigation, which includes thousands of claimants asserting property damage and personal injury claims, was centralized in the Eastern District of Louisiana in June 2009 by order of the United States Judicial Panel on Multidistrict Litigation.

Mr. Seeger tried the first defective Chinese-manufactured drywall case in the country, resulting in a $2.6 million verdict for seven Virginia families. Mr. Seeger also tried the second bellwether case, which determined whether manufacturers were responsible for damages the drywall's toxic fumes cause to plumbing, electronics, and appliances, securing a $164,049 judgment for the Hernandez family.

In October 2011, Mr. Seeger was a part of a negotiating team that obtained a breakthrough settlement to remediate homes affected by Chinese drywall. The agreement was reached with several key defendants including Knauf Plasterboard Tianjin (KPT), builders, drywall suppliers and their insurers, and other Knauf entities, and totaled over $800 million in recoveries.  Since that time, several other settlements have been announced involving other defendant manufacturers and distributors, totaling an additional  $141 million.

### Fair Labor Standards Act Litigation

Seeger Weiss LLP is engaged in a wide variety of Fair Labor Standards Act ("FLSA") litigation matters representing aggrieved employees in courts throughout the country. The following are examples of such FLSA actions in which the Firm is involved:

Seeger Weiss served as lead counsel in an action—titled *Schaefer-LaRose v. Eli Lilly & Co.*, which was filed in November 2006 and transferred to the U.S. District Court for the Southern District of Indiana—charging that Eli Lilly & Co. had a common practice of refusing to pay overtime compensation to its pharmaceutical representatives—including Sales Representatives, Senior Sales Representatives, Executive Sales Representatives, Senior Executive Sales Representatives, and those with similar job descriptions and duties—in violation of the federal FLSA. The plaintiffs, Lilly employees who promoted or detailed pharmaceutical products to medical professionals, alleged that Lilly unlawfully characterized its employees as exempt in order to deprive them of overtime pay. In February 2008, the court approved Plaintiffs' motion to conditionally certify the case as a collective action—the FLSA equivalent of a class action. The class consisted of approximately 400 current and former pharmaceutical representatives employed by Lilly across America.

Seeger Weiss was also co-counsel in a similar federal collective action lawsuit charging that Pfizer Inc. had adopted a common practice of refusing to pay overtime compensation to its pharmaceutical representatives—including Professional Healthcare Representatives, Therapeutic



Specialty Representatives, Institutional Healthcare Representatives, Specialty Healthcare Representatives, Specialty Representative, and Sales Representatives—in violation of the FLSA. That action, *Coultrip v. Pfizer Inc.*, was filed in October 2006 in the U.S. District Court for Southern District of New York. In August 2008, that court granted Plaintiffs' motion to certify the case as a FLSA collective action.

The FLSA litigations against the various drug-makers were extremely hard fought and led to a split among the circuit courts of appeals, with the Seventh Circuit affirming the district court's grant of summary judgment in favor of Eli Lilly and the Ninth Circuit similarly holding in favor of defendant SmithKline Beecham, while the Second Circuit held in favor of the plaintiffs in a cognate action brought against Novartis. The claims wound their way up to the U.S. Supreme Court, where a sharply-divided Court affirmed the Ninth Circuit in a 5-4 decision in June 2012. Seeger Weiss partner Stephen A. Weiss and Counsel James A. O'Brien III (who argued the plaintiffs' appeal in the Seventh Circuit) spearheaded the litigation for Seeger Weiss.

## Pension and ERISA Litigation

Seeger Weiss has represented thousands of clients whose employers recklessly tampered with their retirement benefits.

**In re. Bakery and Confectionary Union and Industry Int'l Pension Fund.** Seeger Weiss represented 10 former union employees of the Entemann's Bakery in Bay Shore, New York and the closed Keebler plant in Denver, Colorado, in a class action lawsuit in the Southern District of New York against the Bakery and Confectionery Union and Industry International Pension Fund that was consolidated with a similar action brought by co-counsel. Many of these and other union workers had accepted "buy-out" offers from their employers as part of company downsizing, based on the understanding and expectation that they would qualify for a full pension under an alternative formula known as Plan G, or more commonly the "Golden 80" option. But in July 2010, Pension Plan participants not already eligible for their full pension under the Golden 80 formula lost the right to qualify for a Golden 80 pension if they were no longer in unionized employment. As a result, the only early retirement pension for which they could qualify was one that was as much as much as 60% lower. In a June 2012 opinion (published at 865 F. Supp. 2d 469), the district court agreed with plaintiffs that the Pension Plan had violated the ERISA by unilaterally reducing workers' vested and accrued pension benefits in that the Golden 80 pension they had been promised was a benefit that could not be reduced merely because they had not already reached the required number of 80 total credits of age plus years of service before July 1, 2010. The U.S. Court of the Appeals for the Second Circuit affirmed the district court in a May 2014 decision (published at 751 F.3d 71). The victory achieved by Seeger Weiss and its co-counsel benefitted some 540 participants in the Pension



Plan, who saw their full pension rights restored. The case was successfully prosecuted by Seeger Weiss partner Diogenes P. Kekatos

**In re Delta Air Lines Inc**. Seeger Weiss served as Lead Counsel in a nationwide ERISA multidistrict litigation centralized by the JPML in the federal court in Atlanta, Georgia before the Honorable Julie E. Carnes. The Firm represented active and retired Delta Air Lines pilots challenging various company pension plan amendments and practices that had caused them to forfeit accrued and vested pension benefits. Plaintiffs challenged, among other things, the methodology employed by Delta in calculating and paying lump sums of pension benefits to pilots, the company's retroactive freeze of a benefit formula previously pegged to increases in investment performance, and automatic reductions of pension benefits of married retirees hired before 1972. In September 2005, the federal court in Atlanta granted final approval to a class action settlement providing for payment of $16 million in cash to certain retired Delta pilots hired before 1972 or their spouses or beneficiaries and 1 million stock purchase warrants to lump sum pension benefits recipients. The settlement represented a significant recovery in light of Delta Air Lines' rapidly-deteriorating financial plight, with the court's final approval coming only days before Delta filed for bankruptcy protection. Seeger Weiss continued to represent Plaintiffs and class members through a number of twists and turns in the bankruptcy proceedings and beyond, and vigorously fought for and, in 2008, secured the complete and final distribution of all settlement proceeds to the class members.

**In re BellSouth Corp. ERISA Litigation**. Seeger Weiss represented tens of thousands of aggrieved BellSouth management employees in a class action suit against the company and the administrators of the employees' 401K plan, in connection with "Enron-like" breaches of fiduciary duty. These claims stemmed from Defendants' failures to advise employees of investment diversification options and their having created a falsely optimistic outlook in Defendant BellSouth's stock as a prudent investment for the plan. Defendants encouraged employees to invest their earnings in company stock at a time when the company was noting positive operating results, artificially-optimistic revenue growth, and other financial indicators that were found to be materially false, including revelations of accounting irregularities and losses from the company's risky venture into the highly-speculative Latin American wireless phone market. In 2006, after considerable motion practice and discovery in the litigation, the federal court in Atlanta, Georgia, which oversaw the litigation, granted final approval to a class action settlement that provides for, among other things, BellSouth to make matching 401K plan contributions to employees for a three-year period in cash rather than company stock; for employees during that period to have the same investment options for the company's matching contributions as they have for their own contributions; the availability of certain additional investment choices; and during that period a guaranteed minimum percentage for one of the components in the formula used to determine the company's matching contributions.



## Insurance Litigation

For over a decade, the Firm has played a pivotal role in many notable insurance market practices class actions brought against members of the life insurance industry. These nationwide suits resulted from alleged misrepresentations made in connection with the sale of certain life insurance products, including "vanishing premium" policies which, due to market-sensitive dividend projections, required customers to pay premiums on a more prolonged basis than originally expected. The Firm has also reviewed annuity claims in the Claims Review Process.

The firm serves on the Plaintiffs' Executive Committee in the multidistrict *Aetna UCR Litigation* (MDL No. 2010), pending before Judge Katherine Hayden in the United District Court for the District of New Jersey. That litigation raises ERISA and other claims against Aetna, Ingenix, and UnitedHealth Group pertaining to reimbursement rates for out-of-network heath care services. The insurers were reported to have knowingly created and used flawed data – a rigged database created by Ingenix, which was once the largest provider of healthcare billing information in the country and is now a subsidiary of UnitedHealth Group – to produce reimbursements often far below genuinely usual, customary, and reasonable rates.

In 1995, the firm was appointed as the national Policyowner Representative in *Wilson v. New York Life Insurance Company* sales practices litigation, the first settlement of a nationwide class action relating to the vanishing premium insurance product. *Wilson* involved claims brought by a class of approximately 3.2 million New York Life policyowners who suffered damages as the result of allegedly improper sales practices by the company and its agents, including the alleged failure to properly disclose the market-sensitivity of the company's premium payment projections. As Policyowner Representative, the firm served as the principal advocate on behalf of members of the class who elected to pursue individual claim relief before independent appeal boards.

Following its appointment in the *New York Life* litigation, the firm served as the Attorney Representative in the *In re Prudential Life Insurance Sales Practices Litigation*. In that role, the firm, and others serving under its auspices, represented individual class members in connection with over 53,000 separate claim arbitrations.

In addition to the *New York Life* and *Prudential* matters, the firm has served as the Policyowner Representative, Attorney Representative, or Claim Evaluator in the following insurance and annuity sales practices class actions: *Ace Seat Cover Company v. The Pacific Life Insurance Co.*; *Benacquisto v. American Express Financial Corporation*; *Duhaime v. John Hancock Mutual Life Ins. Co.*; *Garst v. The Franklin Life Insurance Co.*; *In re General American Life Insurance Co. Sales Practices Litigation*, *In re Great Southern Life Insurance Co. Sales Practices Litigation*; *Grove, et al. v. Principal Mutual Life Insurance Co.*; *Joseph F. Kreidler, et*



*al. v. Western-Southern Life Assurance Co.; Lee v. US Life Corp.; In re Lutheran Brotherhood Variable Products Co. Sales Practices Litigation; Manners and Philip A. Levin v. American General Life Insurance Co.; In re Manufacturers Life Insurance Co. Premium Litigation; In re Metropolitan Life Insurance Co. Sales Practices Litig.; Moody v. American General Life and Accident Insurance Co.; In re New England Mutual Life Insurance Company Sales Practices Litigation; Roy v. Independent Order of Foresters; Murray v. Indianapolis Life Insurance Co.; Snell v. Allianz Life Insurance Company of North America; In re Sun Life Assurance Company of Canada Insurance Litigation; Varacallo, et al. v. Massachusetts Mutual Life Insurance Co.; and Wemer v. The Ohio National Life Insurance Co.*

### Personal Injury Litigation

The Firm maintains a highly-selective docket of matters involving serious personal injury or wrongful death. Unlike many personal injury practices in which attorneys may handle hundreds of slip-and-fall matters at a time, the Firm's philosophy is to allow its attorneys to concentrate on a smaller number of "high-end" catastrophic injury cases, thereby permitting the highest quality of attention and service available in the field.

**In re National Football League Players' Concussion Injury Litig.**  Most recently, Christopher Seeger served as co-lead counsel to NFL players and lead negotiator in the NFL concussion litigation (*In re National Football League Players' Concussion Injury Litigation*), multidistrict litigation involving thousands of lawsuits brought by former NFL players that the JPML ordered centralized in the Eastern District of Pennsylvania), in which the players alleged that the League had suppressed information concerning the linkage between repeated head trauma and serious neurological ailments.  The litigation has gained significant media attention.

In July 2014, Judge Anita B. Brody granted preliminary approval of a proposed nationwide class action settlement of thousands of lawsuits filed by former professional football players, alleging that the National Football League failed to take the necessary precautions to protect its players from long-term brain injuries from concussive and sub-concussive impacts.

Judge Brody appointed Seeger Weiss founding partner Christopher A. Seeger as Co-Lead counsel for the Plaintiffs, and several other Seeger Weiss partners and other attorneys, including David R. Buchanan and TerriAnne Benedetto, have been actively involved in the litigation.  The settlement was achieved after many months of spirited negotiations led by Mr. Seeger, including before a court-appointed mediator.

The settlement will provide an uncapped Monetary Award Fund  for 65 years which will pay all valid claims  for certain neuro-cognitive impairments, with individual awards of up to $5 million; $75 million to fund a Baseline Assessment Program Fund that will offer eligible retired



NFL players a baseline neuropsychological and neurological examination to determine the existence and extent of any cognitive deficits, and in the event retired players are found to suffer from moderate cognitive impairments certain supplemental benefits in the form of specified medical treatment and/or evaluation, including, as needed, counseling and pharmaceutical coverage; and a $10 million Education Fund to fund safety and injury-prevention programs for football players.

The U.S. Court of Appeals rebuffed the effort of a small group of objectors to challenge the preliminary approval determination in an opinion published at 775 F.3d 570. After extensive proceedings, culminating in a final approval hearing in November 2014, Judge Brody approved the settlement in an exhaustive opinion issued in April 2015 (published at 307 F.R.D. 351), agreeing with Seeger Weiss and its co-counsel that the objections to the settlement lodged by a small percentage of class members lacked merit. In April 2016, a U.S. Court of Appeals for the Third Circuit panel unanimously affirmed Judge Brody's final approval determination in an opinion published at 821 F.3d 410.

**Wildcats Bus Crash Litigation**. In June 2009, Seeger Weiss was lauded for its staunch representation of 11 victims and their families in the Wildcats Bus Accident Case, after the defendants' agreed during trial to accept 100% of the responsibility for the tragic crash. The horrific accident, which resulted in four fatalities and countless other serious injuries, occurred when a Coach Canada bus carrying an "under 21" Canadian female hockey team named the Wildcats veered off of Interstate 390 near Rochester, New York and struck a parked tractor-trailer on the shoulder of the roadway. Led by Christopher Seeger, Moshe Horn and Marc Albert, the Seeger Weiss team took more than 20 depositions, reviewed thousands of pages of documents and retained multiple experts in preparation for the trial in the Supreme Court, Livingston County. Seeger Weiss represented a total of eleven victims of the accident and their families. In March 2010, a jury awarded $2.25 million to three of the victims and their families, who were represented by partners Moshe Horn and Marc Albert. Following this verdict, the Firm successfully negotiated a global settlement of $36 million on behalf of all of the Wildcats bus accident victims.

**Other Personal Injury Matters**. Partner Christopher A. Seeger represented a six-year-old boy and his family in a medical malpractice action against a hospital for failing to timely diagnose meningitis, which resulted in severe brain damage to the boy. The case settled for $3.25 million in the Supreme Court of Kings County.

Partners Christopher A. Seeger and Stephen A. Weiss represented the wife and two minor children of a 41-year-old successful technologist who was tragically killed when a boat upon which he was a passenger collided with the Greenport Breakwater, a 1,000 foot long structure



constructed of large boulders in Greenport, Long Island. The victim was thrown from the boat upon impact and ultimately drowned. This case was settled for $2.9 million.

Seeger Weiss secured a $1.4 million verdict for client Debbie D'Amore in her case against Met Life and American Building Maintenance for serious injuries which she suffered as a result of a fall on July 13, 2004 at the Met Life Building in New York City. Ms. D'Amore was vigorously represented by Christopher Seeger and Marc Albert of Seeger Weiss LLP over the course of the week-long trial held before the Honorable Judge Michael Stallman of the Supreme Court, New York County. The jury deliberated over a two day period and returned with a $1.4 million verdict, $1 million of which was awarded for Ms. D'Amore's past pain and suffering, with $400,000 awarded for future pain and suffering. The jury found defendants Met Life and its cleaning contractor, American Building Maintenance responsible for the fall and the serious injuries which Ms. D'Amore sustained as a result. Ms. D'Amore suffered a tri-malleolar ankle fracture in the fall which required multiple surgeries, including ultimately, an ankle fusion.

### Antitrust Litigation

Seeger Weiss LLP has been involved in nationally-prominent antitrust litigation, where it has recently expanded its presence.



**Compact Disc Litigation**. Seeger Weiss was involved in this consumer antitrust litigation, which sought damages against the wholesale sellers of pre-recorded music sold in the form of compact discs. The Plaintiffs alleged that the Defendants had conspired to artificially inflate the retail prices of compact discs in violation of the Sherman Act. The litigation was settled favorably in the United States District Court for the District of Maine, where the litigation had been centralized for coordinated pretrial proceedings by the JPML.

**McDonough v. Toys "R" Us, Inc**. Seeger Weiss represents a proposed class of consumers and smaller retailers of baby and juvenile products against Babies "R" Us (an affiliate of the Toys "R" Us chain) and several manufacturers of baby products, including strollers, bedding, car seats, and other items, in consolidated actions pending in the U.S. District Court for the Eastern District of Pennsylvania (Philadelphia) before the Honorable Anita B. Brody. The Plaintiffs allege that Babies "R" Us conspired with the manufacturers of baby products in a scheme whereby the manufacturers required other retailers to sell their products at prices above those being charged by Babies "R" Us. As a result, Babies "R" Us was able to monopolize the retail market, resulting in consumers being forced to pay more for baby products. The district court denied the Defendants' motion to dismiss the consolidated complaints. Briefing of Plaintiffs' motion for class certification has been completed, and a decision from the court is expected shortly.

**Monsanto Genetically-Modified Soybean and Corn Seed Litigation**. The Firm serves as Co-Lead Counsel in *Schoenbaum v. E.I. DuPont de Nemours and Company*, thirteen consolidated proposed class actions against Monsanto Company, E.I. DuPont de Nemours and Company, and Pioneer Hi-Bred International Inc. currently pending before the Honorable E. Richard Webber in the U.S. District Court for the Eastern District of Missouri (St. Louis). These lawsuits, brought on behalf of farmers who purchased genetically-modified Roundup Ready soybean and YieldGard corn seeds, allege violations of federal and state antitrust, state unfair trade practices statutes, and common law claims for unjust enrichment. The claims stem from the defendants' conspiracy to fix the price of these seeds through the imposition of "technology fees," ostensibly for the purpose of allowing Monsanto to recoup its research and development costs of those seed products but which, in reality, capitalized on and exploited Monsanto's development of those seeds in order to monopolize -the market for those seeds and thereby charge and collect premium prices. After extensive briefing, both pre- and post-argument, and an all-day hearing on the Defendants' motion to dismiss the Plaintiffs' Master Consolidated Amended Action Complaint, the district court sustained most of Plaintiffs' claims. Following spirited motion practice, which included discovery disputes and the Plaintiffs' motion for leave to file an amended complaint in order to, among other things, assert additional claims against Monsanto for misuse of patent, Plaintiffs reached individual settlements with all of the



defendants. The settlements will provide a significant recovery to each of the more than two dozen named Plaintiffs.

**In re Packed Ice Antitrust Litigation**. The Firm represents direct purchasers of packaged ice in a proposed class action brought against the five American and Canadian manufacturers and distributors who possess the dominant share of the $2.5 billion per year packaged ice industry in North America. The Firm has been appointed Co-Chair of the Class Certification Committee in that litigation. Plaintiffs allege that Defendants have violated the antitrust laws by conspiring to fix prices and allocate market share for packaged ice. The U.S. Justice Department's Antitrust Division commenced an investigation into the packaged ice industry sometime prior to March 2008 and grand jury subpoenas were issued to the Defendants. The cases from around the country have been centralized in the U.S. District Court for the Eastern District of Michigan, and a hearing will be held in March 2009 respecting the selection of Lead Counsel.

**In re Rail Freight Fuel Surcharge Antitrust Litigation**. The Firm represents shipping customers in a proposed class action brought against the country's four major railroads for antitrust violations. The Defendants in this multidistrict litigation, pending in the U.S. District Court for the District of Columbia, are alleged to have conspired to fix the prices of "rail fuel surcharges" above competitive levels, causing the Plaintiffs to pay exorbitant rates for unregulated rail freight transportation services—rates that were unrelated to fuel costs. The district court denied the Defendants' motions to dismiss the direct purchasers' claims and the indirect purchasers' federal antitrust claims. The district court held a two-day hearing on Plaintiffs' motion for class certification in October 2010 and, in June 2012, issued an exhaustive 145-page decision, granting the motion. In August 2013, the D.C. Circuit remanded the case for further proceedings, principally in light of the Supreme Court's then-recent decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Further proceedings have been conducted on remand, including additional expert witness discovery and voluminous briefing. The district court will soon hold a multi-day hearing on the class certification motion. Seeger Weiss serves as Co-Chair of the Law and Briefing Committee.

## Other Commercial Litigation

In addition to its diverse complex litigation practice, Seeger Weiss LLP is engaged in a wide variety of commercial litigation matters representing individuals and businesses in state and federal courts throughout the country. The following are examples of such commercial actions in which the Firm is involved:

**Automobile Dealership Warranty Litigation**: The Firm represents dozens of franchised automobile dealerships located throughout New York State in separate actions against the "Big Three" automobile manufacturers — Ford, General Motors, and DaimlerChrysler. These actions are pending in federal court in New York and are based on the manufacturers' failure to comply



with the New York State Vehicle & Traffic Law § 465. These actions assert claims that in violation of New York State statute and the franchise agreement that governs the relationship between the dealerships and the factories, the manufacturers have failed to adequately reimburse the dealerships for parts used in performing repairs pursuant to the manufacturers' warranties. In addition to the three federal court actions, the Firm also represents close to a dozen franchised Chrysler dealerships in arbitrations pending before the American Arbitration Associations asserting the same claims.

**Arzoomanian v. British Telecommunications PLC**. The Firm represented a small businessman who had brokered a multi-million dollar global telecommunications deal between two multi-national corporations, British Telecommunications PLC ("BT") and Unilever PLC, and then was cut out of the deal by the companies and refused his fee. In 2004, the Firm successfully overcame BT's motion to dismiss the action on *forum non conveniens* grounds (in which BT argued that the action should not have been brought in the United States). After extensive discovery—both in the United States and overseas—and further motion practice, the case was settled in 2007.  This is one of a number of cases that the Firm has handled on behalf of small businesses which have been wronged by behemoth corporations.

**In re ETS Praxis Principles of Learning and Teaching: Grades 7-12 Litigation** is a consolidated national class action on behalf of more than 4,100 prospective teachers as to whom ETS negligently and wrongfully reported failing scores on the Praxis Principles of Learning and Teaching test for grades 7 through 12 (the "PPLT" test) during the period from January 2003 through April 2004. The PPLT is a test that is required in many states in order for teachers to obtain their teaching certification. In December 2004, the various class actions filed around the country were transferred to the Honorable Sarah Vance of the United States District Court for the Eastern District of Louisiana (New Orleans). Judge Vance appointed Seeger Weiss LLP to the position of State Court Litigation Liaison Counsel.  This case was settled in 2006 for $11.1 million.

**HMO Litigation**. The Firm was counsel to individual doctor-members of the Connecticut State Medical Society ("CSMS") and the Medical Society of the State of New York ("MSSNY") in connection with various putative statewide class actions filed in Connecticut and New York state courts, respectively against several national health management organizations (HMOs). The class members sought damages resulting from the defendants' improper, unfair and deceptive practices designed to deny, impede or delay lawful reimbursement to CSMS and MSSNY physicians which rendered necessary healthcare services to members of the HMO managed care plans.  The case was successfully resolved.

**VOIP, Inc. v. Google, Inc**. The Firm represents VOIP, Inc. in a trade secrets and breach of contract action filed in New York State Supreme Court in February 2011. The suit claims that



Google developed its "Click to Call" feature, which allows users to make Internet phone calls by just clicking on a link, using misappropriated VoIP trade secrets.





Selected Attorney Biographies

*Partners*

**Christopher A. Seeger**

*Position*: Founding Member Co-Managing Partner.

*Admitted*: New Jersey, 1990; New York, 1991;

U.S. District Court for the Southern District of New York and U.S. District Court for the District of New Jersey, 1991; U.S. District Court for the Eastern District of New York, 2000; U.S. District Court for the District of Colorado, 2011.

*Education*: Hunter College of the City University of New York (B.A., *summa cum laude*, 1987); Benjamin N. Cardozo School of Law (J.D., *magna cum laude*, 1990).

*Honors*: Managing Editor, *Cardozo Law Review*.

*Author*: "The Fixed Price Preemptive Right in the Community Land Trust Lease," 11 *Cardozo Law Review* 471, 1990; "Developing Assisted Living Facilities," New York Real Estate Law Reporter, Volume XII, Number 10, August 1998.

*Lecturer*: "The Use of ADR in Class Actions and Mass Torts," New York University School of Continuing and Professional Studies, October 13, 2000.

*Director*: American Friends of Rabin Medical Center, Inc.; Benjamin N. Cardozo School of Law, Yeshiva University, 1999-2000.

*Co-Chair*: Cardozo Law School Alumni Annual Fund, 1998-2000.

*Awards*: Best Lawyers in America, 2006, 2012; New York Super Lawyer, 2006-2013; New Jersey SuperLawyers, 2006-2014; Law Dragon 500, 2007-2013; Best Lawyers, Mass Tort Litigation; Hunter College Hall of Fame, 2007; Cardozo Alumnus of the Year, 2009.

*Member*: The Association of the Bar of the City of New York; New Jersey State Bar Association; Board of Advisors, New York Real Estate Law Reporter; Annual Fund Committee, 1999-present; American Bar Association; American Association for Justice, Trail Lawyers for Public Justice; Fellow, American Bar Foundation.

*Practice Areas*: Consumer Fraud, Products Liability, Antitrust; Insurance, Class Actions, Mass Torts.



**Stephen A. Weiss**

*Position*: Founding Member and Co-Managing Partner.

*Admitted*: New York, 1991; U.S. District Courts for the Southern and Eastern Districts of New York, 1991.

*Education*: Brandeis University (B.A., 1986); Benjamin N. Cardozo School of Law (J.D., 1990).

*Honors*: Business Editor, *Cardozo Law Review*, 1989-1990.

*Author*: "Environmental Liability Disclosure Under the Federal Securities Law," *Law Education Institute*, Inc., 1998; "Liability Issues and Recent Case Law Developments Under CERCLA, New Environmental Issues of Liabilities of Government Agencies & Government Contractors," *Federal Publications*, Inc., Chapter 4, 1995; "New York Proposes Legislation to Restrict Shareholder Derivative Suits," *Insights*, Vol. 8, No. 3, p. 24, 1994; "Suretyship as Adequate Protection Under Section 361 of the Bankruptcy Code," *Cardozo Law Review*, Vol. 12, p. 285, 1990.

*Director or Officer*: Benjamin N. Cardozo School of Law, Yeshiva University, 2000-present; New York State Trial Lawyers Association, 2012-present; New York State Academy of Trial Lawyers, Vice President, 1st Department, 2012-2013.

*Co-Chair*: Cardozo Law School Alumni Annual Fund, 1998-2000.

*Awards*: International Humanitarian Achievement Award, Shaare Zedek Medical Center, 2002; Trial Lawyer of the Year, Finalist, Public Justice Foundation, 2010.

*Member*: American Association for Justice; American Bar Association; Badge of Honor Memorial Foundation, General Counsel, 2008-present.

*Practice Areas*: Complex Litigation, including Antitrust, Consumer, Employment, Environmental, Insurance, Products Liability, Pharmaceutical, Qui Tam and Securities Litigation.



**David R. Buchanan**

*Position*: Member.

*Admitted*:  New Jersey, 1993; New York, 1994; U.S. District Court for the District of New Jersey, 1993; U.S. District Court for the Southern District of New York, 1994; U.S. District Court for the Eastern District of New York, 1999.

*Education*: University of Delaware (B.S., 1990); Benjamin N. Cardozo Law School (J.D., *magna cum laude*, 1993)

*Honors*: Samuel Belkin Scholar, 1993; Member, 1991-93, and Administrative Editor, 1992-93, *Cardozo Law Review*.

*Awards*: Best Lawyers in America, 2007- ; New York Super Lawyer, 2007- ; New Jersey Super Lawyer, 2007 - ; Legal 500; Law Dragon 3000; International Society of Barristers, Fellow

*Member*: American Bar Association; American Association for Justice; NYSTLA, Board of Governors; International Society of Barristers; Summit Council.

*Practice Areas*: Complex and Mass Tort Litigation, including Antitrust, Consumer, Environmental, Insurance, Intellectual Property, Pharmaceutical, Products Liability, and Securities Litigation.

**Diogenes P. Kekatos**

*Position*: Member.

*Admitted*: New York, 1984; U.S. District Courts for the Southern and Eastern Districts of New York, 1984; U.S. Courts of Appeals for the Second, Third, Seventh, Eighth, Ninth, and Tenth Circuits, 1985, 2008-14; U.S. Supreme Court, 1987.

*Education*: Columbia College, Columbia University (B.A., Dean's List all 8 semesters, 1980); Brooklyn Law School (J.D., 1983).

*Honors*: Named to New York *Super Lawyers*, 2013-16; recipient of letters of commendation from the U.S. Court of Appeals Staff Counsels and from Attorney General Janet Reno for outstanding performance and high level of professionalism in appellate mediation, 1999.

*Experience*: Special Assistant U.S. Attorney, 1986-88, and Assistant U.S. Attorney, 1988-2000; Office of the United States Attorney for the Southern District of New York, and Chief, Financial Litigation Unit, 1988-90; and Immigration Unit, 1990-2000. Has argued some 130 appeals and motions in the U.S. Court of Appeals for the Second Circuit, including a successful *en banc* rehearing, with scores of cases resulting in published opinions; and has handled hundreds of appellate mediations.

*Awards:* Executive Office for U.S. Attorneys Director's Award for Superior Performance as an Assistant U.S. Attorney, 1996; Award from U.S. Attorney Mary Jo White for Exceptional Achievement, 1995; and numerous other award nominations.

*Practice Areas*: Class Action and Complex Litigation, Federal Civil Litigation, Federal Appellate Litigation.



**Moshe Horn**

*Position*: Member.

*Admitted*: New York and New Jersey, 1994; U.S. District Courts for the Southern and Eastern Districts of New York.

*Education*: George Washington University (B.A., 1989); Benjamin N. Cardozo School of Law (J.D., 1993).

*Honors*: Member of Championship team in a national Securities Law Moot Court competition at Fordham University, 1993; Winner tri-state trial competition, runner up Best Advocate, 1993.

*Experience*: Assistant District Attorney, New York County, 1993-2002 (where he held numerous supervisory positions and tried 50 jury cases); Senior Associate, Kaye Scholer LLP, 2002-2004. Member of the Firm's trial team that achieved a $47.5 million verdict for Vioxx-related cardiovascular injury in *Humeston v. Merck & Co.* in 2007 in the New Jersey Superior Court, Atlantic County. Member of the Firm's trial team that achieved a $1.4 million verdict for  Currently an Adjunct Professor of Law at Benjamin N. Cardozo School of Law, teaching "Introduction to Trial Advocacy." Has previously taught "Advanced Trial Advocacy" and "Mass Torts," and served as advisor and coach to the law school's Mock Trial Team.

*Member*: American Bar Association, American Association for Justice, New York State Trial Lawyers Association.

*Practice Areas*: Pharmaceutical and Medical Device Litigation, Personal Injury Litigation, Complex Litigation, Asbestos Litigation, Criminal Defense.

**Michael L. Rosenberg**

*Position*: Member.

*Admitted*: New Jersey, 1989; U.S. District Court, District of New Jersey, 1989; New York, 1990.

*Education*: Rutgers-Camden School of Law (J.D., 1989), University of Delaware (B.A. 1986).

*Experience*: Has been with the Firm since its 1999 inception. Has negotiated individual settlements on behalf of hundreds of clients injured by pharmaceutical products, including over-the-counter medicines containing PPA and the anti-cholesterol drug Baycol. Played an integral role in the settlement of personal injury claims against the manufacturers of Dexatrim, a PPA-containing weight loss product, on behalf of 500 stroke victims who claimed that their strokes were caused by Dexatrim. The settlement is valued at approximately $200 million. Serves as a member of the Delaco Trust Advisory Committee tasked with overseeing the administration of the settlement. Was a member of the trial team that won a $2.6 million verdict for the Plaintiff in *McCarrell v. Hoffman-La Roche, Inc*, in New Jersey Superior Court, Atlantic County.

*Member*: American Bar Association and American Association for Justice.



*Practice Areas*: Complex and Mass Tort Litigation, including Pharmaceutical, Products Liability and Insurance Litigation.

### Terrianne Benedetto

*Position*: Member.

*Admitted*: Pennsylvania, 1990; New Jersey, 1991; U.S. District Courts for the District of New Jersey, 1991; Eastern District of Pennsylvania, 1991; Western District of Wisconsin, 1993; New York Supreme Court, Appellate Division, Third Department, 2009; and New York Superior Court, 2009.

*Education*: Franklin & Marshall College (B.A., 1986); Villanova University (J.D., 1990).

*Honors*: Member of the *Villanova Law Review*; Law Clerk to the Honorable Jacob Kalish of the Commonwealth Court of Pennsylvania, and the Honorable William W. Vogel of the Montgomery County Court of Common Pleas.

*Author*: "Database Technology: A Valuable Tool for Defeating Class Action Certification," published in *Pennsylvania Law Weekly*, Vol. XX, No. 47, November 24, 1997, and *Mealey's Litigation Report*: *Lead*, Vol. 7, No. 14, April 24, 1998.

*Experience*: At the beginning of her career as a class action litigator, was co-counsel for defendants in *Reilly v. Gould Inc.*, 965 F. Supp. 588 (M.D. Pa. 1997); *Dombrowski v. Gould Electronics Inc.*, 954 F. Supp. 1006 (M.D. Pa. 1996); and *Ascher v. Pennsylvania Insurance Guaranty Association*, 722 A.2d 1078 (Pa. Super. 1998). Thereafter, joined nationally recognized plaintiffs' firms where she represented individuals, small businesses and the Office of the Attorney General for the Commonwealth of Pennsylvania in numerous antitrust and consumer fraud class actions, many resulting multimillion dollar settlements, including *In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.); *In re Graphite Electrodes Antitrust Litigation*, No. 2:97-CV-4182 (E.D. Pa.); *In re Magnetic Audiotape Antitrust Litigation*, No. 99 Civ. 1580 (S.D.N.Y); *In re Vitamins Antitrust Litigation*, MDL No. 1285 (D.D.C.); *In re Maltol Antitrust Litigation*, No. 99 Civ. 5931 (S.D.N.Y.); *In re Compact Disc Antitrust Litigation*, MDL No. 1216 (C.D. Cal.); *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.); and *In re Carpet Antitrust Litigation*, MDL No. 1075 (N.D. Ga.).

*Member*: Pennsylvania Trial Lawyers Association, Philadelphia Bar Association.

*Practice Areas*: Complex Commercial and Class Action Litigation, including Consumer Protection, Antitrust, Products Liability, and Securities Litigation.

### Jeffrey S. Grand

*Position*: Member

*Admitted*: New York, 2003;

U.S. District Court for the Southern District of New York and U.S. District Court for the Eastern District of New York, 2003.



*Education*: School of Visual Arts (B.A., 1990); Benjamin N. Cardozo School of Law (J.D.,
  *Order of the Coif*, 2002).
*Honors*: Samuel Belkin Scholar; Felix Frankfurter Award; Executive Editor, *Cardozo Law
  Review*.
*Author*: "The Blooding of America: Privacy and the DNA Dragnet," 23 *Cardozo Law Review*
  2277, 2001.
*Awards*: New York Super Lawyer, 2014-2016; New York Rising Starts, 2012-2013.
*Member*:  American Bar Association; American Association for Justice.
*Practice Areas*: Products Liability; Pharmaceutical and Medical Device Mass Tort Litigation.


## *Counsel*

### James A. O'Brien III

*Position*: Counsel.
*Admitted*: New York, 2000; Massachusetts, 1988; U.S. District Court, District of Massachusetts,
  1991.
*Education*: University of Massachusetts at Amherst (B.A., 1984); New England School of Law
  (J.D., 1988).
*Experience*: Attorney Advisor, U.S. Department of Labor, 1988-89; Assistant District Counsel,
  U.S. Immigration and Naturalization Service, 1990; Special Assistant United States Attorney,
  1990-2001, Southern District of New York.
*Practice Areas*: Class Action and Complex Litigation, Federal Civil Litigation, Federal
  Appellate Litigation.


### Scott Alan George

*Position*: Counsel.
*Admitted*: Pennsylvania and New Jersey, 1998; U.S. District Courts for the Eastern District of
  Pennsylvania and the District of New Jersey, 1998; U.S. Court of Appeals for the Third
  Circuit, 1998.
*Education*: Goddard College (B.A., 1989); Temple University School of Law (J.D., *cum laude*,
  1998).
*Honors*: Member of the Moot Court Honor Society.
*Practice Areas*: Class Action Litigation.


### Christopher Van de Kieft

*Position*: Counsel.
*Admitted*: New York, 2003; U.S. District Courts for the Southern and Eastern Districts of New
  York, 2005.



*Education*: Johns Hopkins University (B.A., 1990), Benjamin N. Cardozo School of Law (J.D., 2002).

*Honors*: Editor-in-Chief, *Cardozo Law Review*; recipient of Cardozo Law School's prestigious Samuel Belkin Award, awarded each year to one graduating student for "exceptional contribution to the growth and development of the Law School."

*Experience*: Prior to attending law school, served in the U.S. Army from 1990-98, attaining rank of Captain.  Prior to joining the Firm was an associate at Fried Frank Harris Shriver & Jacobson.

*Practice Areas*: Pharmaceutical and Medical Device Mass Tort Litigation; Class Action Litigation.

## *Associates*

### Parvin K. **Aminolroaya**

*Position*: Associate.

*Admitted*: New Jersey, 2008; New York, 2009; U.S. District Court, District of New Jersey, 2008.

*Education*: Fordham University (B.A., 2004, with honors); Benjamin N. Cardozo School of Law (J.D., 2008).

*Honors*: Jacob Burns Medal awarded for outstanding contribution to Moot Court; Benjamin N. Cardozo Writing Award; Editorial Board, Moot Court Honor Society; First Place Oralist Team and First Place Brief, Regional Competition of the New York City Bar Association, National Moot Court Competition, 2007; First Place Brief and Second Place Oralist Team, Fordham Irving Kaufman Securities Moot Court Competition, 2007.

*Member*: Executive Committee, Benjamin N. Cardozo School of Law Alumni Association.

*Practice Areas*:  Securities Fraud, Investment Fraud, Complex Commercial Litigation.

### Asa R. Danes

*Position*: Associate.

*Admitted*: New York State, 2004; United States District Courts for the Eastern and Southern Districts of New York, 2006 and Western District of Tennessee, 2009.

*Education*: Oberlin College (B.A., 1994); Brooklyn Law School (J.D., *cum laude*, 2001).

*Honors*: Notes and Comments Editor, *Brooklyn Journal of International Law*.

*Experience*: Associate at Paul, Hastings, Janofsky & Walker LLP; Law Clerk to the Honorable James T. Trimble, Jr. in the United States District Court for the Western District of Louisiana.

*Practice Areas*: Complex personal injury matters; mass tort, consumer fraud and securities class actions; shareholder derivative and corporate governance disputes and other commercial litigation.

### David R. Tawil



*Position:* Associate.

*Admitted:* New Jersey, 2014.

*Education:* New York University (B.A. History, 2007); Tulane University (J.D., 2012).

*Honors:* Senior Notes and Comments Editor, Tulane Journal of International and Comparative Law; Associate Justice, Tulane University Law School's Moot Court Board.

*Author:* Kiobel v. Royal Dutch Petroleum Co.: *The Second Circuit Rejects Corporate Liability Under the Alien Tort Statute* (19 Tul. J. Int'l & Comp. L. 709) and *Implications of* PLIVA, Inc. v. Mensing: *The Reemergence of Federal Preemption* (unpublished).

*Experience:* Law clerk to the Honorable Jessica R. Mayer, J.S.C., one of New Jersey's three Multicounty Litigation judges; certified trained mediator by the New Jersey Courts.

*Member:* John C. Lifland American Inn of Court.

*Practice Areas:* Drug and Medical Devices.

